# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Elisabeth Cleveland, | Case No.: 20-CV-1906 (WMW/KMM) |
| Plaintiff, | |
| vs. | **DEFENDANT WHIRLPOOL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |
| Whirlpool Corporation, | |
| Defendant. | |

After her dishwasher required a single repair after almost four years of use, Plaintiff Elisabeth Cleveland contacted Whirlpool Corporation ("Whirlpool") and demanded a free replacement. But the express limited warranty that came with Plaintiff's dishwasher provides that Whirlpool will pay for any necessary parts and labor "[f]or one year from the date of purchase." (Class Action Compl. ("Compl.") ¶ 12 & Ex. A.) Although Plaintiff had the option to buy "a longer or more comprehensive warranty than the limited warranty" that came with her dishwasher (*id.*), Plaintiff apparently chose not to. Nevertheless, when Whirlpool allegedly declined to replace her out-of-warranty dishwasher for free, Plaintiff filed this lawsuit. In effect, Plaintiff demands the benefit of a bargain she never struck—a multi-year warranty obligating Whirlpool to provide a free replacement dishwasher nearly four years after purchase.

Plaintiff purports to bring this lawsuit on behalf of a putative Minnesota class of Whirlpool dishwasher owners because her dishwasher needed *one* repair after nearly four years of regular use. Based on that single issue, a comment from a service technician, and

anonymous internet blogs, Plaintiff claims that her dishwasher contained a latent defect that is common to "hundreds" of other dishwasher models.

The premise of Plaintiff's lawsuit is thin, and her allegations do not plausibly support any of her nine causes of action. Plaintiff should not be permitted to impose significant defense costs based on a single out-of-warranty failure that she did not even try to have repaired. "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). This Court should dismiss the Complaint in its entirety.

## STATEMENT OF ALLEGED FACTS

Plaintiff purchased a Whirlpool Model WDF760SADW2 dishwasher on or about September 5, 2016. (Compl. ¶¶ 53-55.) She based her decision on Whirlpool's reputation, her independent research, and Whirlpool's alleged "representations that its dishwashers required fewer repairs than other brands of dishwashers[.]" (*Id.* ¶ 54.)

Plaintiff's dishwasher came with a "Whirlpool® Major Appliance Limited Warranty." (*Id.* ¶¶ 12, 43, 99–100 & Ex. A.) That warranty provides:

> For one year from the date of purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Whirlpool . . . will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product.

(*Id.* ¶ 43 & Ex. A.)

On the same page, under the heading "**DISCLAIMER OF IMPLIED WARRANTIES**", the following statement appears:

> IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY . . . ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW.

(*Id.* Ex. A.)

Further, on the same page, under the heading "**DISCLAIMER OF REPRESENTATIONS OUTSIDE OF WARRANTY**", the following statement appears: "If you want a longer or more comprehensive warranty than the limited warranty that comes with this major appliance, you should ask Whirlpool or your retailer about buying an extended warranty." (*Id.*) Plaintiff does not allege she purchased an extended warranty.

Plaintiff regularly used her dishwasher for nearly four years without issue. (Compl. ¶ 56.) Then, around June 15, 2020, she noticed a small amount of water leaking underneath her dishwasher. (*Id.* ¶ 57.) Plaintiff did not stop using her dishwasher or contact a service technician. Instead, Plaintiff continued to use her dishwasher "over the following three months" even though "the amount of water leaking beneath the Dishwasher began to increase." (*Id.*) She continued to use her dishwasher by "using a bath towel to control the water leakage." (*Id.*)

Plaintiff finally contacted an appliance repair company "[i]n August of 2020." (*Id.* ¶ 58.) The technician allegedly "informed Ms. Cleveland that the leak was coming from the diverter motor seal, which was caused by a product defect and was not fixable" and allegedly "advised her to replace her dishwasher." (*Id.*) When the technician moved the

dishwasher to inspect it, "it was also discovered that the grout on the tile floor under the Dishwasher was damaged by leakage." (*Id.* ¶ 59.)

Plaintiff does not allege that she attempted to have her dishwasher repaired. After the technician told her that her dishwasher "suffers from a known defect," Plaintiff conducted online research and discovered "other consumers reporting the same or similar incidences[.]" (*Id.* ¶ 60; *see also id.* ¶ 68 (quoting seven anonymous posts).) Thereafter, Plaintiff contacted Whirlpool and demanded Whirlpool replace her nearly four-year-old dishwasher for free. (*Id.* ¶ 62.) She does not allege that she requested a repair. (*Id.*) A Whirlpool representative allegedly respectfully declined Plaintiff's demand. (*Id.*) On that same day, Plaintiff filed this lawsuit.

## ARGUMENT

### I.   STANDARD OF REVIEW

#### A.   A Complaint Must Contain Plausible Allegations

To survive a motion to dismiss, "[a] complaint must allege facts that, when accepted as true, establish a facially plausible claim for relief." *My Pillow, Inc. v. LMP Worldwide, Inc.*, 331 F. Supp. 3d 920, 930 (D. Minn. 2018) (Wright, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts accept factual allegations as true and make reasonable inferences in the plaintiff's favor. *See My Pillow*, 331 F. Supp. 3d at 930. Courts ignore allegations that are mere legal conclusions, contradictory, or implausible, and evaluate whether the remaining factual allegations are sufficient to "state a claim . . . that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Bohan v. Honeywell Int'l, Inc.*, No. CIV. 02–612 (JEL/JGL), 2002 WL 31767786, at *1 (D. Minn.

Dec. 9, 2002) (disregarding allegations contradicted by documents attached to the complaint), *aff'd*, 366 F.3d 606 (8th Cir. 2004).

### B.   Rule 9(b)'s Heightened Pleading Standard for Accusations of Fraud

To state a claim sounding in fraud, a complaint must satisfy Rule 9(b)'s heightened pleading standard. *See* Fed. R. Civ. P. 9(b); *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). "Rule 9(b) requires plaintiffs to plead 'the who, what, when, where, and how'" of the fraud. *Id.* (citation omitted). "[A]llegations of fraud, including fraudulent concealment for tolling purposes, [must] be pleaded with particularity." *Id.* Consumer-protection claims that sound in fraud must also satisfy Rule 9(b)'s heightened pleading standard. *See Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075–76 (8th Cir. 2018); *ADT Sec. Servs., Inc. v. Swenson*, Civ. No. 07–2983 (JRT/AJB), 2008 WL 2828867, at *6 (D. Minn. July 21, 2008).

"Rule 9(b) is designed to protect defendants in fraud cases from frivolous accusations." *Roberts v. Accenture, LLP*, 707 F.3d 1011, 1018 (8th Cir. 2013). "[T]he heightened pleading requirement of Rule 9(b) prevents a plaintiff from using discovery as a fishing expedition; it 'acts as a safety valve to assure that only viable claims alleging fraud or mistake are allowed to proceed to discovery.'" *Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*, Civ. No. 11–883 (MJD/JJK), 2011 WL 4583845, at *6 (D. Minn. Sept. 15, 2011), *report and recommendation adopted*, Civ. No. 11–883 (MJD/JJK), 2011 WL 4537939 (D. Minn. Sept. 30, 2011).

II.     **PLAINTIFF'S BREACH-OF-WARRANTY CLAIMS FAIL**

A.     **Plaintiff's Warranty Claims Fail Because Her Dishwasher
Malfunctioned Outside of the One-Year Warranty Period**

Plaintiff's express limited warranty states that, "[f]or one year from the date of purchase," Whirlpool "will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product." (Compl. Ex. A.) Plaintiff alleges her dishwasher malfunctioned nearly three years after the one-year limited warranty period expired. (Compl. ¶¶ 55, 57.) That is fatal to her express-warranty claim. *See Cannon Techs., Inc. v. Sensus Metering Sys., Inc.*, 734 F. Supp. 2d 753, 763 (D. Minn. 2010) ("[E]ven if Cannon were correct that the iCon Meters were 'defective' when purchased, its express-warranty claim would still fail because that defect did not manifest itself until after the warranty period had ended."); *see also Daigle v. Ford Motor Co.*, No. CIV.A. 09-3214 MJD, 2012 WL 3113854, at *7 (D. Minn. July 31, 2012).[1]

Plaintiff's warranty also contained a disclaimer of implied warranties that expressly limited the implied warranty of merchantability to one year. (Compl. ¶ 12, Ex. A.) As required by Minn. Stat. § 336.2-316(2), the disclaimer mentions merchantability and was conspicuous. (*Id.* Ex. A (heading of the disclaimer is bolded and in all capital letters and

---

[1] Plaintiff also had the option to purchase an extended warranty if she wanted to shift the risk of potential future repairs to Whirlpool or a third party. (Compl. Ex. A.) Had she bought an extended warranty, the extended service-plan provider may have been responsible for the cost of repairing her dishwasher. By not doing so, Plaintiff chose to assume the risk that she might have to pay for a repair after the first year. The one-year period of the limited warranty she chose thus defeats her breach-of-warranty claims.

the one-year modification is in all capital letters).) As set forth below, because Plaintiff has not adequately pled that this one-year limit is unconscionable, the fact that her dishwasher did not malfunction during the one-year warranty period is also fatal to her breach of implied warranty claim. *See Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1322 (D. Minn. 2018) (concluding that if "the alleged breach [of implied warranty] involves a latent defect that manifests outside the period covered by the warranty," the claim fails unless the plaintiff plausibly pleads unconscionability).

**B.    The One-Year Warranty Period Is Enforceable**

Although Plaintiff alleges that Whirlpool's one-year warranty period is "unconscionable" (Compl. ¶¶ 111–12), her allegations do not plausibly suggest that the terms of the express warranty were unconscionable, and Minnesota law expressly permits sellers to limit the implied warranty of merchantability. *See* Minn. Stat. § 336.2-316; *Valspar Refinish, Inc. v. Gaylord's, Inc.*, No. A06-2227, 2007 WL 4237504, at *4 (Minn. Ct. App. Dec. 4, 2007) (unpublished), *aff'd*, 764 N.W.2d 359 (Minn. 2009).

1.    <u>The one-year warranty period is not "unconscionable"</u>

"An unconscionable contract is one that 'no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Capital One Bank (USA), N. A. v. Jones*, No. A12–0813, 2013 WL 1092240, at *4 (Minn. Ct. App. Mar. 18, 2013) (unpublished) (quoting *Kauffman Stewart, Inc. v. Weinbrenner Shoe Co., Inc.*, 589 N. W.2d 499, 502 (Minn. Ct. App. 1999)). "[C]ourts refuse to enforce contracts as unconscionable where the terms of the contract itself are unreasonably favorable to one party and where the circumstances surrounding the signing

of the contract indicate that one party had no meaningful choice but to accept the contract."

*LeMaire v. Beverly Enters. MN, LLC*, Civ. No. 12–1768 (JRT/TNL), 2013 WL 104919, at

*4 (D. Minn. Jan. 9, 2013); *see also M.M. Silta, Inc. v. Cleveland-Cliffs, Inc.*, 561 F. Supp.

2d 1052, 1057–58 (D. Minn. 2008) ("To establish unconscionability, a party must

demonstrate that it had no meaningful choice but to deal with the other party . . . ."), *aff'd*,

572 F.3d 532 (8th Cir. 2009).

Plaintiff has not and cannot allege that she had no "meaningful choice" but to

purchase a Whirlpool-built dishwasher, which is fatal to her claims of unconscionability.

*See Capital One,* 2013 WL 1092240, at *4 (finding contract was not unconscionable, even

where offered by party with superior bargaining power on non-negotiable preprinted form,

because plaintiff failed to show she could not obtain similar credit services elsewhere);

*TEM Capital, LLC v. Leonard*, No. A13–0158, 2013 WL 6152186, at *4 (Minn. Ct. App.

Nov. 25, 2013) (unpublished) (finding no unconscionability where plaintiff did not "assert

that a credit-card account with Chase was a necessary service or that he could not obtain a

credit card elsewhere").

The fact that Plaintiff could have bought an extended warranty (Compl. Ex. A)

further shows she had a meaningful choice. *See Smith v. Ford Motor Co.*, 462 F. App'x

660, 663–64 (9th Cir. 2011) (finding no unconscionability because plaintiff "was presented

with a meaningful choice, not just the option of purchasing a different vehicle from a

different manufacturer, but also the option of purchasing a different warranty with an

extended durational limit from [defendant]"); *Darne v. Ford Motor Co.*, No. 13 C 03594,

2015 WL 9259455, at *8 (N.D. Ill. Dec. 18, 2015) ("If the plaintiffs wanted additional

coverage beyond the 'shorter period' of the warranty, they had the option to purchase an extended warranty; this provided the meaningful choice that is unavailable in a procedurally unconscionable contract.").

By forgoing an extended warranty, Plaintiff saved money in the short run in exchange for accepting the risk she might have to pay for a repair later. She cannot now hold Whirlpool to an agreement she chose not to make simply because the risk of a future repair has materialized.

Further, because Minnesota law expressly permits a seller to modify the implied warranty of merchantability, Whirlpool's one-year limitation is not unconscionable or unreasonably unfair. *See* Minn. Stat. § 336.2-316; *Cf. Winthrop Res. Corp. v. Transit Grp., Inc.*, No. 00-2467 (PAM/JGL), 2001 WL 1618424, at *2 (D. Minn. Apr. 13, 2001) ("The Court will not hold unconscionable remedies expressly authorized by the Minnesota legislature."); *accord Amvest Corp. v. Anderson Equip. Co.*, 358 F. App'x 344, 349 (3d Cir. 2009) ("As the Pennsylvania legislature has expressly authorized a one-year period of limitation, it is not unconscionable."); *Shur-Value Stamps, Inc. v. Phillips Petroleum Co.,* 50 F.3d 592, 598–99 (8th Cir. 1995) ("If a contractual provision stipulates a limitations period that falls within statutorily defined parameters . . . then presumably the provision is not only legal, but also reasonable" and "involves, by definition, 'no element of unreasonable surprise' or hardship") (analyzing Texas equivalent of Minn. Stat. § 336.2-725(1)). *See L & H Transp., Inc. v. Drew Agency, Inc.,* 403 N.W.2d 223, 226 n.1 (Minn. 1987) (one-year limitations period in insurance contract was reasonable).

Finally, Plaintiff alleges the warranty limitation is unconscionable because "Whirlpool knew that the Dishwashers suffered from the Defect." (Compl. ¶ 111.) But Plaintiff has alleged no facts that <u>plausibly</u> support this allegation. The Complaint cites seven unverified online consumer complaints spread over eight years and four websites, none of which is associated with Whirlpool. And none of these complaints involves the same model as Plaintiff's dishwasher. (*Compare* Compl. ¶ 53 *with id.* ¶ 68.) During this same period, Whirlpool manufactured millions of dishwashers. Plaintiff's conclusory allegations do not plausibly allege Whirlpool's knowledge of a defect and should be disregarded. *Twombly*, 550 U.S. at 555, 570.

Because the durational limits on her warranties are enforceable, Plaintiff's untimely warranty claims should be dismissed.

### 2. Plaintiff has not adequately pled fraudulent concealment

To the extent Plaintiff is claiming that the one-year warranty period was extended by Whirlpool's alleged fraudulent concealment of the alleged defect (Compl. ¶ 112), her allegations fail. There is no provision of Minnesota's version of the Uniform Commercial Code that provides that a warranty can be extended on the basis of fraudulent concealment. But even if it could, as Plaintiff appears to allege, Plaintiff does not allege any acts of concealment <u>during the one-year warranty period</u>, and a "tolling period cannot delay the expiration of a deadline when that deadline has already expired." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012). Further, Plaintiff has not pled her fraudulent concealment allegations with particularity. Allegations of "fraudulent concealment for

tolling purposes," must be pled with particularity under Rule 9(b). *See Summerhill*, 637 F.3d at 880.

Plaintiff alleges that Whirlpool "failed to disclose" the alleged defect. (Compl. ¶ 80; *see also id.* ¶¶ 83, 84.) But a mere failure to disclose is not fraudulent concealment. Instead, the alleged concealment "must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Armstrong v. Sumitomo Rubber USA, LLC*, Civ. No. 16–2504 (DSD/HB), 2016 WL 6883194, at *2 (D. Minn. Nov. 18, 2016) (quoting *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975)). "[M]ere silence" or a "failure to disclose" is not affirmative concealment. *Id.* (quoting *Wild*, 234 N.W.2d at 795).

Further, while Plaintiff pleads in conclusory fashion that Whirlpool "concealed" the alleged defect (Compl. ¶¶ 80, 83), she includes no facts supporting a plausible inference of active concealment. A plaintiff must show that the defendant "took active steps, independent of the original fraud," to cover up the original conduct. *See Beaubaire v. Priorwood Townhomes Ltd. P'ship I*, Civ. No. 4–90–43, 1992 WL 320991, at *4 (D. Minn. Oct. 27, 1992). Plaintiff pleads no "active steps" Whirlpool allegedly took to prevent her from discovering her breach of warranty claim, and her conclusory allegations of concealment do not satisfy Rule 9(b). *See Summerhill*, 637 F.3d at 880.[2]

---

[2] Plaintiff's assertion that the statute of limitations on her warranty claims was tolled by the discovery rule (Compl. ¶¶ 77–79), fraudulent concealment (*id.* ¶¶ 80–85), and

### C.    Plaintiff Does Not Plausibly Allege Breach of Any Express Warranty

To state a claim for breach of express warranty in Minnesota, a plaintiff must allege that the defendant made an affirmation of fact or promise about the product that became part of the basis of the bargain, and that the product did not conform to the affirmation or promise. *See Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 788 (D. Minn. 2009); *see also* Minn. Stat. § 336.2-313(1)(a). The Complaint fails to meet this standard.

### 1.    Plaintiff's allegations reveal there was no breach of the express limited warranty

Even if the contractual limitations period did not bar Plaintiff's claims (it does), Plaintiff does not state a plausible claim for breach of warranty. Plaintiff and Whirlpool agreed that Whirlpool would pay for labor and replacement parts during the dishwasher's first year. (Compl. ¶ 43, Ex. A.) Plaintiff does not allege that she experienced any problems or requested warranty service during this one-year warranty period. (*Id.* ¶ 56.) As set forth above, that alone requires dismissal.

Further, the Complaint includes no plausible allegations that Whirlpool made representations about the scope or duration of its repair-or-replace obligations beyond those contained in the express limited warranty. She does not plead, for example, that Whirlpool made any specific representations that her dishwasher would not require a repair at any point, or that Whirlpool would provide free repairs or replacement parts after one year. (Compl. *passim.*) And while she pleads that the express limited warranty "warrants that the

---

equitable estoppel (*id.* ¶¶ 86–88) is irrelevant to whether she has pled a valid breach of warranty.

Dishwasher would be free of defects one year from the date of purchase" (Compl. ¶ 104), that is plainly not what the warranty states (*id.* ¶ 43, Ex. A). Courts do not accept as true allegations that are contradicted by the complaint itself. *See Williams v. First Nat'l Bank of St. Louis*, No. 4:14CV01458 ERW, 2014 WL 5800199, at *4 (E.D. Mo. Nov. 7, 2014).

Further, to the extent Plaintiff is alleging her dishwasher could not have been "adequately" repaired under the warranty "with non-defective parts" (Compl. ¶¶ 101, 106, 117, 119), those allegations also fail. Not only did Plaintiff's dishwasher not malfunction until it was three years out of warranty, but even then Plaintiff did not request service from Whirlpool or even attempt to have her dishwasher repaired. (*Id.* ¶¶ 60, 62.) And Plaintiff's allegation that her dishwasher is "not fixable" is based on the assessment of one unnamed appliance repair technician. (*See id.* ¶ 58.) That does not support a plausible inference that her dishwasher in fact could not have been "adequately" repaired had she tried.

Finally, insofar as Plaintiff is alleging that her dishwasher contained a design defect that rendered it unrepairable, such allegations would not establish a breach of Whirlpool's limited repair-or-replace warranty. By its terms, that warranty covers "defects in material and workmanship" (Compl. ¶ 43, Ex. A), and "case law overwhelmingly holds that design defects are not covered by warranties for materials and workmanship." *In re Hardieplank Fiber Cement Siding Litig.*, 284 F. Supp. 3d 918, 933–34 (D. Minn. 2018) (applying Indiana law but collecting cases from all jurisdictions); *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750 (8th Cir. 2013) (same) ("[D]efects in material and workmanship refer to departures from a product's intended design," and not "inadequacy of the design itself"). *Accord Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019); *Troup v. Toyota Motor*

13

*Corp.*, 545 F. App'x 668 (9th Cir. 2013); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003).

> 2. <u>Plaintiff does not adequately allege the existence of an express warranty apart from the express limited warranty</u>

Plaintiff's allegations that Whirlpool represented its dishwashers are "high-quality" (Compl. ¶¶ 4, 163), and have fewer repairs than other brands (*id.* ¶¶ 4, 54), are not sufficiently specific to create any warranty. These alleged statements do not contain a specific provision or warranty term that Whirlpool allegedly failed to satisfy. *See United Fed. Credit Union v. Wolters Kluwer Fin. Servs., Inc.*, Civ. No. 16–3349 (RHK/LIB), 2017 WL 2838124, at *3 (D. Minn. June 30, 2017) (holding that a plaintiff cannot "cobble[] together several provisions of the … Warranty in an attempt to foist an [additional] duty upon [defendant].") To be actionable, warranties must be more than "mere puffery." *Windsor Craft Sales, LLC v. VICEM Yat Sanayi ve Ticaret AS*, No. 10–297 (ADM/JJG), 2012 WL 639432, at *5 (D. Minn. Feb. 28, 2012) (quoting *Royal Bus. Mach., Inc. v. Lorraine Corp.*, 663 F.2d 34, 41 (7th Cir. 1980)). There is no warranty created by a statement that products are "of high quality." *Id.* (quoting *Royal Bus. Mach.*, 663 F.2d at 41).

Further, Plaintiff does not allege that *she* saw, heard, or received any affirmation of fact or promise regarding the dishwasher before she bought it, and therefore cannot allege those statements "formed the basis of the bargain," as required by Minnesota law. *Riley*, 625 F. Supp. 2d at 788; *see also* Minn. Stat. § 336.2-313(1)(a).

Further still, Plaintiffs' allegations do not suggest any statement she attributes to Whirlpool was actually false. Thus, for example, Plaintiff points to a Whirlpool website comment that "According to a leading consumer magazine," "No One Has Fewer Repairs 18 Years in a Row." (Compl. ¶ 4.) The fact that her dishwasher required one repair after almost four years would not render that statement false (i.e., if that statement created a warranty, it was not breached). A statement that Whirlpool appliances require "fewer repairs" than other appliances does not create a warranty that Whirlpool dishwashers generally—or Plaintiff's dishwasher specifically—will require *no repairs*.

## III.   THE BREACH-OF-CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE AND TIME-BARRED

### A.   Plaintiff's Breach-of-Contract Claim Is Duplicative

Plaintiff's breach-of-contract claim (Compl. ¶¶ 144–52) should be dismissed because any alleged contractual obligation derives from the express limited warranty, so this claim is merely duplicative of her breach-of-warranty claims. *See Spectro Alloys Co. v. Fire Brick Eng'rs Co.*, 52 F. Supp. 3d 918, 930 (D. Minn. 2014) (dismissing breach-of-contract claims as duplicative because "the breach of contract claims were based on warranty obligations"). Because Plaintiff's breach-of-contract claim is "subsumed" by her allegations in support of her warranty claims, this court should dismiss it. *Accord Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F. Supp. 3d 618, 642 (E.D. Mo. 2016) (dismissing a breach-of-contract claim as a matter of law because it "is subsumed by [plaintiff's] warranty claims").

### B.     The Breach-of-Contract Claim Fails For the Same Reasons the Breach-of-Warranty Claim Fails

Where, as here, the contract underlying a breach-of-contract claim is the express warranty, the same warranty terms apply. *See Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1060 (8th Cir. 2003) (holding the one-year warranty provision extended to the breach-of-contract claim). Plaintiff did not experience any problem or make any claim during the contractual one-year warranty period. Accordingly, her breach-of-contract claim fails for the same reasons her express warranty claim fails. (*See* Section II, *supra*.)

## IV.    THE UNJUST ENRICHMENT CLAIM FAILS BECAUSE THERE IS AN ENFORCEABLE CONTRACT

Plaintiff cannot state a claim for unjust enrichment because there is an enforceable contract that governs her agreement with Whirlpool. "[Unjust enrichment] does not apply when there is an enforceable contract that is applicable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). "[T]he existence of an express contract between the parties precludes recovery under the theories of quasi-contract, unjust enrichment, or meruit." *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 879 (D. Minn. 2009) (quoting *Sterling Capital Advisors v. Herzog*, 575 N.W.2d 121, 126 (Minn. Ct. App. 1998)); *see U. S. Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) ("[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract."). Accordingly, this Court should dismiss Plaintiff's unjust enrichment claim.[3]

---

[3] The Minnesota Supreme Court has not ruled whether Minnesota's unjust enrichment law has a "direct-benefit requirement," which requires plaintiff to directly

## V.      PLAINTIFF'S NEGLIGENT PRODUCT LIABILITY CLAIM FAILS

Although she styles her Eighth Cause of Action as a negligence claim (Compl. ¶¶ 197-207), "Minnesota merges negligence and strict liability claims into a single products liability theory[.]" *Hammond v. Compaq Comput. Corp.*, Civil. No. 06–1670 (JRT/FLN), 2009 WL 3164797, at *2 (D. Minn. Sept. 29, 2009) (citation omitted).

### A.      Plaintiff's Negligence Claim Is Barred by the Economic-Loss Doctrine

Under Minnesota's economic loss doctrine, Plaintiff cannot maintain a products liability claim to recover for damage solely to her dishwasher. *See* Minn. Stat. § 604.10(c) ("The economic loss recoverable in tort under this section [i.e., economic loss arising from negligence related to goods] does not include economic loss due to damage to the goods themselves."). "A buyer is limited to contract and warranty remedies if the damages sought consist of damages to the product itself." *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 871 (D. Minn. 2012).

Plaintiff alleges the "grout on the tile floor under the Dishwasher was damaged by leakage" (Compl. ¶ 59), but the economic-loss doctrine precludes tort recovery for such incidental property damage. *See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 572 N.W.2d 321, 324 (Minn. Ct. App. 1997). "[T]o permit a tort action based on minimal damage to 'other property,' as compared to the losses incurred from the damage to the

---

purchase the item from defendant. *See Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 514 & n.4 (D. Minn. 2014); *see also Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1056 (W.D. Wis. 2018) (applying the direct-benefit requirement under Wisconsin law). Accordingly, Whirlpool argues in the alternative that Plaintiff's unjust enrichment claim fails because she did not directly purchase the product from Whirlpool. *See Blitz*, 317 F. Supp. 3d at 1056.

product itself, would subvert the law." *Id.*; *see Thofson v. Redex Indus., Inc.*, 433 N.W.2d 901, 904 (Minn. Ct. App. 1988) ("The fire in the Redex grain dryer apparently damaged some incidental equipment and therefore caused some damage to 'other property.' However, the *Superwood* [economic loss] doctrine still applies because the damage to the incidental equipment was minimal relative to the [plaintiffs'] total damages.").

Thus, Plaintiff cannot state a claim for negligent products liability based on such a small, incidental amount of damage to other property.[4]

### B.    Plaintiff Fails to State a Claim for Negligent Products Liability

In addition to being barred by the economic-loss doctrine, Plaintiff cannot maintain a negligent products liability claim because she fails to plead any injury was the proximate cause of Whirlpool's conduct, and she fails to plausibly allege that her dishwasher was "unreasonably dangerous."

"Minnesota merges negligence and strict liability claims into a single products liability theory, which employs a reasonable-care balancing test to determine whether a product is defective." *Hammond*, 2009 WL 3164797, at *2 (quoting *Thompson v. Hirano Tecseed Co., Ltd.*, 456 F.3d 805, 809 (8th Cir. 2006)). To recover under a design-defect theory, the plaintiff must establish "(1) that the product was in a defective condition unreasonably dangerous for its intended use; (2) that the defect existed when the product

---

[4] Further, Plaintiff—and not Whirlpool—caused the alleged incidental damage to her tile grout by continuing to use her dishwasher for months after she observed it leaking. (*See infra* subsection V.B.1.)

left the defendant's control; and (3) that the defect was the proximate cause of the injury sustained." *Id.* (citing *Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 623 n.3 (Minn. 1984)).

1.   Plaintiff fails to plead Whirlpool proximately caused any injury

Plaintiff claims she observed "a small amount of water leaking." (Compl. ¶ 57.) A reasonable person would stop operating the dishwasher and call for service. But Plaintiff continued to use the dishwasher "over the following three months" even though "the amount of water leaking beneath the Dishwasher began to increase" to the point that she had to "us[e] a bath towel to control the water leakage." (*Id.*) After months of operating her dishwasher despite the obvious leak, Plaintiff claims "the leakage" damaged her tile grout underneath her dishwasher. (*Id.* ¶ 59.) However, any damage to the grout was caused by Plaintiff's own actions in the face of this obvious problem.

2.   Plaintiff fails to plausibly allege her dishwasher was "unreasonably dangerous"

To determine whether a product is "unreasonably dangerous for its intended use," the factfinder must "balance 'the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm.'" *Young v. Pollock Eng'g Grp., Inc.*, 428 F.3d 786, 788–89 (8th Cir. 2005) (citing *Bilotta*, 346 N.W.2d at 621). Plaintiff alleges her dishwasher contained a defect because it malfunctioned and required a repair nearly four years after she bought it, because a service technician told her the leak "was caused by a product defect," and based on seven anonymous internet posts. (Compl. ¶¶ 58, 68.) These allegations do not plausibly claim that her dishwasher posed a great "likelihood of harm[.]" Regarding the "gravity of

harm[,]" Plaintiff alleges that she initially noticed a "small amount of water leaking" which increased "[o]ver the following three months." (*Id.* ¶ 57.) A reasonable consumer could readily "avoid harm[,]" *see Young*, 428 F.3d at 788–89, posed by the leaking water by promptly requesting service and not operating the dishwasher until it is repaired. Her allegations thus do not plausibly show her dishwasher was unreasonably dangerous because there is no "great likelihood" it will manifest and, if the alleged defect does manifest, it is unlikely to result in "great harm" and consumers could take simple steps to avoid any readily apparent harm posed by leaking water.

## VI.   PLAINTIFF LACKS STANDING TO PURSUE A CLAIM UNDER THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT

The Minnesota Uniform Deceptive Trade Practices Act (MUDTPA) claim fails because that act provides for injunctive relief only. *See Finstad v. Ride Auto, LLC*, No. A15–0411, 2015 WL 7693534, at *2 (Minn. Ct. App. Nov. 30, 2015) (unpublished) (holding that MUDTPA permits injunctive relief only); *see also Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1070 (D. Minn. 2013) ("The DTPA provides relief from future damage, not past damage." (quotation marks omitted) (citation omitted)); *Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999) ("[T]he sole statutory remedy for deceptive trade practices is injunctive relief."). The statute therefore prohibits Plaintiff's requests for damages, restitution, and other relief under this cause of action. (*See* Compl. ¶ 184.)

Moreover, Plaintiff lacks Article III standing to pursue injunctive relief. She does not plausibly allege any risk of future harm, i.e., that she intends to buy an allegedly

20

defective Whirlpool-manufactured dishwasher again. *See Barclay v. ICON Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *5 (D. Minn. Oct. 15, 2020) (holding plaintiffs lack standing to pursue injunctive relief because "they claim no intent to purchase [defendants'] treadmills again"). Courts do not permit plaintiffs to pursue injunctive relief "because defendants … might make similar misrepresentations to future buyers." *Damon*, 937 F. Supp. 2d at 1071. Plaintiffs must present evidence or allegations "that they face any risk of future harm *to themselves*." *Id.* (emphasis added). "The relevant showing for purposes of Article III standing … is … injury *to the plaintiff*." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (emphasis added); *see also Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003). Accordingly, the Court should grant Defendant's motion to dismiss on the MUDTPA claim.

## VII.   PLAINTIFF'S CLAIMS UNDER THE MINNESOTA CONSUMER FRAUD ACT AND MINNESOTA UNLAWFUL TRADE PRACTICES ACT SHOULD BE DISMISSED

Plaintiff's claims that Whirlpool violated the Minnesota Consumer Fraud Act (MCFA) and Minnesota Unlawful Trade Practices Act (MUTPA) are based on similar alleged conduct. For her MCFA claims, she alleges that Whirlpool engaged in "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice" with the intent that consumers rely on such alleged misstatements. (Compl. ¶¶ 160–77.) Her MUTPA claims are similarly based on allegations that Whirlpool "knowingly misrepresent[ed], directly or indirectly, the true quality" of its products. (*Id.* ¶¶ 187–96.)

Stating a claim under the MCFA or MUTPA requires similar allegations and courts often analyze them together. To state a claim under these statutes, a plaintiff must show (1) the defendant engaged in conduct prohibited by either the MCFA or MUTPA, (2) the plaintiff was injured, and (3) the defendant's prohibited conduct caused the damaged to the plaintiff. *See Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 693 (Minn. 2014) (MCFA); *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000) (MCFA); *see also Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1096 & n.25 (D. Minn. 2017) (MUTPA).[5] Although reliance is not a separate element, "as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes." *In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008); *see also Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001) ("[I]t will be necessary to prove reliance on those statements or conduct to satisfy the causation requirement.").

Plaintiff fails to state claims under the MCFA and MUTPA because she does not identify an actionable statement, does not plausibly state a claim based on an omission, and does not plausibly plead a causal relationship between any statement or omission and

---

[5] To sue under the MCFA, a private litigant must plausibly allege (1) that "the defendant engaged in conduct prohibited by the [MCFA]," such as an actionable misrepresentation or deceptive practice, (2) "that the plaintiff was damaged thereby," and (3) "a causal relationship between the alleged injury and the wrongful conduct that violates the statute." *Graphic Commc'ns*, 850 N.W.2d at 693. The MUTPA has three elements: (1) defendant "engaged in conduct prohibited by [MUTPA]," (2) Plaintiffs were damaged, and (3) defendant's "statutory violation(s) caused … plaintiffs' damages." *See Luckey*, 245 F. Supp. 3d at 1096 & n.25.

her alleged injury. In addition, she fails to plausibly plead a "public benefit" that would entitle her to pursue these claims under the Minnesota Private Attorney General Statute ("Private AG Statute").[6]

Because Plaintiff's consumer-protection claims sound in fraud, misrepresentation, and deception, her allegations must satisfy the heightened pleading requirements of Rule 9(b). *See Olin*, 910 F.3d at 1075–76; *ADT Sec. Servs., Inc.*, 2008 WL 2828867, at *6; *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963-64 (D. Minn. 2000). She fails to satisfy Rule 9(b)'s requirement that plaintiffs must "plead 'the who, what, when, where, and how'" of the fraud. *Summerhill*, 637 F.3d at 880.

### A.    Plaintiff Fails to Identify an Actionable Statement

Plaintiff's MCFA and MUTPA claims fail because she does not identify any statement by Whirlpool that was allegedly false or misleading. The Complaint alleges Whirlpool represented its products were "high-quality" and had "Fewer Repairs" than other companies' products. (Compl. ¶¶ 4, 12.)

But the fact that Plaintiff's dishwasher malfunctioned and required repair after nearly four years does not render those alleged statements false. Further, a manufacturer's comments that its products are "high quality" are "mere puffery." *See Windsor Craft Sales, LLC*, 2012 WL 639432, at *5; *see also Royal Bus. Mach.*, 663 F.2d at 41. Because Plaintiff

---

[6] Private litigants can pursue MCFA claims only under the Private AG Statute. *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016). Private litigants can pursue MUTPA claims directly under the MUTPA or under the Private AG Statute. *Id.* (explaining that both routes permit money damages and injunctive relief, but only the Private AG Statute provides for costs and attorneys' fees). Insofar as Plaintiff pursues her MUTPA claims under the Private AG Statute, she also fails to plead a public benefit.

does not identify any false statement, she has not stated a claim. (*See also*, *supra*, Section II.C.2.)

Furthermore, Plaintiff also does not identify where she saw those statements, when she saw them, or who allegedly made them. Because these claims sound in fraud and must satisfy Rule 9(b)'s heightened pleading requirements, her claim fails for this additional reason.

### B.     Plaintiff Cannot Plausibly State a Claim Based on an Omission

Because Plaintiff fails to plausibly allege that Whirlpool had a special "duty to speak," she cannot establish MCFA or MUTPA claims based on any alleged omission. Omissions are generally not actionable under Minnesota's consumer-protection laws unless special circumstances create a duty to speak. *See Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 951 (D. Minn. 2020) ("For an MCFA claim based on an omission, a plaintiff must prove an omission of material fact, as well as special circumstances that trigger a duty to disclose."); *Graphic Commc'ns*, 850 N.W.2d at 696 ("Unlike other state consumer fraud statutes, Minnesota's CFA does not make material omissions actionable" absent a duty to disclose). Minnesota courts have clarified when a special "duty to speak" arises:

> Special circumstances triggering a duty to disclose include: (a) one who speaks must say enough to prevent his words from misleading the other party; (b) one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other

party; and (c) one who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts.

*Johannessohn*, 450 F. Supp. 3d at 951; *see also Graphic Commc'ns*, 850 N.W.2d at 697–98. None of these circumstances is applicable:

**(a)** Plaintiff identifies no statement that is misleading based on a partial omission. Again, Defendant's alleged representations about having a "high-quality" product are "mere puffery" that do not engender consumer-protection liability. *See Windsor Craft Sales, LLC*, 2012 WL 639432, at *5.

**(b)** Whirlpool does not fall into the "special-knowledge" category. This category is "rarely addressed," *see L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn. 1989), and "unique and narrow," *see Richfield Bank & Tr. Co. v. Sjogren*, 244 N.W.2d 648, 652 (Minn. 1976). Indeed, the Supreme Court of Minnesota explained in 2014 that it has "only applied the special-knowledge theory in one case." *Graphic Commc'ns*, 850 N.W.2d at 698. That case, *Richfield Bank & Trust Co.*, held that a bank had an affirmative duty to disclose another borrower was engaging in fraud "before it engaged in making the loan to respondents which furthered the fraud." *Richfield*, 244 N.W.2d at 652. Such unique and narrow circumstances do not apply here.

Moreover, Plaintiff pleads no facts to plausibly suggest such "special-knowledge" existed. Again, she points to seven unverified blog posts from consumers, spread over an eight-year period and four different internet sites, making complaints about different makes and models of dishwashers. Even if eight dishwashers (out of millions) needed similar

repairs or replacement parts, that does not plausibly suggest Whirlpool had "special-knowledge" about a defect that triggered an affirmative duty to disclose.

**(c)** Finally, Plaintiff has not (and cannot) allege that she and Whirlpool are in a confidential or fiduciary relationship. None of the special circumstances is applicable, so Plaintiff has not pled any actionable omission.

### C. Plaintiff Does Not Plead That Any Statement or Omission by Whirlpool Caused Her Alleged Injury

Plaintiff has not plausibly alleged that any pre-sale representation or omission caused her alleged injury. Consistent with her failure to satisfy the heightened Rule 9(b) pleading standards, Plaintiff does not state whether she saw any alleged statements, where or when she did, or whether Whirlpool made them. Absent allegations she was even exposed to any statement made by Whirlpool, she fails to identify "direct or circumstantial evidence … between the claimed damages and the alleged prohibited conduct." *Wiegand v. Walser Auto. Grps., Inc.*, 683 N.W.2d 807, 811–12 (Minn. 2004).

Further, neither the MCFA nor MUTPA apply to post-sale conduct. *See Thinesen v. JBC Legal Grp., P.C.*, No. Civ. 05-518 (DWF/SRN), 2005 WL 2346991, at *5 (D. Minn. Sept. 26, 2005) (concluding post-sale conduct does not satisfy the causal nexus requirement because nothing connects the "allegedly actionable conduct and [defendant's] initial sale of goods"). Plaintiff's conclusory and unsupported allegations about Whirlpool's supposed "continuous duty" to disclose information (Compl. ¶ 86) fail.

### D.      Plaintiff's Lawsuit Confers No "Public Benefit"

Plaintiff does not plausibly plead her lawsuit will confer a "public benefit" because her MCFA and MUTPA claims rely on her own subjective understanding of Whirlpool's alleged representations. Claims of fraudulent misrepresentation under the MCFA that are based on a "single one-on-one transaction" do not have a public benefit. *See Nystrom*, 615 N.W.2d at 314; *see also Damon*, 937 F. Supp. 2d at 1069–70. The Complaint makes allegations about "puffery" (which is not actionable) and omissions (which are not actionable in this circumstance). Plaintiff's remaining allegations are that she *expected* her dishwasher to work for ten or more years, apparently without requiring even one repair. (Compl. ¶¶ 36, 54.) This subjective expectation is not based on any representation Whirlpool made to her or the public. Indeed, Plaintiff apparently formed this expectation despite the terms of her express limited warranty. Plaintiff is not pursuing a claim that would have a public benefit.

## VIII.  PLAINTIFF FAILS TO PLAUSIBLY PLEAD FRAUDULENT CONCEALMENT WITH THE SPECIFICITY REQUIRED BY RULE 9(b)

Fraudulent concealment is an independent cause of action under Minnesota law only in "exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort." *Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 597 (D. Minn. 2014) (quoting *Wild*, 234 N.W.2d at 789). "[A]n independent fraudulent concealment claim will not lie where the fraudulent concealment relates to a promisor's duties under the contract." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 887 (8th Cir. 2000).

Plaintiff's fraudulent-concealment claim fails for three reasons. First, Plaintiff's allegations merely relate to (what she claims are) Defendant's duties under the express limited warranty. Second, as discussed in Section VII.A and B, she does not allege that Whirlpool made any affirmative misrepresentation or failed to disclose information it had an obligation to disclose. Third, the economic-loss doctrine also bars Plaintiff's claim. *See Marvin Lumber*, 223 F.3d at 885 ("'[W]here the only misrepresentation by the dishonest party concerns the quality or character of the goods sold,' the economic loss doctrine bars the fraud claims because the fraud claims are substantially redundant with warranty claims.").

This Court should accordingly dismiss Plaintiff's fraudulent concealment claim.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Whirlpool respectfully requests that the Court grant its motion and dismiss all of Plaintiff's nine causes of action.

Dated: October 29, 2020

By: *s/ Thomas H. Boyd*

**WINTHROP & WEINSTINE, P.A.**
Thomas H. Boyd, #0200517
Kyle R. Kroll, #0398433
Mary S. Riverso, #0400224
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
(612) 604-6400
tboyd@winthrop.com
kkroll@winthrop.com
mriverso@winthrop.com

--and--

**WHEELER TRIGG O'DONNELL LLP**
Galen D. Bellamy (*pro hac vice pending*)
Andrew M. Unthank (*pro hac vice pending*)
370 Seventeenth Street, Suite 4500
Denver, CO 80202
(303) 244-1800
bellamy@wtotrial.com
unthank@wtotrial.com

*Attorneys for Defendant,*
*Whirlpool Corporation*

20608246v1