## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **ELISABETH CLEVELAND, AMY LARCHUK, CHRISTOPHER REDMON, DHAVAL SHAH, and THOMAS MCCORMICK,** on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION,<br><br>       Defendant. | **CASE NO. 20-cv-1906-WMW-KMM**<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**(For the Purpose of Settlement)** |

## FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Elisabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah, and Thomas McCormick ("Plaintiffs"), by and through undersigned counsel, on behalf of themselves and all others similarly situated, bring this First Amended Consolidated Class Action Complaint against Defendant Whirlpool Corporation ("Defendant" or "Whirlpool") and in support allege, upon information and belief and based on the investigation of counsel, as follows:

## NATURE OF THE CASE

1.     Whirlpool Corporation is a publicly traded, international conglomerate that touts that it is "the world's leading kitchen and laundry appliance company, with approximately $20 billion in annual sales, 77,000 employees and 59 manufacturing and technology research centers in 2019."[1]

2.     Among a bevy of other home appliances, Whirlpool has designed and manufactured dishwashers for decades.  It currently boasts that it is the "industry's best-selling dishwasher brand."[2]

---

[1] https://investors.whirlpoolcorp.com/home/default.aspx (Last Accessed September 3, 2020).

[2] https://www.whirlpool.com/kitchen/dishwasher-and-cleaning.html (Last Accessed September 3, 2020).

3.     Like many Whirlpool appliances, Whirlpool manufactures and distributes dishwashers under other brand names, which share similar components and parts, including KitchenAid, JennAir, Maytag,[3] and Kenmore.[4].   In the last decade, Whirlpool designed and manufactured certain dishwashers in a substantially similar manner, which were sold under the following brand names and models identified in Exhibit 1 ("Class Dishwashers" or "Dishwashers").

4.     The Dishwashers were and are marketed as "high-quality" products, with base retail pricing ranging from $500-$700.   Since at least 2015, as part of its marketing campaign, Whirlpool has boasted to consumers about the durability of these "high-quality"[5] dishwashers, claiming that "No One Has Fewer Repairs 18 Years in a Row."[6]

5.     Based on industry standards, the average service life of a dishwasher is typically seven to twelve years (or 9.5 years on average).[7]   Consumer Reports has reported that based on "20-plus manufacturers asked," dishwashers should have an average service life of ten years.[8]   Further, Whirlpool reportedly boasts that the expected life span of its dishwashers is ten years.[9]

6.     However, Whirlpool designed, manufactured, distributed, marketed, and sold the Dishwashers with a uniform defect that can and has caused the Dishwashers to leak.   The Dishwashers were and are equipped with a pump motor diverter shaft seal ("Diverter Shaft Seal").

---

[3] https://www.whirlpoolcorp.com/brands-we-love/ (Last Accessed September 3, 2020).

[4] Although Whirlpool manufactures dishwashers for Kenmore, Kenmore is not owned by Whirlpool.

[5] *See* Dishwasher User Instructions ("THANK YOU for purchasing this high-quality product.").

[6] https://web.archive.org/web/20150116052616/http://www.whirlpool.com/kitchen-1/dishwasher-&-cleaning-2/dishwashers-3/-[WDF760SADW]-1022282/WDF760SADW/ (Last Accessed September 3, 2020).

[7] https://www.consumerreports.org/dishwashers/how-to-make-your-dishwasher-last-longer/ (Last Accessed November 24, 2020); https://homeguides.sfgate.com/long-should-dishwasher-last-average-91045.html (Last Accessed November 24, 2020); https://clark.com/homes-real-estate/dishwasher-how-long-should-it-last/ (Last Accessed November 24, 2020); https://prudentreviews.com/how-long-do-dishwashers-last/ (Last Accessed November 24, 2020).

[8] https://www.consumerreports.org/dishwashers/how-to-make-your-dishwasher-last-longer/ (Last Accessed November 24, 2020).

[9] https://clark.com/homes-real-estate/dishwasher-how-long-should-it-last/ (Last Accessed November 24, 2020).

The purpose of the Shaft Seal is to prevent the dishwasher from leaking.  However, the Shaft Seal in the Dishwashers fails in this intended purpose.

7.     The Shaft Seal in the Dishwashers is uniformly defective in its design and/or manufacture in that is incorrectly oriented, accelerating degradation of the seal and creating a buildup of debris that prevents the shaft seal spring from properly sealing the diverter shaft and sump ("Diverter Shaft Seal Defect" or "Defect"). As a result of the uniform Diverter Shaft Seal Defect involving the failure of the Diverter Shaft Seal to seal off water between the diverter shaft and sump, Plaintiffs and Class Members' Dishwashers can and have experienced significant leakage through the Diverter Shaft Seal, flowing out of the dishwasher to areas below and surrounding the dishwasher, exposing consumers to unexpected water leaks and damage to cabinetry, flooring, and other property

8.     A Diverter Shaft Seal is part of a dishwasher's sump assembly, which is located at the bottom of the dishwasher's tub and is responsible for collecting and distributing the water throughout the dishwasher during cleaning.  The sump collects and holds water below the dishwasher tub and the diverter shaft directs the collected water into the spray arms, while the Diverter Shaft Seal prevents leaks between the sump and the tub.  In other words, the Diverter Shaft Seal's main purpose is to prevent the dishwasher from leaking and causing damage to consumers' homes, yet it is defective and fails in its singular purpose.

9.     Below is a representative parts diagram, with (4) being the sump and Diverter Shaft Seal assembly, and (17) the dishwasher's diverter motor.  The red circle specifically indicates the location of the Divert Shaft Seal.



10.     Upon information and belief, the manufacturer's installation instructions for the Divert Shaft Seal direct the seal to be affixed in an orientation towards the tub so that there is protection from hot soapy water and debris during cleaning, and a complete and properly functioning seal.  However, Whirlpool designed and manufactured the sump and diverter motor pump assembly with the seal affixed in an inverted position, which exposes it to hot soapy water and debris.  As the debris builds and the seal degrades, water begins to leak between the sump and the tub, eventually leaking through the entire unit and onto floors and inside cabinetry.

11.     A photograph of a degraded, failed seal:



12.     Whirlpool had knowledge of the Defect well before many Class Members purchased the Dishwashers.  Whirlpool has known for at least eight years that the Dishwashers contain a defectively designed and/or manufactured sump assemblies with the inversely oriented Diverter Shaft Seal in the Class Dishwashers.

13.     The defective sump and diverter motor pump assembly in the Dishwashers exists at the time it leaves the manufacturer, and before it is purchased by consumers.  Despite Whirlpool's longstanding knowledge of this defect, Whirlpool has failed to remedy the Defect and also failed to inform consumers of the Defect.  Instead, in contravention of the Dishwasher's express warranty, which fails of its essential purpose and is unconscionable, Whirlpool has placed the burden of repairing this Defect and paying for the costs of repairs to the adjacent personal property damaged by the defective Dishwashers upon the consumers.

14.     Whirlpool's warranty states that within one year of the purchase date, Whirlpool "will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product."

15.     Upon information and belief, regardless of whether the Dishwasher leaks during the warranty period or otherwise, and despite having sold the Dishwashers with a Defect known to Whirlpool and unknown to consumers, Whirlpool refuses to replace or repair the Dishwashers and instead offers to sell a full sump assembly with a new Diverter Shaft Seal attached to it to the customer.

16.     Despite its knowledge of the Diverter Shaft Seal Defect for many years, Whirlpool routinely denied knowledge or existence of the Defect, and instead placed the burden of paying for the Defect on consumers by requiring consumers to pay for a full sump assembly replacement with a Diverter Shaft Seal for approximately $60-$75.  Even more, Whirlpool fails to reimburse consumers for labor costs associated with replacing the defective Diverter Shaft Seal, which is approximately $200.00 or more.

17.     Whirlpool's conduct is particularly egregious considering that the cost of the defective replacement parts and associated labor are more than 1/3 of the cost of the original Dishwasher. Whirlpool's conduct is deceptive, unfair and unconscionable.

18.     Prior to purchasing the Class Dishwashers, Plaintiffs and other Class Members did not know that the Class Dishwashers have a defective sump and diverter motor pump assembly and would fail and leak, requiring the consumer to prematurely assume the burden of costly repairs.

19.     Defendant knew or should have known that the Class Dishwashers have a defectively designed and/or manufactured sump and diverter motor pump assembly that leads to failure of the Diverter Shaft Seal and are not fit for their intended purpose of providing customers with a reliable method of cleaning dishes without resulting in water damage to cabinetry and flooring. Nevertheless, Defendant failed to disclose this Defect to Plaintiffs and Class Members at the time of purchase or thereafter and continued to manufacture the Dishwashers in the same defective manner.

20.     The existence of the Defect at the Shaft Seal is a material fact that reasonable consumers, including Plaintiffs and Class Members, would have considered when deciding whether to purchase the Dishwasher.  Had Plaintiffs and Class Members known about the Defect at the time of purchase, as well as the associated costs related to repair or replace the Dishwasher, Plaintiffs and the Class Members would not have purchased the Dishwashers or would have paid less for them. Plaintiffs and Class Members also would not have agreed to the one-year warranty.

## PARTIES

21.     Plaintiff Elisabeth Cleveland is a resident and citizen of Saint Paul, Minnesota.

22.     Plaintiff Amy Larchuk is a resident and citizen of Media, Pennsylvania.

23.     Plaintiff Christopher Redmon is a resident and citizen of Manteno, Illinois.

24.     Plaintiff Dhaval Shah is a resident and citizen of Foster City, California.

25.     Plaintiff Thomas McCormick is a resident and citizen of Lakeside, California.

26.     Defendant Whirlpool Corporation is incorporated in Delaware, with its principal place of business located in Michigan.

27.     Whirlpool and its affiliated brands distribute, market, and direct the marketing of its Dishwashers throughout the United States.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named and unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiffs and Defendant are citizens of different States.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

29.     This Court may exercise personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

30.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

31.     This document is being filed for the purpose of settlement, and, upon information and belief, Defendant does not oppose jurisdiction with regard to the Plaintiffs who are not residents of the state of Minnesota.  Further, by filing this consolidated amended complaint, Plaintiff does not waive any right to allege different or alternative claims or allegations should the litigation proceed for any reason.

## COMMON FACTUAL ALLEGATIONS

32.     In 1886, Josephine Garis Cochran invented and patented the first useful dishwasher for homes. Following its debut at the World's Fair in 1893, only restaurants and hotels were interested in purchasing Ms. Cochran's dishwasher so Ms. Cochran started her own business to manufacture the machines. That business went on to become KitchenAid.[10]

---

[10] https://www.uspto.gov/about-us/news-updates/woman-invented-dishwasher (Last Accessed September 3, 2020).

33.     Just a few short years later, in 1911, members of the Upton family who were given the patent on a manually operated clothes washers founded the company preceding Whirlpool.  Over the next several decades, the company expanded its appliance line and in 1950 it renamed itself Whirlpool Corporation.[11]

34.     In 1986, Whirlpool acquired KitchenAid, and by 2006 it had acquired Maytag and JennAir.[12]  Whirlpool and its brands have sold more than $20 billion in household appliances, including dishwashers, each year since 2014.[13]

35.     While KitchenAid, Maytag, JennAir, and Kenmore maintain their own brand names for the purpose of sales, Whirlpool designed and manufactured the Class Dishwashers at issue in this action.

36.     The Dishwashers are used, and intended by Whirlpool to be used, for reliable and convenient dishwashing.

37.     Each Dishwasher is designed and manufactured to distribute dish detergent along with clean, hot water consistently throughout the dishwasher during the cleaning process.  This process is accomplished utilizing various mechanical parts, including motors, rotating spray arms, and the sump assembly.

38.     The diverter motor pump and sump assembly is located almost entirely below the dishwasher tub and is responsible for collecting clean water.  The sump is attached to the diverter shaft and diverter pump motor.  Once the temperature of the water has been sufficiently raised, the water is pumped by the motor into the spray arms, and dispersed throughout the dishwasher by the rotating diverter shaft.

39.     The Diverter Shaft Seal is a polymer, elastomeric ring that seals the sump housing from the diverter assembly and prevents leaking between the diverter shaft and sump.  It is intended to be designed with the sump assembly and installed in such a manner that creates a leak proof seal.

---

[11] https://www.referenceforbusiness.com/history2/19/Whirlpool-Corporation.html (Last Accessed September 3, 2020).

[12] https://www.whirlpoolcorp.com/2010annual/brand-kitchenaid.html (Last Accessed September 3, 2020).

[13] https://www.statista.com/statistics/220658/revenues-of-whirlpool-since-2007/ (Last Accessed September 3, 2020).

As the dishwasher begins to run and water is pumped into the spray arms, a spring between the diverter shaft squeezes into the Diverter Shaft Seal and creates a watertight seal.

40.     However, the Diverter Shaft Seal in the Dishwashers are uniformly installed in an inverted orientation, such that the lips of the seal are unable to tightly fit against the diverter shaft and sump and prevent leakage.  Thus, the Diverter Shaft Seal fails as a result of the inverted orientation between the diverter pump motor and sump assembly.

41.     This failure to properly orient the Diverter Shaft Seal exposes a larger portion of the Diverter Shaft Seal to hot, soapy water and debris from dirty dishes. As the dishwasher is put into use, the exposure to the hot soapy water accelerates degradation of the Diverter Shaft Seal's polymer materials.  Further, the failure to accomplish a complete seal allows for debris to collect, preventing the spring to completely close and seal off the sump assembly.

42.     Upon information and belief, this inverted orientation is a direct violation of the Divert Shaft Seal's manufacturer's installation instructions.

43.     This accelerated Diverter Shaft Seal failure results in leakage through the Dishwasher unit itself, into cabinetry and onto floors.  The leakage often begins so slowly, that it is not until complete failure so that Plaintiffs and Class Members do not know of the Diverter Shaft Seal Defect until a complete failure has occurred.

44.     The Defect is latent such that no reasonable customer would know, or be able to discover through inspection, that it exists between the diverter motor pump and sump assembly at the time the Dishwasher is purchased.  However, Whirlpool knew or should have known of the Defect before it distributed the Dishwashers into the consumer marketplace.

45.     Plaintiffs and the Class Members have a reasonable expectation that their Dishwashers will have at least ten years of useful service life.[14]  However, due to the latent Defect, the Dishwashers fail before ten years and many times within the first four years of the service life.

_____

[14] *See e.g.*, https://www.consumerreports.org/dishwashers/how-to-make-your-dishwasher-last-longer/ (Last Accessed September 3, 2020); https://homeguides.sfgate.com/long-should-dishwasher-last-average-91045.html (Last Accessed November 24, 2020); https://clark.com/homes-real-estate/dishwasher-how-long-should-it-last/ (Last Accessed November 24, 2020); https://prudentreviews.com/how-long-do-dishwashers-last/ (Last Accessed November 24, 2020).

46.     When customers first began to complain to Whirlpool about the Diverter Shaft Seal failures, Whirlpool routinely denied the claim and offered to sell a replacement Diverter Shaft Seal to the customer for less than $10.  However, as claims continued to come in, rather than cover the cost of repairs to the Dishwashers, Whirlpool discontinued the sale of the individual Diverter Shaft Seal and now requires consumers to purchase the full sump assembly with the Diverter Shaft Seal attached.  This part, without the cost of installation, is approximately $60-$75.  Through the use of an experienced technician, the cost of repair is approximately $200.00 or more, which is more than 1/3 of the cost of the original Dishwasher.  Upon information and belief, the sump assembly replacement part also has an inverted Diverter Shaft Seal, rendering the replacement part defective.

47.     Whirlpool at all times failed to disclose its knowledge of the Defect to customers during the warranty claims process.

48.     Whirlpool expressly and impliedly warrants, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Dishwashers are fit for the ordinary purpose for which they are sold.

49.     Whirlpool expressly warrants in its Owner Manuals and User Instructions that the Dishwashers are free from defects for one year.

50.     Whirlpool's manifest intent that its warranties apply to Plaintiffs and consumer Class Members as third-party beneficiaries is evident from the statements contained in its product literature, including its Major Appliance Limited Warranty ("the Warranty"), which begins the date of the consumer's purchase and excludes commercial, non-residential use.

51.     Likewise, it was reasonably foreseeable that Plaintiffs and consumer Class Members would be the intended beneficiary of the products and warranties.

52.     Specifically, Whirlpool's one-year Warranty provides as follows:

For one year from the date of purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole

discretion replace the product. In the event of product replacement, your appliance will be warranted for the remaining term of the original unit's warranty period.

53.     The Warranty fails of its essential purpose for the following reasons:

    a.   Whirlpool fails to disclose its knowledge of the Defect when contacted by customers about Dishwasher failures; and

    b.   When Whirlpool replaces the entire Dishwasher, it reduces the Warranty of the new Dishwasher to the remaining term of the original Dishwasher.

54.     As described herein, Whirlpool breached this warranty at the time Plaintiffs and Class Members purchased the Dishwashers because, the Dishwashers were defective when they came off of the assembly line. Thus, at the time the defective Dishwashers sold to consumers, Whirlpool was already in violation of the express warranty.

55.     In addition, the Warranty has several terms that are unconscionable as follows:

    a.   In the one-year time limitation when the latent Defect regularly does not manifest until after the expiration of the limitation;

    b.   In the failure and refusal to extend the time limitation at the time a replacement is installed;

    c.   In its prohibition against application in multi-family residences;

    d.   In its exclusion of repairs to parts or systems to correct product damage or defects caused by unauthorized service, alteration or modification of the appliance;

    e.   In its exclusion of travel or transportation expenses for service in remote locations where an authorized Whirlpool servicer is not available;

    f.   In its disclaimer of warranties; and

    g.   In its limitation of remedies, including disclaimer of consequential damages.

56.     Whirlpool unilaterally imposed the Warranty terms to its own benefit.

57.     The Warranty is further unconscionable given Whirlpool's knowledge of the Defect, the existence of the Defect at the point of sale, Whirlpool's failure to disclose the Defect at the time of sale and during warranty communications, and in the premature failure of the Dishwashers.

58. The Defect renders the Dishwashers unfit for the ordinary purpose for which they are used, which is to reliably clean dishes.

59. Had Plaintiffs, Class Members, and the consuming public known that the Dishwashers were defective and would cause damage to other property, they would not have purchased the Dishwashers at all, or would not have paid the price they did.

60. In sum, Whirlpool has actively concealed the existence and nature of the Defect from Plaintiffs and Class Members, despite its knowledge of the existence and pervasiveness of the Defect, and certainly well before Plaintiffs and Class members purchased the Dishwashers and during warranty communications.  Specifically, Whirlpool has:

a. Failed to disclose the Defect to consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Whirlpool or its affiliates about the Defect;

b. Actively concealed the Defect from consumers, at or after the time of purchase, including when consumers make warranty claims, or otherwise complain to Whirlpool about the Defect;

c. Failed to disclose, and actively concealed the defect from consumers, including that the Dishwashers were not fit for their intended purpose;

d. Failed to disclose and actively concealed the Defect from consumers when it improperly and unlawfully denied valid warranty claims; and

e. Failed to disclose and actively concealed the Defect from consumers when it provided them with replacement Diverter Shaft Seals and related sump assemblies, that contained such parts contain the same or similar defect.

61. As a direct, proximate, and foreseeable result of the Defect, Plaintiffs and Class Members suffered damages, including but not limited to: (a) the difference in value of the Dishwashers as purchased and the Dishwashers received; (b) loss of use of the Dishwashers; (c) property damage; and (d) consequential damage.

## PLAINTIFFS' FACTUAL ALLEGATIONS

*Facts Specific to Plaintiff Elisabeth Cleveland*

62.     In August of 2016, Ms. Cleveland began shopping for a new, reliable dishwasher that would be long lasting and not require many repairs. After researching dishwashers, reviewing specifications and other literature, and reading consumer reports, Ms. Cleveland selected a Whirlpool Model WDF760SADW2.

63.     Specifically, in selecting her Dishwasher, Ms. Cleveland relied on Whirlpool's representations that its dishwashers required fewer repairs than other brands of dishwashers, as well as Whirlpool's reputation and that she believed she was purchasing a high-quality product. She expected the dishwasher would last at least ten years, and would not prematurely fail and cause damage to her flooring.

64.     On September 5, 2016, Ms. Cleveland purchased her Dishwasher from Warners' Stellian for the amount of $500.00. Ms. Cleveland purchased her Dishwasher for normal, household (non-commercial) use, and it has in fact at all times only been used for normal household purposes.

65.     On September 13, 2016, the Dishwasher was installed in Ms. Cleveland's kitchen, and she began to regularly use it. From the time of purchase until the incident described below, Ms. Cleveland used the Dishwasher as intended and maintained it in a reasonable manner as an owner of an appliance.

66.     On June 15, 2020, Ms. Cleveland noticed a small amount of water leaking underneath her Dishwasher. Over the following three months, the amount of water leaking beneath the Dishwasher began to increase. Eventually, Ms. Cleveland began using a bath towel to control the water leakage when using her Dishwasher. She cannot reasonably continue to use the Dishwasher as the leaking increases and becomes unmanageable.

67.     In August of 2020, Ms. Cleveland contacted an appliance repair company to evaluate the leakage from her dishwasher. On August 27, 2020, the appliance repair company inspected the dishwasher to determine the leakage source. At that time, the repair technician informed Ms.

Cleveland that the leak was coming from the diverter motor seal, which was caused by a product defect and was not fixable. The technician charged Ms. Cleveland $109.95 for the service visit and advised her to replace her dishwasher.

68.     When the Dishwasher was removed for inspection, it was also discovered that the grout on the tile floor under the Dishwasher was damaged by the leakage.

69.     After learning that her dishwasher suffers from a known defect, Ms. Cleveland performed research online and discovered numerous other consumers reporting the same or similar incidences of leakage from the Diverter Shaft Seal.

70.     In August of 2020, Ms. Cleveland also contacted the seller, Warners' Stellian, to notify it of the failure and resulting damage, but has not received a response.

71.     On September 4, 2020, Ms. Cleveland contacted Whirlpool via its 1-800 warranty claims phone number. After waiting on hold for an hour, Ms. Cleveland notified the Whirlpool representative that her Dishwasher had a defect in which water was leaking through the Shaft Seal. The Whirlpool representative informed her that the expected service life of a Dishwasher is five years. However, despite the fact Ms. Cleveland's Dishwasher is approximately four years old, Whirlpool informed her that it would not replace her Dishwasher. The Whirlpool representative further represented to her that its warranty system did not indicate any similar complaints.

72.     Because Whirlpool unlawfully concealed the Defect from Ms. Cleveland before her purchase, as well as after the Dishwasher was installed in her home and being used, she did not suspect (and had no reason to suspect) that there was anything wrong with the Dishwasher until the Defect manifested.

73.     Ms. Cleveland's Dishwasher has not operated properly for its life expectancy. Had she known of the Defect, she would have either not purchased the Dishwasher or would have paid less than she did. Therefore, she did not receive the benefit of her bargain.

*Facts Specific to Plaintiff Amy Larchuk*

74.     In late August to early September of 2016, Ms. Larchuk began shopping for a new, reliable dishwasher that would be long lasting and not require many repairs. After researching dishwashers, reviewing specifications and other literature, and reading consumer reports, Ms. Larchuk selected a KitchenAid Model KDFE204EWH.

75.     Specifically, in selecting her Dishwasher, Ms. Larchuk relied on Whirlpool's representations related to KitchenAid branded Dishwasher's quality and reliability regarding the Dishwashers. Further, she owned several other Whirlpool manufactured, KitchenAid branded products that she was pleased with. She expected the dishwasher would last at least twenty years like her KitchenAid stove and refrigerator and would not prematurely fail and cause damage to her home.

76.     On or about September 10, 2016, Ms. Larchuk purchased her Dishwasher from Lowe's in an amount exceeding $500.00. Ms. Larchuk paid this amount for her Dishwasher because she believed it to be a high-end dishwasher compared to other brands and models. Ms. Larchuk purchased her Dishwasher for normal, household (non-commercial) use, and it has in fact at all times only been used for normal household purposes.

77.     On September 10, 2016, Ms. Larchuk contemporaneously registered her dishwasher and purchased an extended warranty with KitchenAid that expired on September 10, 2019, in the amount of $153.93.

78.     The Dishwasher was installed in her home several days later, on or around September 14 or 15, 2016. Once the Dishwasher was installed in Ms. Larchuk's kitchen, and

she began to regularly use it. From the time of purchase until the incident described below, Ms. Larchuk used the Dishwasher as intended, and maintained it in a reasonable manner as an owner of an appliance. With regard to maintenance, Ms. Larchuk even replaced her own lower rack wheels when they overheated and melted.

79.     On or around April of 2020, Ms. Larchuk noticed a small amount of water leaking in the ceiling of the basement but was unsure of the source. Over the following several months, the amount of water leaking in the ceiling began to increase, however the source of the leaking was still unclear.

80.     In August, the leak became noticeably worse, and Ms. Larchuk discovered that amount of water that leaked into the basement ceiling had damaged the ceiling joists.

81.     As Ms. Larchuk contacted D&K Appliances in Aston, Pennsylvania to find the source of the leaking diagnose the problem.

82.     In August of 2020, D&K Appliances inspected Ms. Larchuk's ceiling and was able to determine that the leak was coming from the dishwasher in the kitchen on the floor above the basement. The technician inspected the dishwasher and informed Ms. Larchuk that the leak was coming from the diverter motor pump seal. D&K advised Ms. Larchuk that she would need to replace the pump motor. As the cost of the replacement pump motor was approximately half the cost of a new dishwasher, Ms. Larchuk opted to replace the Dishwasher with a new Bosch dishwasher for the amount of $1031.50.

83.     After learning that her Dishwasher suffered from a known defect, Ms. Larchuk performed research online and discovered numerous other consumers reporting the same or similar incidences of leakage from the Diverter Shaft Seal.

84.     On September 10, 2020, Ms. Larchuk contacted Whirlpool's KitchenAid Warranty Department via its 1-800 warranty claims phone number. After waiting on hold for just under an hour, Ms. Larchuk notified the Whirlpool representative that her Dishwasher had prematurely failed and leaked into her home. The Whirlpool representative informed her that replacements under the warranty were not permitted, and only repairs could be authorized.

85.     However, upon information and belief, as the replacement assembly still contains the same Defect, a repair would not remedy the problem.

86.     Because Whirlpool unlawfully concealed the Defect from Ms. Larchuk before her purchase, as well as after the Dishwasher was installed in her home and being used, she did not suspect (and had no reason to suspect) that there was anything wrong with the Dishwasher until the Defect manifested.

87.     Ms. Larchuk's Dishwasher has not operated properly for its life expectancy. Had she known of the defect, she would have either not purchased the Dishwasher or would have paid less than she did. Therefore, she did not receive the benefit of her bargain or extended warranty.

*Facts Specific to Plaintiff Christopher Redmon*

88.     In or about the spring or summer of 2017, Mr. Redmon began shopping for a new, reliable dishwasher that would be long lasting and not require many repairs. After Mr. Redmon had disappointing prior experience with a dishwasher manufactured outside of the United States, he actively researched and sought out dishwashers made in the United States that he believed were of higher quality. When he viewed models at the store and spoke with the salesperson, he was told that the KitchenAid dishwashers were top of the line and made domestically. Relying on the statements of the salesperson that the KitchenAid was made in the United States, was top of the line, and believing that to mean there would be fewer repairs than other comparable models, Mr. Redmon selected a KitchenAid Model KDTE254ESS2.

89.     In addition to the salesperson's representations, Mr. Redmon further relied on Whirlpool's representations in its written materials related to KitchenAid branded Dishwasher's quality and reliability regarding the Dishwashers. He expected the dishwasher would last at least fifteen years and would not prematurely fail and cause damage to his home.

90.     Mr. Redmon purchased his Dishwasher from Frank's Appliances for $799.00. Mr. Redmon paid this amount for his Dishwasher because he believed it to be a high-end dishwasher compared to other brands and models. Mr. Redmon purchased his Dishwasher for normal, household (non-commercial) use, and it has in fact at all times only been used for normal household purposes.

91.     The Dishwasher was installed in his home shortly after his purchase. Once the Dishwasher was installed in Mr. Redmon's kitchen, he began to regularly use it. From the time of purchase until the incident described below, Mr. Redmon used the Dishwasher as intended, and maintained it in a reasonable manner as an owner of an appliance.

92.     In April of 2020, the water inlet valve began to leak; however, Mr. Redmon was able to repair the issue and believed his Dishwasher was in working condition again.

93.     However, in June of 2020, Mr. Redmon noticed a leak coming from the Dishwasher, causing water to run across the floor and pool under the kitchen island. When Mr. Redmon inspected the dishwasher, he discovered that the water had soaked the insulation, caused rust and corrosion underneath the Dishwasher, and discolored the grout of the ceramic flooring below. Upon further inspection, Mr. Redmon discovered that the leak was coming from the diverter shaft seal.

94.     Soon thereafter, Mr. Redmon replaced the sump housing, shaft seal, and diverter motor out of his pocket. However, as the replacement parts require assembly in the same defective manner, the replacement will likewise fail.

95.     After learning that his Dishwasher suffered from a defect, which Whirlpool knew or should have known, but which was unknown to Mr. Redmon at the time he purchased the Dishwasher, Mr. Redmon performed research online and discovered numerous other consumers reporting the same or similar incidences of leakage.

96.     In early October of 2020, Mr. Redmon contacted Whirlpool and put them on notice of the problems he experienced with his Dishwasher. At that time, the Whirlpool representative denied the warranty claim as the warranty had expired. The Whirlpool representative failed to acknowledge that the Defect existed, or that Whirlpool knew about the Defect.

97.     Because Whirlpool unlawfully concealed the Defect from Mr. Redmon before his purchase, as well as after the Dishwasher was installed in his home, he did not suspect (and had no reason to suspect) that there was anything wrong with the Dishwasher until the Defect manifested.

98.    Mr. Redmon's Dishwasher has not operated properly for its life expectancy. Had he known of the Defect, he would have either not purchased the Dishwasher or would have paid less than he did. Therefore, he did not receive the benefit of his bargain.

### Facts Specific to Plaintiff Dhaval Shah

99.    In or about 2016, Mr. Shah began shopping for a new, reliable dishwasher that would be long lasting and not require many repairs. When he viewed models on Costco's website, an authorized distributor of the dishwashers at-issue, he was led to believe that the KitchenAid dishwashers were reliable and top of the line. Relying on the statements on Costco's website that the KitchenAid was reliable and top of the line Mr. Shah selected a KitchenAid Model WDT780SAEM1.

100.   In addition to Costco's website, Mr. Shah further relied on Whirlpool's representations in its written materials related to KitchenAid branded Dishwasher's quality and reliability regarding the Dishwashers. He did not expect that the dishwasher would prematurely fail and cause damage to his home.

101.   Mr. Shah purchased his Dishwasher from Costco's website for approximately $600 on September 18, 2016. Mr. Shah paid this amount for his Dishwasher because he believed it to be a high- end dishwasher compared to other brands and models. Mr. Shah purchased his Dishwasher for normal, household (non-commercial) use, and it has in fact at all times only been used for normal household purposes.

102.   The Dishwasher was installed in his home shortly after his purchase. Once the Dishwasher was installed in Mr. Shah's kitchen, he began to regularly use it. From the time of purchase until the incident described below, Mr. Shah used the Dishwasher as intended, and maintained it in a reasonable manner as an owner of an appliance.

103.   On October 20, 2020, the water inlet valve began to leak during normal use, causing water to run from the bottom of the door of the Dishwasher across the floor and under the base boards of the cabinetry in the kitchen where the Dishwasher was located. After Mr. Shah watched

the water leakage occur, he contacted a technician to diagnose the issue causing said leakage. The technician diagnosed the issue as, "unit is leaking from diverter motor, will need to replace the sump and the motor assembly." Mr. Shah still has possession of the unit, which has not yet been repaired.

104.  After discovering that the Dishwasher suffered from a defect, Mr. Shah attempted to make a warranty claim through Costco. Mr. Shah was informed that his warranty had expired, and that he could not seek a repair through a warranty claim.

105.  After learning that his Dishwasher suffered from a defect, which Whirlpool knew or should have known, but which was unknown to Mr. Shah at the time he purchased the Dishwasher, Mr. Shah performed research online and discovered numerous other consumers reporting the same or similar incidences of leakage.

106.  Because Whirlpool unlawfully concealed the Defect from Mr. Shah before his purchase, as well as after the Dishwasher was installed in his home, he did not suspect (and had no reason to suspect) that there was anything wrong with the Dishwasher until the Defect manifested.

107.  Mr. Shah's Dishwasher has not operated properly for its life expectancy. Had he known of the Defect, he would have either not purchased the Dishwasher or would have paid less than he did. Therefore, he did not receive the benefit of his bargain.

### *Facts Specific to Plaintiff Thomas McCormick*

108.  In or about May of 2016, Mr. McCormick began shopping for a new, reliable dishwasher that would be long lasting and not require many repairs. After experiencing the premature failure of his prior dishwasher, he specifically sought out a new dishwasher that would be of a high quality. When performing research he was led to believe that the KitchenAid dishwashers were reliable and top of the line. Relying on the representations on authorized distributors Lowe's and Home Depot's websites that the KitchenAid was reliable and top of the line, Mr. McCormick purchased a KitchenAid Model KDFE104HPS at a Home Depot in El Cajon, California.

109.   In addition to Whirlpool's online representations, Mr. McCormick further relied on Whirlpool's representations in its written materials related to KitchenAid branded Dishwasher's quality and reliability regarding the Dishwashers. He did not expect that the dishwasher would prematurely fail and cause damage to his home. Rather, he expected the dishwasher would last at least 10 years.

110.   Mr. McCormick purchased his Dishwasher from Home Depot for approximately $800 in May of 2018. Mr. McCormick paid this amount for his Dishwasher because he believed it to be a high- end dishwasher compared to other brands and models, including his previous dishwasher. Mr. McCormick purchased his Dishwasher for normal, household (non-commercial) use, and it has in fact at all times only been used for normal household purposes.

111.   The Dishwasher was installed in his home shortly after his purchase. Once the Dishwasher was installed in Mr. McCormick's kitchen, he began to regularly use it. From the time of purchase until the incident described below, Mr. McCormick used the Dishwasher as intended, and maintained it in a reasonable manner as an owner of an appliance.

112.   In April of 2021, Mr. McCormick noticed flooring damage near the Dishwasher, which he discovered was a result of a leak from his Dishwasher. Consequently, Mr. McCormick contacted a repairman, who upon performing an inspection of the Dishwasher notified Mr. McCormick that the leak was coming through the diverter motor seal and that he would need a replacement assembly.

113.   During the inspection, when the Dishwasher was pulled out, Mr. McCormick discovered significant damage to the surrounding flooring.

114.   Mr. McCormick paid approximately $300.00 for a replacement assembly and is obtaining a repair estimate for his flooring. He is retaining the defective assembly.

115.   Mr. McCormick did not make a warranty claim because based on his research online, he did not believe the part was covered by any warranty.

116.   After learning that his Dishwasher suffered from a defect, which Whirlpool knew or should have known, but which was unknown to Mr. McCormick at the time he purchased the Dishwasher, Mr. McCormick performed research online and discovered numerous other consumers reporting the same or similar incidences of leakage.

117.   Because Whirlpool unlawfully concealed the Defect from Mr. McCormick before his purchase, as well as after the Dishwasher was installed in his home, he did not suspect (and had no reason to suspect) that there was anything wrong with the Dishwasher until the Defect manifested.

118.   Mr. McCormick's Dishwasher has not operated properly for its life expectancy. Had he known of the Defect, he would have either not purchased the Dishwasher or would have paid less than he did. Therefore, he did not receive the benefit of his bargain.

## WHIRLPOOL'S ACTUAL ORCONSTRUCTIVE KNOWLEDGE OF THE DEFECT

119.   Whirlpool knew or should have known when it sold the Dishwashers to the public that the Dishwashers suffered from the Defect, and that the Defect caused the Dishwashers to function improperly during their expected useful life, fail prematurely, and might result in significant property damage to consumers and the public.

120.   Whirlpool's knowledge of these facts is established through consumer complaints, including several years of public Internet posts on consumer websites, complaining that the Dishwashers failed during normal use. Despite its knowledge, Whirlpool did not remedy or eliminate the Defect in the Dishwashers or remove them from the stream of commerce, and /or improperly denied warranty claims.

121.   Years of customer complaints are also available online regarding the Dishwashers. For example, consumers noted:

From Rmsmith on AppliancePartsPros.com approximately 8 years ago (Kenmore 665.13922K010):[15]

---

[15] https://forum.appliancepartspros.com/posts/t469715-leaking-dishwasher-diverter-motor.

I have a rather newish Kenmore Elite 665.13922K010. It has been leaking from the diverter motor, W10056349, which has been replaced by W10155344. The problem is the seal that the diverter motor rests against, which basically a 3/4" rubber washer with a spring behind it. I just ordered a replacement diverter motor, but I can't see that the seal is included; the exploded diagram didn't have a complete breakout.

From Manage my Life on September 23, 2013 on Shopyourway.com (Kenmore 665.13942K010):[16]

Kenmore Elite Dishwasher model 665.13942K010. Sears repairman replaced Diverter Valve Motor W10056349 on 5/21/12 due to water leaking through it. Today (9/23/13) same leak is occurring again (this time resulting in water damage to surrounding area). Unfortunately, this time the leak also damaged one of the electrical connectors (on harness) that connects to the Diverter. It appears that the following parts need to be replaced to resolve the leak.
1. Diverter Valve Motor
2. Sump with Seal (because I cannot locate a part number for the seal alone)
3. Wiring Harness (due to the one small harness connector being severely corroded)
Questions:
A. Is there a way to keep from having to replace these parts every year or so?
B. Can the connector for the harness be purchased alone so that I do not have to buy and replace the whole harness?
C. Can the seal in the Sump be purchased so that I do not have to purchase and replace the whole sump?
Thanks for any assistance you can provide.

From Frances Starkey on ClassActionRebates.com on February 26, 2016:[17]

The first time I used the Kitchen-Aid dishwasher, I flooded my kitchen which in my brand new house.

I called Sears to report this and thet sent a repairman out and he had to replace the the [sic] pump/motor assembly.

From Arpanshah on AppliancePartsPros.com approximately 4 years ago:[18]

My Whirlpool Dishwasher was leaking from the bottom center and I had a technician who diagnosed and said that the Diverter Motor, part number W10537869, needs to be replaced. He just opened the bottom cover, ran the dishwasher cycle and saw water leaking but didn't remove any of the parts to confirm.

I looked at the forum here, ordered and fixed that part and the dishwasher is still leaking in the same place near the diverter motor. What did I miss? It seems the old diverter motor part is still good.

---

[16] https://www.shopyourway.com/questions/1230353.
[17] https://www.classactionrebates.com/settlements/whirlpool/.
[18] https://forum.appliancepartspros.com/posts/t565085-whirlpool-leaking.

Is it he grommet? Do i need to replace the Sump (W10455268) assembly? Is that something I can do myself? Any help is appreciated. I searched the forums and some talked about replacing sump and some talked about just applying the seal/grommet.

From tdietz on AppliancePartsPros.com approximately 3 years ago (Kenmore 665.12762K310):[19]

My dishwasher was leaking right around the diverter motor. I replaced the diverter motor thinking that was the problem but when I got in there, I saw the rubber grommet and I figured that was the problem. I went ahead and replaced the motor but the leak continued. The manufacturer discontinued selling the $5 grommet because they are evil :-) and instead only sold the entire sump which was a pain to replace and $50 to boot.

Before I went that route, I removed the diverter motor and then treated the grommet with Permatex spray sealant from inside of the dishwasher. I put 5 coats which took about 10 minutes as you only wait about a minute between coat. After about 30 minutes, I also turned the dishwasher over and sprayed the sealant from the bottom a couple of coats as well. Then let it sit overnight. I reinstalled the diverter motor and ran the dishwasher through a couple of cycle the next day and not a leak in sight. Not sure how long this fix will hold but think it's a worth a shot. This stuff has worked good on a oil leak underneath an old car I had so I assume it will last some time.

Worse case scenario, you end up replacing the entire sump anyways so this is at least worth a shot before going that route. Certainly won't hurt anything other than the sump you'll already be replacing and is leaking anyways. Good luck!

From J_H on AppliancePartsPros.com approximately 2 years ago (Kenmore 665.12762K310):[20]

From the dates on these posts, I guess I am one of the lucky ones who didn't have his Kenmore 665.12762K310 start leaking until it was nearly 5 years old. However, I am one of the unlucky ones who got the version with the grommet permanently affixed to the sump. Replaced the sump, replaced the diverter motor. Still leaks, and it's not just a trickle. What an abomination of design this thing is.

Undecided about how to proceed. I have read the various posts - there is no easy way to create positive pressure to seal the grommet/shaft interface. I'm going to try to find a tight neoprene gasket & silicone and hope for the best.

From Orchid Borealis Blogspot on March 11, 2017 (Kenmore 665.12793K311):[21]

After 1 year of the major repair, it developed another problem in fall/winter 2016. This time, the diverter motor started to leak. From googling around, this is another common problem with this model. The lower spray arm of this dishwasher is not passively moving like most of the dishwasher; a motor controls the movement of the spray arm (see the next photo). I'm guessing the leaking problem is coming from

---

[19] https://forum.appliancepartspros.com/posts/t573018-whirlpool-diverter-motor-grommet-leak-fix.

[20] https://forum.appliancepartspros.com/posts/t469715findlastpost-leaking-dishwasher-diverter-motor.

[21] http://orchidborealis.blogspot.com/2017/03/kenmore-dishwasher-leaking-diverter.html.

this more complicated mechanisms.  In this post, I'm going to illustrate how to repair this problem.

122.    In conjunction with Whirlpool's vast experience with kitchen appliances, including designing and selling the Dishwashers, these facts and complaints illustrate that Whirlpool knew or should have known of the Defect.

123.    Whirlpool has a duty to disclose the Defect and to not conceal the Defect from Plaintiffs and Class Members. Whirlpool's failure to disclose, or active concealment of, the Defect places Plaintiffs and Class members at risk of property damage.

124.    Upon information and belief, Whirlpool is currently still selling the defective Dishwashers, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Dishwashers.

125.    Moreover, Whirlpool continues to falsely represent through written warranties and manuals that the Dishwashers are free from Defect, are of merchantable quality, and will perform dependably for years.

126.    When corresponding with customers, Whirlpool does not disclose that the Dishwashers suffer from the Defect. As a result, reasonable consumers, including Plaintiffs and Class Members, purchased and used, and continue to purchase and use the Dishwashers in their homes even though they will prematurely fail, requiring costly repairs.

127.    Had Plaintiffs, Class Members, and the consuming public known that the Dishwashers were defective, would prematurely fail and cause damage to their property, and they would not have purchased the Dishwashers.

128.    Whirlpool has wrongfully placed on Plaintiffs and Class members the burden, expense, and difficulty involved in discovering the Defect, repairing and replacing the Dishwashers (potentially multiple times), and paying for the cost of damages caused by the Defect.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Discovery Rule Tolling

129.    Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their Dishwashers were defective within the time-period of any applicable statutes of limitation.

130.    Among other things, neither Plaintiffs nor the other Class Members knew or could have known that the Dishwashers contain the Defect, which causes leakage and damage to other property.

131.    Further, Plaintiffs and Class Members had no knowledge of the Defect and it occurred in a part of the Dishwashers that is not visible to consumers. Whirlpool attempted to conceal its knowledge of the Defect or otherwise capitalize on it further by selling defective replacement parts.  Accordingly, any applicable statute of limitation is tolled.

### B.     Fraudulent Concealment Tolling

132.    Throughout the time period relevant to this action, Whirlpool concealed from and failed to disclose to Plaintiffs and the other Class Members vital information about the Defect described herein.

133.    Whirlpool kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

134.    Throughout the Class Period, Whirlpool has been aware that the pump assembly it designed, manufactured, and installed in the Dishwashers contained the Defect, resulting in premature and accelerated degradation of the Diverter Shaft Seal and eventual leakage.

135.    Despite its knowledge of the Defect, Whirlpool failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and the other Class Members, even though, at any point in time, it could have disclosed the Defect through recall, individual correspondence, media release, or by other means.

136.    Plaintiffs and the other Class Members justifiably relied on Whirlpool to disclose the Defect in the Dishwashers that they purchased, because the Defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class Members.

137.    Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class Members have sustained as a result of the Defect, by virtue of the fraudulent concealment doctrine.

**C.    Estoppel**

138.    Whirlpool was under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of the defective Dishwashers.

139.    Whirlpool knowingly concealed the true nature, quality, and character of the defective Dishwashers from consumers.

140.    Based on the foregoing, Whirlpool is estopped from relying on any statutes of limitations in defense of this action.

## FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

141.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although, the Defendant is in the best position to know what content it placed on its website and in marketing materials during the relevant timeframe, to the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

142. **WHO**: Defendant made material misrepresentations and/or omissions of fact in its website representations, warranties, owner's manuals, labeling and marketing, through employees receiving warranty claims, and through authorized retailers of the Dishwashers as to demonstrate that the Dishwashers were not defective, were of high-quality, would require fewer repairs than any other dishwashers on the market, and that the Dishwashers would last as long as the average service life of a dishwasher.

143. **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Dishwashers were defective, would damage Plaintiffs and Class Members, were not of high-quality, would require more repairs than other dishwashers, and would fail prior to the average service life of a dishwasher. Defendant's employees and representatives made affirmative misrepresentations to Plaintiffs and Class Members at the time of purchase regarding the same qualities, and when consumers contacted Defendant to make warranty claims. Further, Defendant's conduct has the effect of deceiving Plaintiffs and Class Members into believing that the Dishwashers are not defective, were of "high-quality," would require "fewer repairs" than any other dishwashers on the market, and that the Dishwashers would last as long as the average service life of a dishwasher. Defendant knew or should have known this information is material to the reasonable consumer, including Plaintiffs and Class Members, and impacts the purchasing decision, and yet it omits a necessary warning that the Dishwashers have the propensity to fail, leak, and cause damage to other property, including flooring, cabinetry, and other surrounding areas.

144. **WHEN**: Defendant made the material misrepresentations and/or omissions detailed herein at the time Plaintiffs and Class Members performed research on the Dishwashers to gather information that would aid them in selecting the best dishwasher to purchase, at the time Plaintiffs and Class Members purchased the Dishwashers, at the time Plaintiffs and Class Members made warranty claims, and continuously throughout the applicable Class periods.

145. **WHERE**: Defendant's material misrepresentations and/or omissions were made on its website, through marketing materials, in warranties, in user manuals, on the labeling of the packaging, through employees, and through authorized retailers.

146. **HOW**: Defendant made written misrepresentations and/or failed to disclose material facts regarding the true risks of normal use of the Dishwashers.

147. **WHY**: Defendant engaged in the material misrepresentations and/or omissions detailed herein (e.g. knowing and concealing that knowledge of the Defect) for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase and/or pay for the Dishwashers. Defendant profited by selling the Dishwashers to many thousands of consumers.

148. **INJURY**: Plaintiffs and Class Members purchased the Dishwashers when they otherwise would not have absent Defendant's misrepresentations and/or omissions, and, alternatively, paid more for the Dishwashers than they would have absent Defendant's misrepresentations and/or omissions. Further, the Dishwashers resulted in out-of-pocket costs to repair, faced replacement of parts with additional defective parts, and damage to other property resulting from the leaks.

## CLASS ACTION ALLEGATIONS

149. Plaintiffs bring this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

150. The Class is defined as:

All persons in the United States and its territories who either (a) purchased a new Whirlpool-manufactured, Whirlpool, JennAir, Kenmore, KitchenAid or Maytag-brand dishwasher model identified on Exhibit 1 manufactured on or before December 31, 2017 ( a "Dishwasher"), or (b) acquired a Dishwasher as part of the purchase or remodel of a home, or ( c) received as a gift, from a donor meeting those requirements, a new Dishwasher not used by the donor or by anyone else after the donor purchased the Dishwasher and before the donor gave the Dishwasher to the Settlement Class Member.

151.    Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

152.    Plaintiffs reserve the right to amend or modify the Class definition after he has had an opportunity to conduct discovery.

153.    <u>Numerosity</u>:  Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class Members has not been determined at this time, Plaintiffs are informed and believes that thousands of consumers have purchased the Class Dishwashers nationwide.

154.    <u>Commonality</u>: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

   (a) whether the Class Dishwashers are defectively designed or manufactured;

   (b) whether the fact that the Class Dishwashers suffer from the Defect would be considered material to a reasonable consumer;

   (c) whether, as a result of Whirlpool's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to their detriment by purchasing Class Dishwashers manufactured by Whirlpool;

   (d) whether Whirlpool was aware of the Defect;

   (e) whether Whirlpool breached express warranties with respect to the Class Dishwashers;

   (f) whether Whirlpool has a duty to disclose the defective nature of the Class Dishwashers to Plaintiffs and Class Members;

   (g) whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

   (h) in other ways to be supplemented as a result of discovery.

155.    <u>Typicality</u>:  Plaintiffs' claims are typical of the members of the Classes as all  members of the Classes are similarly affected by the same Defect and Whirlpool's actionable conduct. Plaintiffs and all members of the Classes purchased the Dishwashers with the Defect. In addition, Whirlpool's conduct that gave rise to the claims  of Plaintiffs and members of the Classes (*i.e.* delivering a defective Dishwasher, concealing the Defect, and breaching warranties with respect to the Dishwashers) is the  same for all members of the Classes.

156.    <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members.  Plaintiffs has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intends to prosecute this action vigorously.

157.    <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Whirlpool's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Whirlpool's misconduct.  Absent a class action, Class Members will continue to incur damages, and Whirlpool's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## <u>PREVIOUSLY DISMISSED CLAIMS</u>

158.    Plaintiffs recognize that certain claims asserted by Plaintiffs Redmon and Cleveland were dismissed by prior Orders of the courts, and Plaintiffs do not seek to revive them in this Complaint. Accordingly, to the extent there was dismissal or partial dismissal of any cause of action alleged herein, those are not alleged on behalf of the Plaintiffs' whose claims were dismissed. *See*

*Cleveland v. Whirlpool Corporation*, 0:20-cv-01906, Dkt. No. 58 (July 27, 2021, D. Minn.); *Redmon v. Whirlpool Corporation*, 1:20-cv-06626, Dkt. No. 31 (April 28, 2021, N.D. Ill.).

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Plaintiffs Individually and on Behalf of the Class)**

159. Plaintiffs hereby adopt and incorporate by reference, all foregoing allegations as though fully set forth herein.

160. In connection with its sale of the Dishwashers, Whirlpool expressly warranted that they were free from defect at the time of purchase, and suitable for reliable dishwashing.

161. The defectively designed Dishwashers are subject to and otherwise covered by Whirlpool's Major Appliance Limited Warranty, which applies to each Dishwasher.

162. At all times referenced herein, Whirlpool was the "seller" of the Dishwashers.

163. At all times referenced herein, the Dishwashers were "goods."

164. Whirlpool's representations in its Warranty and regarding the reliability and durability of the Dishwashers, among other representations, each constitute an affirmation or promise made by the seller to the buyer which relates to the goods, and which becomes part of the basis of the bargain, creates an express warranty that the goods shall conform to the affirmation or promise.

165. These descriptions and representations were made part of the basis of the bargain and created an express warranty that the goods shall conform to the description.

166. Each of the Dishwashers likewise has an identical or substantially identical Warranty.

167. Whirlpool was obligated, under the terms of the express warranty to adequately repair or replace the defective Dishwashers for Plaintiffs and Class Members.

168. Privity is not required because Plaintiffs and each of the members of the Class are the intended beneficiaries of Whirlpool's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Dishwashers and have no rights under the warranty agreements provided by Whirlpool. Whirlpool's warranties were designed for and intended to

benefit the consumer only and Plaintiffs and Class Members were the intended beneficiaries of the Dishwashers.

169.    More specifically, Whirlpool's manifest intent that its warranties apply to Plaintiffs and consumer Class Members as third-party beneficiaries, is evident from the statements contained in its product literature, including its Warranty, which specifically states the Dishwashers are to be used for non-commercial, household use.  Likewise, it was reasonably foreseeable that Plaintiffs and consumer Class Members would be the intended beneficiary of the products and warranties.

170.    In its Warranty, Whirlpool warrants that the Dishwashers would be free of defects for one year from the date of purchase.

171.    Whirlpool's warranty representations are made online, on its packaging, through its various manuals, and its Warranty.

172.    Whirlpool breached the warranty because it improperly and unlawfully denies valid warranty claims, and it has failed or refused to adequately repair or replace the Dishwashers with non-defective units or parts. Plaintiffs and the Class Members have privity of contract with Whirlpool through their purchase of the Dishwashers, and through the express written and implied warranties that Whirlpool issued to its customers. Whirlpool's warranties accompanied the Dishwashers and were intended to benefit end-users of the Dishwashers.

173.    To the extent Class Members purchased the Dishwashers from third-party retailers or via the purchase of their homes, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Whirlpool and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Dishwashers.

174.    The express written warranties covering the Dishwashers were a material part of the bargain between Whirlpool and consumers. At the time it made these express warranties, Whirlpool knew of the purpose for which Dishwashers were to be used.

175. Whirlpool breached its express warranties by selling Dishwashers that were, in actuality, not free of defect, would inevitably fail prematurely, were not made from merchantable material and workmanship, and could not be used for the ordinary purpose of reliably cleaning dishwashes. Whirlpool breached its express written warranties to Plaintiffs and Class Members in that the Dishwashers are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a risk of damage to Plaintiffs and Class Members.

176. The Dishwashers that the Plaintiffs and Class Members purchased contained a Defect that caused each of them damages including water damage to cabinetry and flooring, loss of the product, loss of the benefit of their bargain, and other property damage.

177. The limitations and the exclusions in Whirlpool's Warranty are harsh, oppressive, one-sided, unconscionable and unenforceable, as described supra, particularly in light of the fact that Whirlpool knew that the Dishwashers suffered from the Defect described herein.

178. Any attempt by Whirlpool to limit or disclaim the express warranty in a manner that would exclude coverage of the Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Whirlpool's concealment of material facts. Thus, any such effort to disclaim, or otherwise limit, its liability for the Defect is null and void.

179. Moreover, Whirlpool was put on constructive notice about its breach through its review of consumer complaints dating back at least eight years ago, as well as through appliance sale and repair entities, and, upon information and belief, through product testing.

180. Despite having notice and knowledge of the defective nature of the Dishwashers, Whirlpool failed to provide any relief to Class Members with Dishwashers more than one (1) year old, failed to provide a non-defective replacement Dishwasher to Plaintiffs and Class Members, and otherwise failed to offer any appropriate repair or compensation from the resulting damages.

181. Whirlpool breached its express warranty to adequately repair or replace the Dishwashers despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Dishwashers.

182.    To the extent that Whirlpool offered to replace the defective Dishwashers, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiffs and Class Members whole because the warranty covering the Dishwashers gives Whirlpool the option to repair or replace the Dishwasher, where neither is sufficient.

183.    Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

184.    Had Plaintiffs, Class Members, and the consuming public known that the Dishwashers were defective, would cause damage, or that Whirlpool would not properly honor its warranty, they would not have purchased the Dishwashers or would have paid less for them.

185.    To the extent any express warranties do not by their terms cover the Defect alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiffs and Class Members are not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

186.    Plaintiffs and Class Members have performed all duties required of them under the terms of the express warranty, except as may have been excused or prevented through the conduct of Whirlpool or by operation of law in light of Whirlpool's conduct described throughout this Complaint.

187.    Whirlpool has received timely notice regarding the problems at issue in this litigation, and notwithstanding, Whirlpool has failed and refused to offer an effective remedy.

188.    As a direct and proximate result of Whirlpool's breach of its express written warranties, Plaintiffs and Class Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover damages.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
### (Plaintiffs Individually and on Behalf of the Class)

189.    Plaintiffs hereby adopt and incorporates by reference, all foregoing allegations as though fully set forth herein.

190.    Whirlpool is and was at all relevant times a merchant with respect to the Class Dishwashers.

191.    The Class Dishwashers are and were at all relevant times a "good."

192.    Whirlpool was at all relevant times involved in the manufacturing, and is the distributor, warrantor, and/or seller of the Dishwashers.

193.    Whirlpool knew or had reason to know of the specific use for which the Dishwashers, as goods, were purchased.

194.    Whirlpool entered into agreements with retailers, suppliers, and/or contractors to sell its Dishwashers to be installed at Plaintiffs' and Class Members' homes.

195.    Whirlpool provided Plaintiffs and Class Members with implied warranties that the Dishwashers were merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers and their property.

196.    However, the Dishwashers are not fit for their ordinary purpose of providing reasonably reliable method of washing dishes because, inter alia, the Dishwashers contain a defect preventing the Dishwashers from reliably washing dishes and causing leakage outside of the unit and damaging cabinetry and flooring.  Therefore, the Dishwashers are not fit for their particular purpose of reliably washing dishes.

197.    Plaintiffs and Class Members have had sufficient direct dealings with either Whirlpool or one of its agents to establish privity of contract between Whirlpool, on the one hand, and Plaintiffs and each Class Member, on the other hand.

198.    Notwithstanding, privity is not required because Plaintiffs and each of the Class Members are the intended beneficiaries of Whirlpool's warranties and its sale through retailers.  The

retailers were not intended to be the ultimate consumers of the Dishwashers and have no rights under the warranties provided by Whirlpool. Whirlpool's warranties were designed for and intended to benefit the consumer only and Plaintiffs and Class Members were the intended beneficiaries of the Dishwashers.

199. More specifically, Whirlpool's manifest intent that its warranties apply to Plaintiffs and consumer Class Members as third-party beneficiaries, is evident from the statements contained in its product literature, including its Warranty, which specifically states the Dishwashers are to be used for household, non-commercial use. Likewise, it was reasonably foreseeable that Plaintiffs and consumer Class Members would be the intended beneficiary of the products and warranties.

200. Whirlpool impliedly warranted that the Dishwashers were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Dishwashers manufactured, supplied, distributed, and/or sold by Whirlpool were safe and reliable for cleaning dishes; and (ii) a warranty that the Dishwashers would be fit for their intended use while the Dishwashers were being operated.

201. Contrary to the applicable implied warranties, the Dishwashers, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable and durable methods of cleaning dishes. Instead, the Dishwashers suffer from a defective design and/or manufacture, as alleged herein.

202. Whirlpool's failure to adequately repair or replace the defective Dishwashers has caused the warranty to fail of its essential purpose.

203. Whirlpool breached the implied warranties because the Dishwashers were sold with the Defect, which substantially reduced and/or prevented the Dishwashers from being used for safe dish cleaning.

204. Plaintiffs provided Whirlpool notice of its breach in October of 2020, prior to the filing of this Complaint.

205.    Moreover, Whirlpool was put on constructive notice about its breach through its review of consumer complaints and other reports described herein, and, upon information and belief, through product testing.

206.    Had Plaintiffs, Class Members, and the consuming public known that the Dishwashers were defective or would cause damage, they would not have purchased the Dishwashers or would have paid less for them.

207.    As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**THIRD CAUSE OF ACTION**
**NEGLIGENCE**
**(Plaintiffs Individually and on Behalf of the Class)**

208.    Plaintiffs hereby adopt and incorporates by reference, all foregoing allegations as though fully set forth herein.

209.    Whirlpool has a duty to exercise reasonable care in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Dishwashers that Whirlpool places into the stream of commerce, including a duty to assure that the product will perform as intended and will not cause damage as described herein.

210.    Whirlpool breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Dishwashers that Whirlpool placed into the stream of commerce in that Whirlpool knew or should have known that the product was defective, did not function as intended, and/or created a high risk of unreasonable, dangerous, foreseeable consequences.

211.    The negligence of Whirlpool, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

    a.  designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Dishwashers without thoroughly testing it;

    b.   negligently failing to adequately and correctly warn Plaintiffs, Class Members, and the public, of the risks, potential damage, and dangers of premature failure of Whirlpool's Dishwashers;

    c.   negligently failing to recall or otherwise notify users at the earliest date that it became known that the Dishwashers was, in fact, defective and would prematurely fail;

    d.   negligently advertising and recommending the use of the Dishwashers without sufficient knowledge as to its manufacturing defect and premature failure;

    e.   negligently representing that Whirlpool's Dishwashers were suitable for its intended purpose when, in fact, the Defect will render the Dishwasher unable to properly clean dishes and otherwise lead to water damage outside of the units themselves;

    f.   negligently designing and processing the Dishwashers in a manner that would prematurely fail; and

    g.   in other such ways that may be proven at trial.

212. Whirlpool were negligent in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Whirlpool's Dishwashers in that they:

    a.   failed to use due care in designing and manufacturing the Dishwashers so as to avoid the premature failure when the Dishwashers was used for its intended purpose;

    b.   designing and manufacturing the Dishwashers in a manner contradictory to the Diverter Shaft Seal's manufacturing instructions;

    c.   failing to conduct adequate testing to determine the useful life of the Dishwashers; and

    d.   failing to warn Plaintiffs, prior to actively encouraging the purchase of the Dishwashers either directly or indirectly, orally or in writing, about the defective nature of the product; and

    e.   in other such ways that may be proven at trial.

213.    Upon information and belief, despite the fact that Whirlpool knew or should have known that the Dishwashers was defective and would prematurely fail, Whirlpool continued to design, manufacture, process, distribute, deliver, supply, market and/or sell Dishwashers to Plaintiffs, Class Members, and/or the consuming public.

214.    Whirlpool knew or should have known that consumers such as Plaintiffs and Class Members would foreseeably suffer damage to the Dishwashers and Plaintiffs and Class Members' property as a result of Whirlpool's acts and omissions, as well as failure to exercise ordinary care, as well as Whirlpool's negligent design and manufacture of the Dishwashers, as set forth herein.

215.    Whirlpool's negligence was the proximate cause of Plaintiffs' and Class Members' damages to the product, water damage to cabinetry and flooring, as well as economic loss, which they suffered and will continue to suffer.

216.    By reason of the foregoing, Plaintiffs and Class Members experienced and/or are at risk of premature failure of the Dishwashers, and water damage to cabinetry and flooring.

217.    Had Plaintiffs, Class Members, and the consuming public known that the Dishwashers were defective or would cause damage, they would not have purchased the Dishwashers or would have paid less for them.

218.    As a direct and proximate result of Whirlpool's misconduct, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Plaintiffs Individually and on Behalf of the Class)**

219.    Plaintiffs hereby adopt and incorporates by reference, all foregoing allegations as though fully set forth herein.

220.    Whirlpool knew or should have known that the Dishwashers were defective in design and manufacture, was not fit for its ordinary and intended use, and failed to perform in accordance with advertisements, marketing materials and warranties disseminated by Whirlpool, and with the reasonable expectations of ordinary consumers.

221.    Whirlpool fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Dishwashers is defective, would prematurely fail, and that the damages were not the result of mishandling or installation errors.

222.    Whirlpool had exclusive knowledge of the defective nature of the Dishwashers at the time of sale and at all other relevant times. The Defect is latent and not something that Plaintiffs or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

223.    Whirlpool had the capacity to, and did, deceive Plaintiffs and Class Members into believing that they were purchasing Dishwashers or homes with Dishwashers free from defects.

224.    Whirlpool undertook active and ongoing steps to conceal the Defect. Plaintiffs are not aware of anything in Whirlpool's advertising, publicity, or marketing materials that disclosed the truth about the Defect, despite Whirlpool's awareness of the problem.

225.    The facts concealed and/or not disclosed by Whirlpool to Plaintiffs and Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Dishwashers.

226.    Whirlpool intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

227.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Dishwashers.

228.    Plaintiffs and Class Members suffered a loss of money in an amount to be proven at trial, *inter alia*, as a result of Whirlpool's fraudulent concealment and nondisclosure becausethey would not have purchased the Dishwashers on the same terms if the true facts concerning the defective Dishwashers had been known.

229.    Had Plaintiffs, Class Members, and the consuming public known that the Dishwashers were defective or would cause damage, they would not have purchased the Dishwashers or would have paid less for them.

230.    By reason of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer damage and injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Award damages, including compensatory, exemplary, and statutory damages, to Plaintiffs and the Classes in an amount to be determined at trial;

C. Grant restitution to Plaintiffs and the Classes and require Whirlpool to disgorge its ill-gotten gains;

D. Permanently enjoin Whirlpool from engaging in the wrongful and unlawful conduct alleged herein;

E. Award Plaintiffs and the Class Members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F. Award Plaintiffs and the Class Members pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G. Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: August 20, 2021                    Respectfully submitted,

*/s/ Harper T. Segui*
Harper T. Segui
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, SC 29464
hsegui@milberg.com

Rachel Soffin
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLP**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rsoffin@milberg.com

*Attorneys for Plaintiffs and Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served the foregoing was served upon all counsel of record via this Court's CM/ECF system.

This 20th day of August, 2021.                    Respectfully submitted,

*/s/ Harper Segui*
Harper Segui
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN LLP**
hsegui@milberg.com