## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **ELISABETH CLEVELAND, AMY LARCHUK, CHRISTOPHER REDMON, DHAVAL SHAH, and THOMAS MCCORMICK,** on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>**WHIRLPOOL CORPORATION,**<br><br>        Defendant. | **CASE NO. 20-cv-1906-WMW-KMM** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

Plaintiffs Elisabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick (collectively "Plaintiffs") respectfully move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of a proposed Settlement with Whirlpool Corporation ("Whirlpool"), preliminary certification of the Settlement Class defined in the Settlement Agreement, and approval of the proposed notice to the Settlement Class.[1] This Settlement, reached after substantial expert investigation, active litigation, confirmatory discovery, and lengthy and hard-fought negotiations in this case

---

[1] The Settlement Agreement and its Exhibits are attached hereto as Exhibit 1. Capitalized terms not defined herein shall have the same definitions and meanings ascribed to them in the Settlement Agreement.

and three (3) other associated cases, will resolve all of Plaintiffs' and Settlement Class Members' claims against Whirlpool in the above-captioned action and the related litigation.[2]

## I.    INTRODUCTION

Plaintiffs, individually and on behalf of all others similarly situated, and Defendant Whirlpool Corporation ("Whirlpool" or "Defendant") have entered into a Class Action Settlement Agreement (the "Settlement," "Agreement," or "Settlement Agreement"), attached hereto as Exhibit 1, to resolve Plaintiffs' claims that certain Dishwashers, identified and defined in the Settlement Agreement, have an alleged defect which may cause the Dishwashers to leak. Whirlpool has provided documentation that it distributed more than 6,700,000 of the Dishwashers into the United States consumer marketplace.

For its part, Whirlpool maintains that it produces quality consumer products, including the Dishwashers. Whirlpool further asserts that the Dishwashers are not defective, uniformly or otherwise. Accordingly, Whirlpool denies Plaintiffs' allegations in this litigation.

Notwithstanding the Parties' disagreement regarding the substantive allegations, they have been able to reach an agreement to resolve the litigation. Accordingly, Plaintiffs

---

[2] As discussed below, similar putative class actions were filed by the undersigned proposed Class Counsel against Whirlpool in the United States District Courts for the Northern District of Illinois, Eastern District of Pennsylvania, and Northern District of California. For purposes of settlement, proposed Class Counsel filed a Consolidated Amended Complaint ("CAC") in the present action (Doc. No. 63) to include the Plaintiffs in those cases in this action, effectively consolidating the cases for the purpose of settlement. Pursuant to the request for relief in this Motion, litigation of the Consolidated Amended Complaint is stayed pending the process to approve the Settlement.

respectfully submit this Memorandum of Law in support of the unopposed motion for entry of an order that will: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (3) appoint Plaintiffs Cleveland, Larchuk, Redmon, Shah and McCormick as Class Representatives; (4) approve the Notice Plan set forth in the Agreement, including the form and content of the Notices; (5) approve and order the opt-out aend objection procedures set forth in the Agreement; (6) stay all deadlines in this litigation pending Final Approval of the Settlement; (7) appoint as Class Counsel the attorneys and their law firm identified herein; and (8) schedule a Final Approval Hearing.

The Court should grant Preliminary Approval because the Settlement provides substantial relief for the Settlement Class, including multiple options for relief; the terms of the Settlement are well within the range of reasonableness; and the terms of the Settlement are consistent with applicable case law. Given the significant risks inherent in this litigation, the Settlement is an outstanding result for the Settlement Class. The Settlement satisfies all Eighth Circuit criteria for settlement approval, as it is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. It provides substantial and immediate benefits to Settlement Class Members, which, although uncapped, are collectively valued by proposed Class Counsel at approximately $15.71 to $21.33 million. *See* Exhibit 2, Expert Report from Frank Bernatowicz.

As described in further detail below, these extended service plan benefits include the ability to make claims for seven years beyond the one-year warranty accompanying the purchase of a Dishwasher for either past or future diverter seal leaks, including

reimbursement for Paid Qualifying Repairs or Paid Qualifying Replacements of the Dishwashers[3]. Although *not* included in the estimated value of the settlement, the Settlement also provides the Settlement Class with the ability to elect a cash rebate of up to $200.00 towards other Whirlpool manufactured dishwashers, instead of reimbursement of out-of-pocket expenses.

In addition, Whirlpool shall pay all Notice and Administration Costs directly to the Settlement Administrator as such costs and expenses are invoiced, and Whirlpool shall pay the Attorney Fee and Expense Award and all Service Payments to the Class Representatives.

This Settlement is the product of hard-fought litigation and arm's-length negotiations, which included: (1) the retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defect and damages at various stages of litigation, and who also assisted with discovery; (2) adjudication of Whirlpool's motion to dismiss in the present action, and also in associated litigation in the United States District Court for the Northern District of Illinois; (3) briefing Whirlpool's motion to dismiss in associated litigation in the United States District Court for the Eastern District of Pennsylvania; (4) negotiating a protective order, order governing electronically stored information, and other case management orders involving coordination of litigation and schedules across all cases; (5) attending regular case management conferences with

---

[3] Each Dishwasher is sold with a one-year warranty. This settlement includes an extended service benefits plan that allows class members to make claims for past and future diverter shaft leaks that occur within eight years after the date of manufacture, which is seven years beyond the original Dishwasher warranty.

Magistrate Judge Menendez in this litigation and judges in the Northern District of Illinois, Northern District of California and Eastern District of Pennsylvania; (6) significant fact discovery, which aided the resolution of this action, and included serving and responding to interrogatories, requests for production, and third-party retailer discovery; (7) two-full day mediation sessions (on April 27, 2021 and April 29, 2021), and subsequent months of arm's-length negotiations between experienced class-action counsel for both Whirlpool and Plaintiffs, all led by a mediator with substantial experience in class action litigation.

In evaluating the terms of the Settlement, counsel for the Plaintiffs and the putative Settlement Class have concluded that the Settlement is in the best interest of Settlement Class Members due to: (1) the substantial relief afforded to the Settlement Class Members; (2) the risks and uncertainties of this complex litigation; (3) the expense and length of time necessary to prosecute this action through class certification, trial, and any subsequent appeals; and (4) the desirability of consummating the Settlement to provide prompt and effective relief to the Settlement Class Members. Considering these factors, as discussed below, Plaintiffs and Plaintiffs' counsel believe that the fair and reasonable Settlement merits preliminary approval.

The benefits of this proposed nationwide Settlement must be considered in the context of the risk that protracted litigation in four (4) separate districts, as this litigation was originally situated, might lead to no recovery, or to a smaller recovery for Plaintiffs and/or proposed Settlement Class Members. Further, Whirlpool has vehemently denied any liability and mounted a vigorous defense at every stage of this litigation, and Plaintiffs

expect that Whirlpool would have continued to do so through class certification, a trial on the merits in each separate action, and even proceeding to appeal.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Summary of Allegations in the Consolidated Amended Complaint

On August 20, 2021, with Whirlpool's consent, Plaintiffs Cleveland, Larchuk, Redmon, Shah and McCormick filed a Consolidated Amended Complaint in this litigation for the purpose of settlement. (Minnesota Action, ECF No. 63) ("CAC"). The CAC involves the same alleged defect as was alleged in the complaints filed in the Northern District of Illinois, Eastern District of Pennsylvania, and Northern District of California, discussed below, and each included multiple claims made on behalf of consumers in the states in which the complaints were filed.

As alleged in the CAC, in addition to a bevy of other home appliances, Whirlpool has designed and manufactured dishwashers for decades. CAC at ¶2. From 2010-2020, Whirlpool designed and manufactured the Dishwashers in a substantially similar manner, which were sold under the various brand names and models identified in the Settlement Agreement. *Id.* The Dishwashers were and are marketed as "high-quality" products, with base retail prices ranging from $500-$700. *Id.* at ¶4.

As alleged by Plaintiffs, based on industry standards, the average service life of a dishwasher is typically seven to twelve years (or 9.5 years on average), and Whirlpool boasted in at least one article that the expected lifespan of its dishwashers is ten years. *Id.* at ¶5. However, as alleged in the CAC, Whirlpool designed, manufactured, distributed,

marketed, and sold the Dishwashers with a uniform defect that can and has caused the Dishwashers to leak prior to expiration of their expected life span.  *Id.* at ¶6.

The Dishwashers were and are equipped with a pump motor diverter shaft seal ("Diverter Shaft Seal"). *Id.* at ¶6.  A Diverter Shaft Seal is part of a dishwasher's sump assembly, which is located at the bottom of the dishwasher's tub and is responsible for collecting and distributing the water throughout the dishwasher during cleaning. *Id.* at ¶8. The sump collects and holds water below the dishwasher tub and the diverter shaft directs the collected water into the spray arms, while the Diverter Shaft Seal prevents leaks between the sump and the tub. *Id.*  In other words, the Diverter Shaft Seal's main purpose is to prevent the dishwasher from leaking and causing damage to consumers' homes. *Id.*

However, as alleged, the Diverter Shaft Seal in the Dishwashers is uniformly defective in its design and/or manufacture in that it is incorrectly oriented, accelerating degradation of the seal and creating a buildup of debris that prevents the shaft seal spring from properly sealing the diverter shaft and sump ("Diverter Shaft Seal Defect" or "Defect"). *Id.* at ¶7. As a result of the uniform Diverter Shaft Seal Defect, Plaintiffs and Class Members' Dishwashers can and have experienced significant leakage through the Diverter Shaft Seal, flowing out of the dishwasher to areas below and surrounding the dishwasher, and exposing consumers to unexpected water leaks.  *Id.*

Whirlpool's Major Appliance Limited Warranty ("Warranty") states that within one year of the purchase date, Whirlpool "will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product." *Id.* at ¶14.  Thus,

while the Defect existed at the time of manufacture, prior to this litigation and settlement, any Class Dishwashers with the Diverter Shaft Seal Defect that experienced a leak following this one-year period would not be covered under Whirlpool's one year Warranty. For Class Members whose Dishwashers experience the Defect, which is not covered under the Warranty, the cost associated with labor and replacing the defective Diverter Shaft Seal is approximately $200.00 or more. *Id.* at ¶16.

As discussed herein, through the Settlement Agreement, Class Members with paid qualifying repairs or replacements of the Diverter Shaft Seal Defect are receiving an extended service plan benefits that allows them to receive up to $225.00 for a diverter seal leak that occurs within eight years of manufacture of their Class Dishwasher, which is seven (7) years longer than the factory warranty accompanying the purchase of the Dishwashers.

### B. Relevant Procedural Background

On September 4, 2020, Plaintiff Cleveland filed her class action Complaint alleging that Whirlpool designed, manufactured, distributed, marketed, and sold the Dishwashers with the uniform Diverter Shaft Seal Defect, described *supra*, that can and has caused the Dishwashers to leak. Related actions were filed by the undersigned proposed Class Counsel on September 10, 2020, in the United States District Court for the Eastern District of Pennsylvania (*Larchuk v. Whirlpool Corp.*, No. 2:20-cv-04442-BMS (E.D. Pa.)) ("Pennsylvania Action); on November 6, 2020, in the United States District Court for the Northern District of Illinois (*Redmon v. Whirlpool Corp.,* No. 1:20-cv-06626 (N.D. Ill.) ("Illinois Action)); and on April 16, 2021, in the United States District Court for the

Northern District of California (*Shah v. Whirlpool Corp.*, No. 3:21-cv-02739 (N.D. Cal)) ("California Action").

For effective and efficient coordination and scheduling, the Parties entered into a stipulated Joint Case Management Plan. The Parties spent considerable time developing the Joint Case Management Plan to be applied across all four (4) coordinated actions. Settlement Class Counsel and Whirlpool's Counsel engaged in numerous meet and confer discussions, both via telephone and in writing, regarding the Joint Case Management Plan to be proposed in each of the actions. The Joint Case Management Plan provided each of the Courts with, *inter alia*, the agreed upon (1) coordinated schedules, (2) number of discovery requests permitted by each side; (3) number of depositions that could be taken, (4) deposition protocols, (5) methodology for coordinating and designating discovery across all coordinated actions, and (6) methodology for seeking resolution of discovery disputes.  On April 23, 2021, the Joint Case Management Plan was submitted to the Court (Minnesota Action, ECF. No. 44), and on April 29, 2021, this Court granted the parties Joint Discovery Plan. (Minnesota Action, ECF No. 46). Likewise, the Joint Case Management Plan was submitted in the Illinois and Pennsylvania Actions, and subsequently adopted by those courts.

On October 29, 2020, Whirlpool filed a motion to dismiss in this action (Minnesota Action, ECF Nos. 16 and 18), and Plaintiff Cleveland filed an Amended Complaint on November 25, 2020 (Minnesota Action, ECF No. 25).  On December 15, 2020, Whirlpool renewed its motion to dismiss in the Minnesota Action, seeking to dismiss Plaintiff Cleveland's claims in their entirety and with prejudice for failure to state a claim upon

which relief can be granted. (Minnesota Action, ECF Nos. 27 and 29). On January 15, 2021, Plaintiff Cleveland filed her response in opposition to Whirlpool's motion to dismiss (Minnesota Action, ECF No. 32) and Whirlpool filed its reply in support of its motion to dismiss on February 1, 2021 (Minnesota Action, ECF No. 35). On February 26, 2021, this Court heard oral argument from both parties on Whirlpool's motion to dismiss. On July 27, 2021, this Court entered an Order Granting in Part and Denying in Part Defendant's Motion to dismiss, granting without prejudice Whirlpool's motion to dismiss Plaintiff Cleveland's claims for Breach of Contract and Unjust Enrichment, and denying the motion to dismiss for Plaintiff Cleveland's claims alleging breach of express and implied warranty, violations of the Minnesota Consumer Fraud Act (MCFA), the Minnesota Uniform Deceptive Trade Practices Act (MDTPA), and the Minnesota Unlawful Trade Practices Act (MUTPA). In the Minnesota Action, the Parties also attended several status conferences with Magistrate Judge Menendez by telephone, including for the discussion of the submitted Joint Case Management Plan.

Whirlpool also filed a motion to dismiss in the Illinois Action on February 3, 2021, seeking to dismiss Plaintiff Redmon's claims in their entirety. (Illinois Action, ECF No. 11 and 12). Plaintiff Redmond responded to the motion to dismiss on March 10, 2021 (Illinois ECF No. 22), and Whirlpool filed its reply on March 6, 2021 (Illinois Action, ECF No. 24). On April 28, 2021, the court granted in part and denied in part Whirlpool's motion to dismiss, granting Whirlpool's motion to dismiss without prejudice as to Plaintiff Redmon's express warranty claim beyond the actual written product warranty, breach of implied warranty and fraudulent concealment, and with prejudice as to Plaintiff Redmon's

claims for negligence and injunctive relief. The court denied the motion to dismiss Plaintiff Redmon's claim for breach of the express warranty as to the product warranty, and for the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., unjust enrichment, and breach of contract. (Illinois Action, ECF No. 31). The Parties also attended multiple status conferences with the Illinois court by telephone, including for the discussion of discovery, case scheduling, and coordination of the litigation among all the courts, including the submitted Joint Case Management Plan. Plaintiff Redmon voluntarily dismissed his action on August 20, 2021, as a result of the settlement. (Illinois Action, ECF No. 48).

Whirlpool also filed a motion to dismiss in the Pennsylvania Action on January 7, 2021 (Pennsylvania Action, ECF No. 20). Plaintiff Larchuk responded in opposition on February 8, 2021 (Pennsylvania Action, ECF No. 21), and Whirlpool filed its reply in support of its motion to dismiss on February 22, 2021 (Pennsylvania Action, ECF No. 22). Plaintiff Larchuk voluntarily dismissed her action on August 23, 2021, as a result of the settlement. (Pennsylvania Action, ECF No. 32). The Parties also submitted the Joint Case Management Plan utilized in this action.

Whirlpool also filed a motion to dismiss in the California Action on June 28, 2021. (California Action, ECF No. 21). The Parties subsequently appeared via Zoom for a Case Management Conference to discuss coordination of the case and other preliminary matters. After the court expressed concern over the number of actions filed, Plaintiff Shah dismissed the California Action without prejudice on July 29, 2021 (California Action, ECF No. 29) prior to filing a response to Whirlpool's motion to dismiss, so the Parties could incorporate

11

Plaintiff Shah's claims into one of the other pending cases. Plaintiff Shah's claims were ultimately incorporated into the CAC in the Minnesota Action (Minnesota Action, ECF No. 63).

In addition to aforementioned litigation, the Parties engaged in significant discovery. Specifically, the Parties served and responded to written discovery requests, and Whirlpool produced voluminous data and documents, which ultimately aided the parties in resolving this action. Plaintiffs also served eleven third-party subpoenas to retailers of the Dishwashers, as well as serving both a subpoena for documents and subpoena for the Fed. R. Civ. P. 30(b)(6) deposition of the manufacturer of the Diverter Shaft Seal. As indicated *supra*, Plaintiffs engaged their experts during the various discovery stages in order to ensure discovery was thorough and would aid them in producing substantive expert reports.

As described more fully, *infra*, the Parties began preliminary settlement discussions in March of 2021. To aid in settlement discussions prior to mediation, the Parties requested and exchanged discovery pursuant to Rule 408 of the Federal Rules of Evidence.

As discussed *supra*, on August 20, 2021, Plaintiffs filed their Consolidated Amended Complaint (for the purposes of settlement). (Minnesota Action, ECF No. 63). If the Parties had not negotiated this Settlement, Whirlpool undoubtedly would have contested class certification and moved for summary judgment on any potentially remaining claims in each of the four (4) actions.

### C. Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs against Whirlpool. *See* Joint Declaration of Class Counsel. ("Joint Decl."),

attached as Exhibit 3, at ¶3-5. Class Counsel performed hours of research on Whirlpool, its Dishwashers, the warranties, care and use manuals that pertained to the Dishwashers, and consumer complaints. Additionally, numerous consumers were interviewed, and various documents were collected to gather information about the Dishwashers, the alleged defect, and Whirlpool's actions regarding the alleged defect and its knowledge of the same. *Id.*

Further, Class Counsel worked closely with multiple well-qualified engineering experts who spent many hours investigating the Dishwashers, including, *inter alia*, research of the product, specifications, industry standards, Diverter Shaft Seal manufacturer's installation instructions, and alternative feasible designs. *Id.* As part of their investigation, the engineers collectively performed leakage testing and disassembly of the sump assembly parts, which included the Diverter Shaft Seal. One engineer procured a current dishwasher to determine if Whirlpool had altered the design and fixed the Defect. The engineers also provided ongoing assistance to Class Counsel during litigation, including formulation of discovery questions. *Id.*

The foregoing information was essential to Class Counsel's ability to identify the Defect and analyze the nature of Whirlpool's conduct and potential claims and remedies. *Id*. Class Counsel expended significant resources researching and developing the legal claims at issue. *Id*. Class Counsel is familiar with the claims as they have litigated and resolved cases with similar factual and legal issues. *Id*. Class Counsel has experience in understanding the remedies and damages at issue, as well as what information is critical in determining class membership. *Id*. Class Counsel spent a significant amount of time analyzing information regarding the alleged Defect. *Id.* at ¶3-5, 19, 32, 43-49.

Class Counsel entered the mediation fully informed of the merits of Settlement Class Members' claims and negotiated the proposed Settlement, without staying any pending action and thus, while zealously advancing the position of Plaintiffs and Settlement Class Members. Class Counsel had already provided dates for the inspection of certain Plaintiffs' Dishwashers and for their depositions, had begun scheduling depositions of Whirlpool's employees, noticed the deposition of the Diverter Shaft Seal manufacturer, and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiffs and the Settlement Class. *Id*. Atlanta based mediator, Hunter R. Hughes, III, mediated the case over two days and stayed actively engaged in settlement discussions following conclusion of the mediation in order to help the Parties reach an acceptable compromise. *Id.* at ¶¶17, 18, 20.

Prior to negotiating the Settlement, Class Counsel spent significant time communicating with Plaintiffs, working with the expert consultants, investigating facts, researching the law, preparing well-pleaded complaints and amended complaints, engaging in discovery, briefing motions to dismiss, and reviewing important documents and data. *Id.* at ¶¶4-5, 16, 19, 32. This resulted in the Settlement for which Preliminary Approval is respectfully requested.

### D. Mediation and Subsequent Settlement Discussions

As shown herein, the Parties' settlement negotiations are the product of hard-fought, arm's-length negotiations, which took place over the course of approximately five (5) months. Specifically, the Parties entered into preliminary settlement negotiations in March of 2021. Prior to mediation, the Parties exchanged requests for information pursuant to

14

Fed. R. Evid. 408 and the Plaintiffs' made a detailed settlement demand. Joint Decl. at ¶¶15, 18, 48. The Parties also provided detailed mediation statements to Mr. Hughes, which were exchanged among the parties on April 26, 2021. *Id.* at ¶18.

Thereafter, the Parties attended two full-day mediation sessions (on April 27, 2021, and April 29, 2021) with Mr. Hughes, a neutral mediator who has substantial experience mediating class actions. While the Parties were able to make substantial progress toward settlement of this Action pending against Whirlpool, the Parties were unable to fully resolve this matter at the first day of mediation. Following the second day of mediation, the Parties agreed to most of the material terms of the Settlement and exchanged a term sheet. On July 29, 2021, the Parties reached full resolution of the terms of the Settlement and continued their discussions of the finer details of the Settlement through October 2021. Joint Decl. at ¶ 18-23. The Parties did not agree to attorneys' fees and costs, or service awards for Class Representatives during either mediation session, or prior to resolution of the material terms of the Settlement, all of which was the subject of numerous follow-up discussions among the Parties, with the assistance of Mr. Hughes. *Id.*

### III.   MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

The Settlement's details are contained in the Agreement signed by the Parties, a copy of which is attached as Exhibit 1. Below is a summary of the key terms of the Settlement.[4]

---

[4] To the extent of any inconsistency between the description of the Settlement herein and the terms of the Settlement Agreement, the express terms of the Settlement Agreement shall control.

The Settlement Class is defined as follows:

> All persons in the United States and its territories who either (a) purchased a new Class Dishwasher[5], or (b) acquired a new Class Dishwasher as part of the purchase or remodel of a home, or (c) received as a gift, from a donor meeting those requirements, a new Class Dishwasher not used by the donor or by anyone else after the donor purchased the Class Dishwasher and before the donor gave the Class Dishwasher to the Settlement Class Member.

Excluded from the Settlement Class are (i) officers, directors, and employees of Whirlpool or its parents, subsidiaries, or affiliates, (ii) insurers of Settlement Class Members, (iii) subrogees or all entities claiming to be subrogated to the rights of a Class Dishwasher purchaser, a Class Dishwasher owner, or a Settlement Class Member, (iv) issuers or providers of extended warranties or service contracts for Class Dishwashers, (v) persons who timely and validly exercise their right to be removed from the Settlement class.

Pursuant to the Settlement Agreement, for any Settlement Class Member who can provide sufficient documentary proof that (1) within eight years after manufacture, the Settlement Class Member's Dishwasher experienced a Diverter Seal Leak, and (2) the Settlement Class Member incurred out-of-pocket expenses for either (i) a Paid Qualifying Repair, or (ii) a Paid Qualifying Replacement within six weeks of the Diverter Seal Leak,

---

[5] As defined in the Settlement Agreement, "Class Dishwashers" or "Dishwashers" means Whirlpool-manufactured Amana, Ikea, Jenn-Air, Kenmore, KitchenAid, or Whirlpool-branded dishwashers manufactured with a hydraulic rotation diverter system from January 1, 2010, through December 31, 2017, and bearing a model number and serial number within the range on the list attached as Exhibit 2 to the Settlement Agreement.

rather than a repair of their Dishwasher, Whirlpool will partially reimburse those out-of-pocket expenses subject to the limitations set forth below.

Settlement Class Members will have the ability to make a claim for either Past Diverter Seal Leaks or Future Diverter Seal Leaks which occur within eight years of manufacture of their Dishwasher. As defined in the Settlement Agreement, "Future Diverter Seal Leak" is a Diverter Seal Leak that occurs on or after the Notice Date, and "Past Diverter Seal Leak" means a Diverter Seal Leak that occurred prior to the Notice Date[6]. Further, "Paid Qualifying Repair" means where a Settlement Class Member actually paid some out-of-pocket cost for a repair of his or her Dishwasher that included the replacement of either the diverter motor, sump, or sump assembly in response to a Diverter Seal Leak. "Paid Qualifying Replacement" means where a Settlement Class Member actually paid some out-of-pocket cost to replace, rather than repair, their Dishwasher in response to a Diverter Seal Leak.

The compensation structure is set forth below for ***Paid Qualifying Repairs or Replacements for Past or Future Diverter Seal Leaks***:

i.      for Paid Qualifying Repairs or Replacements in year two (2) after manufacture, 100% of the Average Cost of Repair ($225.00), or a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

---

[6] Settlement Class Members who have experienced a Past Diverter Seal Leak within eight years after manufacture must submit a valid claim to the Settlement Administrator within 180 days of the Notice Date.

ii.      for Paid Qualifying Repairs or Replacements in year three (3) after manufacture, 90% of the Average Cost of Repair ($202.50), or a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

iii.     for Paid Qualifying Repairs or Replacements in years four (4) or five (5) after manufacture, 80% of the Average Cost of Repair ($180.00), or a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand, or Maytag-brand dishwasher;

iv.      for Paid Qualifying Repairs or Replacements in year six (6) after manufacture, 60% of the Average Cost of Repair ($135), or a cash rebate of $175 for the purchase a new KitchenAid-brand dishwasher, or a cash rebate of $125 for the purchase of a new Whirlpool-brand, or Maytag-brand dishwasher;

v.       for Paid Qualifying Repairs or Replacements in year seven (7) after manufacture, 30% of the Average Cost of Repair (67.50), or a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand, or Maytag-brand dishwasher; or

vi.      for Paid Qualifying Repairs or Replacements in year eight (8) after manufacture, a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand, or Maytag-brand dishwasher.

Settlement Class Members who have experienced a Past Diverter Seal Leak within eight years after manufacture, and who submit a valid claim to the Settlement Administrator within 180 days of the Notice Date, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule. Settlement Class

Members who experience a <u>Future Diverter Seal Leak</u>, which is a leak that occurs after the Notice Date, but within eight years of manufacture of their Dishwasher, and who submit a valid claim to the Settlement Administrator within 180 days of the Notice Date, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule.

## IV.   LEGAL STANDARD

"Court approval of a class action settlement is within the sound discretion of the district court." *Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711 (WMW/LIB), 2021 WL 3030648, at *5 (D. Minn. July 19, 2021). The procedure for approval of a class action settlement occurs in two stages. In the first stage, "before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing." *Id.*, (quoting *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009)); *See also Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003). "Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, [a] Court need not review the settlement in detail at [the preliminary approval stage]; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval." *Phillips,* 2021 WL 3030648, at *5 (quoting *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118, 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009) (internal quotation marks omitted)); *Id* (quoting *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) ("At the preliminary-approval stage, the fair, reasonable, and adequate standard is lowered, with emphasis only

on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies.") (internal quotation marks omitted).

To grant preliminary approval, the district court must conclude that the proposed Settlement is "within the range of possible approval" and "does not disclose grounds to doubt its fairness." *Phillips,* 2021 WL 3030648, at *6, citing Manual for Complex Litigation § 30.41, at 237 (3d ed. 1975). This finding "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Phillips,* 2021 WL 3030648, at *6 (quoting *In re Traffic Executive Assoc.--Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980); *See also In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *5 (D. Minn. Oct. 18, 2012).

In addition, the parties must also show that the Court "will likely be able to ... certify the class for purposes of judgment on the proposal," pursuant to Fed. R. Civ. P. 23(e)(1)(B)(ii), and meet the requirements of Federal Rules of Civil Procedure 23(a) and (b). Further, in the class action context, in the Eighth Circuit, "[a] settlement agreement is 'presumptively valid.'" *In re Uponor,* 716 F.3d at 1063 (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371, 1391 (8th Cir.1990)). The court's role in reviewing a negotiated class settlement is to "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.*

## II. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

"In the class action context in particular, there is an overriding public interest in favor of settlement." *Yarrington v. Solvay Pharms., Inc.*, No. 09-CV-2261 (RHK/RLE), 2010 WL 11453553, at *6 (D. Minn. Mar. 16, 2010) (internal quotations and citation omitted). Applying the established standards noted above, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects. *See Schoenbaum*, 2009 WL 4782082, at *3 ("a proposed settlement is presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise.").

### A. The Proposed Settlement is Fair, Reasonable and Adequate and the Settlement Falls Within the Range of Reasonableness for Possible Approval.

Here, a preliminary review of the Settlement reveals the fairness, reasonableness, and adequacy of its terms. The Settlement Class will receive substantial extended service plan benefits, which allows Settlement Class Members to make a claim for the alleged Defect for seven-years beyond the one-year warranty accompanying the purchase of a Dishwasher. With the extended service plan benefits, Settlement Class Members will be entitled to reimbursement of out-of-pocket costs in an amount up to the average cost of repair of the Defect of $225.00, as described in Section III above, which details the tiered relief offered to Settlement Class Members depending on the age of their Dishwasher. Further, as described in Section III above, consumers have the option to choose between this cash reimbursement or a cash rebate of up to $200.00 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of up to $150 for the purchase of a new

Whirlpool-brand or Maytag-brand dishwasher, again depending upon the age of the Dishwasher at the time of the repair or replacement.

As detailed in the Expert Report of Frank Bernatowicz, attached hereto as Exhibit 2, the value of the proposed settlement is approximately $15.71 to $21.33 million. This falls well within the range of a reasonable settlement. *See Fath v. American Honda Motor Co.*, 2019 WL 6799796, at *5 (D. Minn. 2019) (preliminarily approving class action settlement in action involving alleged automobile defect, where Honda extended the limited vehicle warranty an additional year, providing for the reimbursement of certain towing expenses, oil change costs and diagnostic costs, and a software update); *Lipuma v. Am. Express Co.* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (in evaluating a class settlement, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality.")

Although Class Counsel are confident in the merits of Plaintiffs' claims, the certification of a consumer class action is challenging and strongly contested throughout the country and specifically within the Eighth Circuit. Here, continued litigation involved serious risks. While Plaintiffs prevailed on many important issues in their motions to dismiss, with continued litigation, Whirlpool undoubtedly would challenge Plaintiffs' liability and damages experts, contest class certification and move for summary judgment on any potentially remaining claims in each of the four (4) actions. *Id.* Indeed, Whirlpool disclosed data in discovery that showed (a) varying rates of repair over time and within subpopulations of the Class Dishwashers, and (b) a decreasing rate of repairs that coincided with Whirlpool's introduction of updates to the diverter system, which Whirlpool would

22

have argued defeated commonality and predominance. When balanced against the risks of litigation, this Settlement is a significant achievement for the Class, which provides Settlement Class Members with substantial costs for parts and labor, up to the average cost of repair of $225.00, and also provides immediate benefits to the class. *See Phillips.* 2021 WL 3030648, at *6 ("Although litigation presents serious risks at many stages, as well as substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to more than one million Settlement Class Members.")

As described above, according to Plaintiffs' expert analysis of Whirlpool's warranty documentation and independent research of the cost of extended warranties for dishwashers, the value of the extended service plan benefits to the Settlement Class is approximately $15.71 to $21.33 million, including an analysis of the extended service plan benefits to the class and the out-of-pocket reimbursement benefits. *See* Exhibit 2, Expert Report from Frank Bernatowicz.

In particular, as noted by Mr. Bernatowicz, "all Settlement Class Members will receive extended service plan benefits for the Class Dishwashers for an additional seven (7) years from the expiration of the original manufacturer's warranty relating to a "Diverter Seal Leak," which is defined in the Settlement Agreement as a water leak that originated at the location of the diverter motor shaft and diverter seal found in the sump assembly parts listed in Exhibit 3 to the Settlement Agreement." Ex. 2, Bernatowicz Dec. at ¶12. "Prior to the subject Settlement, if a consumer experienced a Diverter Seal Leak beyond this one-year warranty, Whirlpool did not cover the costs of parts or labor under the

Dishwasher warranty.  As a result of the Settlement, Whirlpool has agreed to cover Past Diverter Seal Leaks and Future Diverter Seal Leaks for an additional seven (7) years from the expiration of the original manufacturer's warranty, or within eight years of manufacture of the Dishwasher." *Id.* at ¶13.

For purposes of his warranty valuation analysis specific to this litigation, Mr. Bernatowicz's calculation was based on following evaluation: (1) every Settlement Class member receives an extension of warranty benefit under the proposed settlement, excluding those who have previously received compensation under the original one-year warranty or otherwise; and (2) the number of Class Dishwashers units with a Remaining Warranty Life as of the Notice Date is estimated to be 5,230,198[7].  *Id.* at ¶¶14-15. For those Settlement Class Member who have a Remaining Warranty Life after the Notice Date, as detailed in his declaration, Mr. Bernatowicz calculated the value of the warranty benefits coverage as $13,831.171. *Id.* at ¶¶12-21.

Based on sales and warranty data provided by Whirlpool during discovery, Mr. Bernatowicz also calculated the out-of-pocket cost benefit to the Settlement Class, using

---

[7] As discussed above, and in the Settlement Agreement, the Settlement Class period runs from January 1, 2010 through December 31, 2017. Thus, as of the Claims Deadline (180 days after the Notice Date, as defined in the Settlement Agreement, or April 2014, as estimated by the Parties), Whirlpool's sales data revealed that the number of Settlement Class Members whose extended eight year warranty will have expired by the Claim Deadline is approximately 1,500,000 Settlement Class Members.  Those class members are eligible for identical benefits to those whose Dishwasher warranties will not have expired by the Claim Deadline, but they must make a claim by that deadline in order to be eligible for benefits.  The remaining number of Settlement Class Members whose warranty benefits will not expire by the claim deadline, and who will have a Remaining Warranty Life, is approximately 5,230,198.

(1) the number of Class Dishwasher units subject to the Settlement, based on the tiered reimbursements; (2) a reasonable estimate of the diverter system repair cost of $225; (3) and a reasonable estimate for diverter system failure percent represented by Whirlpool to be in the range of 1% to 4%, which includes all sump assembly repairs, including diverter system repairs. On this basis, Mr. Bernatowicz opined that the total out-of-pocket reimbursement benefit amounted to a range of $1,8754.157 (based on a 1% failure rate) to $7,496,629 (based on a 4% failure rate). *Id.* at ¶27.

Thus, based on the aforementioned benefits illustrated above, the range of Total Benefits (#1 and #2) for the Settlement Class amounts to $15.71 to $21.33 million. *Id.* at ¶28.

This is a substantial benefit to the class, particularly considering that continued litigation likely would take several years to resolve and involve expensive discovery, *Phillips*, 2021 WL 3030648, at *6, citing *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (observing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case). "This is especially true when, as here, the defendant vigorously denies the Plaintiffs' allegations." *Phillips*, 2021 WL 3030648, at *6.

Here, given the risks associated with continued litigation, the benefits of the Settlement Agreement are substantial. Further, regardless of the option they choose, Settlement Class Members will be able to receive the remuneration described above by submitting a simple Claim Form. The Settlement thus directly addresses the claimed harm.

**B. The Settlement Was the Result of Arm's Length Negotiations Between the Parties, Has No Obvious Deficiencies, and Treats Settlement Class Members Equally.**

Where a settlement is negotiated at arm's length between experienced class counsel, it is afforded the presumption that it falls within the range of reasonableness for possible approval. *Phillips*, 2021 WL 3030648, at *6 ("Based on the vigorous litigation of the issues, the exchange of informal discovery, and the rigorous negotiations described in Plaintiffs' submission, it appears to the Court that the Settlement was negotiated at arms' length and under circumstances demonstrating a lack of collusion."). Further, settlement of this action will conserve judicial resources and well as resources of the Parties, who have vigorously litigated this action, reviewed substantive discovery and retained knowledgeable and qualified experts, all allowing the Parties to "intelligently evaluate the Settlement offered against the risks and benefits of continued litigation." *Id.*

This Settlement is the product of fact intensive investigation regarding the Defect, hard-fought litigation and arm's-length negotiations, along with substantive motion practice and litigation, which included the retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defect and damages at various stages of litigation, including assisting with discovery; adjudication of Whirlpool's motion to dismiss in the present action, and also in associated litigation in the United States District Court for the Northern District of Illinois; briefing Whirlpool's motion to dismiss in associated litigation in the United States District Court for the Eastern District of Pennsylvania; negotiating a protective order, order governing electronically stored information, and other case management orders involving coordination of litigation and

schedules across all scheduling; attending regular case management conferences with Magistrate Judge Menendez in this litigation and judges in the Northern District of Illinois; fact discovery, which included serving and responding to interrogatories, requests for production, supplemental interrogatories, third-party retailer discovery, review of substantial documents; two-full day mediation sessions (on April 27, 2021 and April 29, 2021), and subsequent months of arm's-length negotiations between experienced class-action counsel for both Whirlpool and Plaintiffs, all led by a mediator with substantial experience in class action litigation. Thus, Plaintiffs' Counsel had ample information before entering into settlement negotiations, and they were able to effectively assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation.

In addition, there are no obvious deficiencies in the Settlement Agreement. *See Risch v. Natoli Eng'g Co., LLC*, No. 4:11CV1621 AGF, 2012 WL 4357953, at *3 (E.D. Mo. Sept. 24, 2012) (finding no obvious deficiencies in settlement agreement that was fair, adequate, and reasonable). Here, the Settlement clearly meets the critical test of gauging its fairness and reasonableness because it provides significant, concrete relief to Settlement Class Members and directly remedies the injury alleged in the action. The gravamen of Plaintiffs' Complaint is that Plaintiffs and Settlement Class Members purchased Dishwashers which had a defect that can and has caused certain Dishwashers to leak, requiring consumers to assume the cost of repair. Accordingly, the proposed Settlement provides the exact relief to consumers that this action was filed to achieve – benefits specific to the alleged Defect, allowing consumers to claim up to $225.00 for the cost of repairing

or replacing their Dishwasher as a result of the alleged Defect. Further, regardless of the option they choose, Settlement Class Members will be able to receive the remuneration described above by submitting a simple Claim Form. The Settlement thus directly addresses the claimed harm.

Further, there is no unfair or preferential treatment of any Settlement Class Member. *See Corona v. United Bank Card, Inc.*, No. 8:12CV89, 2015 WL 13849231, at *2 (D. Neb. Aug. 26, 2015) (granting preliminary approval after initial evaluation showed, *inter alia*, there was no improperly preferential treatment to Plaintiff or Settlement Class Members). Each Settlement Class Member is entitled to make a claim for a Paid Qualifying Repair or a Paid Qualifying Reimbursement under the extended period of eight years following their purchase of the Dishwasher.

In sum, the Settlement was achieved following substantial investigation and litigation, and hard-fought, arm's-length negotiations conducted by informed counsel, contains no obvious deficiencies, and treats Settlement Class Members equally. Accordingly, there are no grounds to doubt the Settlement's fairness.

### C. Notice and Administration

All notice, publication and claims administration activities shall be carried out exclusively by the Settlement Administrator, including the evaluation of documentary proof submitted by Settlement Class Members. Whirlpool has agreed to pay for reasonable Administration and Notice expenses.

### 1. The Proposed Notice Provides Adequate Notice to The Class and Satisfies Due Process.

Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. Fed. R. Civ. P. 23(c)(2)(B); *See Phillips*, 2021 WL 3030648, at *5; *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). "The mechanics of the notice process are left to the discretion of the district court, subject only to the broad "reasonableness" standards imposed by due process." *Phillips,* 2021 WL 3030648, at *7; *See also Tapia v. Zale Del. Inc.*, No. 13cv1565-PCL, 2017 WL 1399987, at *4 (S.D. Cal. April 18, 2017); *Rosenburg v. I.B.M.*, No. CV06–00430PJH, 2007 WL 128232, *5 (N.D. Cal. Jan. 11, 2007) (providing that notice should inform class members of essential terms of settlement, including claims procedures and the right to accept, object or opt-out of settlement).

Here, the Settlement Agreement requires the parties to notify Settlement Class Members of the Settlement by (a) emailing the notice to all members of the Settlement Class for whom valid email addresses are known to Whirlpool, (b) mailing, by first class US mail, Postcard Notice to all Settlement Class Members for whom Whirlpool only has a physical mailing address, and (c) mailing, by first-class US mail, the Long Form Notice to those Settlement Class Members requesting a copy thereof. The Settlement Administrator will also utilize a reverse look-up service to obtain additional email addresses and email the Summary Notice to all members of the Settlement Class for whom an email can be identified through the reverse look-up service. The Settlement

Administrator will also perform a national change of address search and forward notice packages that are returned by the U.S. Postal Service with a forwarding address.

In addition, the Settlement Administrator will create a Settlement Website that will include all necessary and pertinent information for Settlement Class Members, including the (1) Long Form Notice in downloadable PDF format in both English and Spanish; (2) a claim form allowing Settlement Class members to submit claims online, including uploading any necessary documentation, (3) a contact information page with contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and Defendant's Counsel, (4) the Settlement Agreement, (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof, (6) the Consolidated Amended Complaint, (7) upon filing, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof, and (8) relevant deadlines, including deadlines to opt-out or object to the settlement agreement.

Among other items, the Class Notice will include the following information: (1) a plain and concise description of the Action and the proposed Settlement, (2) the right of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement, (3) specifics on the date, time and place of the Final Approval Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representatives' service award.

The Notice Plan will include notices substantially in the form of Exhibit 4-6 to the Settlement Agreement. Prior to the dissemination of the Class Notice, the Settlement

Administrator also shall establish a toll-free telephone number, through which Class Members may obtain information about the Litigation, obtain answers to frequently asked questions, and request a mailed copy of the Long Form version of the Class Notice and Claim Form, pursuant to the terms and conditions of the Settlement Agreement. Agreement at ¶ IV.4.7.

Thus, the Notice program provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. Accordingly, the form and manner of notice proposed here fulfills all of the requirements of Rule 23 and due process.

### 2. Settlement Administration

The Settlement Administrator shall process all claims made by Settlement Class Members who experienced a Diverter Seal Leak before or after the Notice Date, including the evaluation of the documentary proof submitted by such Settlement Class Members to substantiate a Qualifying Repair or Qualifying Replacement subject to relief as set forth in this Agreement.

## III. THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED.

### A. The Rule 23(a) Requirements are Satisfied

As set forth more fully below, it is Plaintiffs' position that each of the Rule 23(a) prerequisites is satisfied with respect to the proposed Class.

### 1. The Settlement Class is so numerous that joinder is impracticable.

"Generally, a putative class size of forty or more will support a finding of numerosity, although smaller classes have been found acceptable in this circuit." *Hoekman v. Educ. Minn.*, 335 F.R.D. 219, 242 (D. Minn. 2020). Here, Plaintiffs have determined, based on Defendant's review of its internal records, that there are more than 6,700,000 class dishwashers. Moreover, as this is a nationwide settlement, the Settlement Class Members are geographically dispersed making joinder impracticable. Thus, the Settlement Class readily satisfies the numerosity requirement.

### 2.    There are questions of law and fact common to the Settlement Class.

The second prerequisite to class certification is that "there are questions of law or fact common to the class." Rule 23(a)(2) (emphasis added). "As a general rule, the commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied." *Hartley v. Suburban Radiologic Consultants, Ltd.,* 295 F.R.D. 357, 376 *D. Minn. 2013) (citation omitted). Indeed, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).

In this case, the questions of law or fact common to the Class include, *inter alia*, the following:

(a)    whether the Class Dishwashers suffer from a uniform design or manufacturing Defect that causes them to leak;

(b)    whether Whirlpool had a duty to disclose the alleged Defect to consumers;

(c)     Whether Whirlpool's warranty limitations on Settlement class Dishwashers were unconscionable or otherwise unenforceable;

(d)     whether the alleged Defect in the Class Dishwashers is material to a reasonable consumer;

(e)     whether, as a result of Whirlpool's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to their detriment by purchasing Class Dishwashers manufactured by Whirlpool;

(f)     whether Whirlpool was aware of the Defect;

(g)     whether Whirlpool breached express warranties with respect to the Class Dishwashers;

(h)     whether Whirlpool has a duty to disclose the defective nature of the Class Dishwashers to Plaintiffs and Class Members; and

(i)     whether Plaintiffs and Class Members are entitled to equitable relief.

Consequently, there are fundamental, common issues of law and fact and, in this case, a "classwide proceeding [will] generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (2011) (emphasis in original). *See Fath,* 2019 WL 6799796, at *5 (finding requirement of commonality satisfied "as the resolution of various common questions of law and fact—such as whether the Class Vehicles are predisposed to exhibit oil dilution and subsequent costly wear and tear to their engines— would potentially resolve issues central to the claims asserted in the FAC.").

### 3.  Plaintiffs' claims are typical of the claims of the Settlement Class.

The third prerequisite for class certification is "typicality" set forth in Rule 23(a)(3), which provides that a class action can be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "Typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Custom Hair Designs by Sandy v. Central Payment co., LLC*. 984 F.3d 595, 604 (8th Cir. 2020) (quoting *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1039 (8th Cir. 2018)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*

Here, Plaintiffs contend that their claims arise from the same common alleged Defect in the Dishwashers, and from the same legal theories as the Settlement Class Members' claims. Although Plaintiffs may own a different model of the Dishwasher than other Settlement Class Members, Plaintiffs contend that all of the Dishwasher models contain an identical defect. Thus, Plaintiffs seek redress—on behalf of the Settlement Class Members—for alleged damages arising out of a similar alleged Defect, and Plaintiffs and Settlement Class Members have an identical interest in recovering their alleged losses sustained as a result of the same course of conduct. *See Fath,* 2019 WL 6799796, at *5 (in action involving alleged automobile defect, finding typicality requirement satisfied where "it appears that the claims of the other members of the proposed settlement class are similar to those of Named Plaintiffs.").

### 4.  Plaintiffs will fairly and adequately represent the Settlement Class.

The fourth and final prerequisite under Rule 23(a) is the "adequacy of representation" requirement contained in Rule 23(a)(4). The inquiry under Rule 23(a)(4) has two components: (1) the Class Representatives must not have interests that conflict with other class members, and (2) will vigorously prosecute the interests of the other class members through qualified counsel. *Fath*, 2019 WL 6799796, at *5; *See also Swinton v. SquareTrade, Inc.*, No. 18-CV-144 (SMR/SBJ), 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) (finding representation adequate where named plaintiffs "share the same objectives, and their claims arise from the same general factual position" as other class members and where named plaintiffs were represented by experienced and accomplished litigators who had negotiated an adequate settlement)*; Phillips*, 2021 WL 3030648, at * 7 (finding adequacy requirement satisfied where "Class Counsel [we]re experienced and sophisticated, with years of experience in complex class action litigation…[and] [t]he Class Representatives… supervised the litigation by reviewing pleadings, reviewing the Settlement and communicating with Class Counsel regarding the litigation.").

Here, the proposed Class Representatives purchased Dishwashers containing the alleged Defect and thus allegedly suffered injury or loss. The proposed Class Representatives seek to maximize the recovery to the Settlement Class through this litigation. None of the proposed Class Representatives have any interest that is antagonistic to the claims of any Settlement Class Member. The proposed Class Representatives' interests are aligned with the interests of Settlement Class Members. Moreover, proposed Class Representatives have vigorously prosecuted the actions in the interests of the Settlement Class.    Proposed Class Representatives understand their duties as

representatives of the Settlement Class and will dutifully execute their responsibilities. Their active participation is strong evidence that Plaintiffs are adequate representatives of the Settlement Class.

Likewise, Class Counsel have vigorously represented the proposed Class Representatives and putative Settlement Class Members in this Action. They represent that they will continue to do so and have submitted evidence showing that they are qualified, experienced, and generally able to conduct the litigation as detailed herein. *See* Joint Decl., at Ex. A (Firm resume of Class Counsel).

### B.  The Requirements of Rule 23(b)(3) are Satisfied

Before certifying a class under Rule 23(b)(3), a district court must find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.' *Fath*, 2019 WL 6799796, at *5 (quoting *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374 (8th Cir. 2018)); *See also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 591-594 (1997).  In the settlement context, the district court "need not inquire whether the case, if tried, would present intractable management problems." *Fath*, 2019 WL 6799796, at *5 (quoting *Amchem*, 521 U.S. at 620). The predominance and superiority elements are both met here.

### 1.  Common Questions of Law and Fact Predominate

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stuart*, 910 F.3d at 374–75 (quoting *Amchem*, 521 U.S. at 623). It is not necessary to illustrate that all questions of

fact or law are common. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1178 (11th Cir. 2010).  Further, in the settlement context, "the predominance inquiry will sometimes be easier to satisfy" because settlement eliminates manageability problems related to trial. *In re Am. Int'l Grp., Inc. Sec.Litig.*, 689 F.3d 229, 240 (2d Cir. 2012).

Here, Plaintiffs contend that they satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.  The salient evidence necessary to establish Plaintiffs' claims are common to all the Class Representatives and all members of the Settlement Class – Plaintiffs have alleged that the manufacture and design of the Dishwashers, the alleged Defect, and Whirlpool's knowledge of the alleged Defect and its effects are all subject to common proof. The evidentiary presentation changes little whether there are 100 Settlement Class Members or as many as 6,700,000 Settlement Class Members.  In either instance, Plaintiffs would present the same evidence of Whirlpool's marketing and warranties, and the same evidence of the Dishwasher's alleged Defect. *See Fath,* 2019 WL 6799796, at *5. To be sure, Plaintiffs faced risks in establishing predominance where Whirlpool was laying the groundwork to vigorously contest the issues of injury, causation, and damages, and this Settlement is a fair compromise balanced against those risks.

### 2.      Class Treatment of Plaintiffs' Claims is Superior

"The superiority requirement asks whether the class action is the best available method for resolving the controversy." *Fath*, 2019 WL 6799796, at *5 (finding superiority

requirement satisfied where "the values of the individual proposed settlement class members' claims are so small that there is minimal incentive for any individual member of the proposed settlement class to pursue her claim in federal court.") (quoting *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 WL 5394684, at *6 (D. Neb. Sept. 27, 2016)). *See also Custom Hair Designs by Sandy*, 984 F.3d at 605 (finding superiority requirement satisfied, stating "Plaintiffs' individual claims are for tens or hundreds of dollars. Absent a class action, no plaintiff is likely to pursue their claim individually.").

Plaintiffs contend that a class action is the superior method for adjudicating Plaintiffs' and Settlement Class Members' claims. Here, individual Settlement Class Members have little incentive to control the prosecution of separate individual actions because the time and expense associated with such litigation would easily exceed the potential individual recovery. And, as the Supreme Court explained in *Amchem*, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods.*, 521 U.S. at 617. The potential recovery on the economic damage claims sought to be certified in this action—the cost of repair or replacement—is too small to warrant individuals taking on the cost and burden of litigating individual lawsuits against these large corporate defendants.

Moreover, no putative Settlement Class Members have expressed an interest in prosecuting their actions separately, no other litigation regarding Plaintiffs' claims have been initiated, and efficiency weighs in favor of resolving the claims of all Settlement Class Members in this forum. Fed. R. Civ. P. 23(b)(3)(A)-(C). The proposed Settlement Class

therefore meets the requirements of Rule 23(b)(3) and should be conditionally certified for purposes of settlement only.

### C. Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) Service Awards.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. The Parties negotiated and agreed upon attorneys' fees and costs only after agreeing on all other material terms of the Settlement. Whirlpool has agreed to pay an attorney fee and expense award of one and one-half million dollars ($1,500,000.00), subject to approval by the Court. Such award will serve to compensate for the time, risk and expense Plaintiffs' counsel incurred pursuing claims on behalf of Settlement Class Members. This amount represents approximately only 7% to 9.5% of the $15.71 to $21.33 million value of the Settlement as estimated by Mr. Bernatowicz. However, Class Counsel is not seeking an award of attorneys' fees at this time and will file a motion and supporting memoranda prior to the Final Approval Hearing. Class Counsel have agreed not to seek an award of more than the above amount in the aggregate for attorneys' fees and expenses. Whirlpool's payment of fees and costs to Class Counsel is entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members. Further, the effectiveness of the Settlement and the releases are not contingent on the Court's approval of the Fee and Expense Award, nor is it determined by the amount of the Fee and Expense Award approved by the Court.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion for Preliminary Approval of the Settlement and for certification of the proposed Settlement Class for settlement purposes only and enter the proposed Preliminary Approval Order.

Dated: October 29, 2021

/s/ Harper T. Segui
Harper T. Segui
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, SC 29464
Telephone: (919) 600-5000
hsegui@milberg.com

Rachel Soffin
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rsoffin@milberg.com

*Attorneys for Plaintiffs and Proposed Class*

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served the foregoing was served upon all counsel of record via this Court's CM/ECF system.

This 29th day of October, 2021.           Respectfully submitted,


                        /s/ Harper T. Segui
                        Harper T. Segui
                        **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
                        825 Lowcountry Blvd, Suite 101
                        Mount Pleasant, SC 29464
                        hsegui@milberg.com