**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **ELISABETH CLEVELAND, AMY LARCHUK, CHRISTOPHER REDMON, DHAVAL SHAH, and THOMAS MCCORMICK,** on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **WHIRLPOOL CORPORATION,** <br><br> Defendant. | **CASE NO. 20-cv-1906-WMW-JFD** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS AND SERVICE AWARDS

Plaintiffs Elizabeth Cleveland, Amy Larchuk, Christopher Redmon and Dhaval Shah[1] (collectively "Plaintiffs" or "Settlement Class Representatives"), by and through undersigned counsel and pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement Agreement and Release (ECF No. 71, Ex.1) (the "Settlement") and this Court's Preliminary Approval Order (ECF No. 75) (the "Preliminary Approval Order"), hereby file this Motion for an Award of Attorneys' Fees, Litigation Costs, and Service Awards (the "Motion").

---

[1] Plaintiff Thomas McCormick is being withdrawn as a class representative.

Plaintiffs respectfully request that this Honorable Court: (i) award Plaintiffs' Counsel attorneys' fees of $1,456,002.33, which is an amount equal to 6.5%-8.6% of the $16,905,729-$22,528,201 value of the Settlement (defined below), and which represents a 1.75 lodestar multiplier; (ii) award Plaintiffs' Counsel reimbursement of litigation costs of $33,997.67; and (iii) award service awards in the amount of $2,500.00 to each of the Settlement Class Representatives.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

As shown herein, the Settlement is the product of hard-fought litigation and arm's-length negotiations, as well as substantial investigation and litigation including: (1) significant time communicating with Plaintiffs, (2) investigation of facts and research of relevant law, (3) preparation of well-pleaded complaints and amended complaints (4) the retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defect and damages at various stages of litigation, and who also assisted with discovery; (5) adjudication of Whirlpool's motion to dismiss in the present action, and also in associated litigation in the United States District Court for the Northern District of Illinois; (6) briefing Whirlpool's motion to dismiss in associated litigation in the United States District Court for the Eastern District of Pennsylvania; (7) negotiation of numerous orders, including a protective order, an order governing electronically stored information, and various case management orders involving coordination of litigation and schedules across all cases; (8) attendance at regular case management conferences with Magistrate Judge Menendez in this litigation and judges in the Northern District of Illinois and Northern District of California; (9) completion of significant fact discovery, which

aided the resolution of this action, and included serving and responding to interrogatories and requests for production, serving third-party retailer discovery, and reviewing and analyzing important documents and data produced by Whirlpool and third-parties; (10) exchange of additional information pursuant to Fed. R. Evid. 408 and extensive analysis thereof in anticipation of settlement discussions; (10) two full-day mediation sessions (on April 27, 2021 and April 29, 2021); and (11) subsequent months of arm's-length negotiations between experienced class-action counsel for both Whirlpool and Plaintiffs, all led by a mediator with substantial experience in class action litigation. *See generally* Joint Declaration of Class Counsel. ("Joint Decl."), attached hereto as Exhibit 1.

### A. Summary of Allegations in the Consolidated Amended Complaint

On August 20, 2021, with Whirlpool's consent, Plaintiffs filed a Consolidated Amended Complaint in this litigation for the purpose of settlement. (ECF No. 63) ("CAC"). The CAC involves the same defect alleged in the complaints filed in the Northern District of Illinois, Eastern District of Pennsylvania, and Northern District of California, discussed below, which also included multiple claims made on behalf of consumers in the states in which those complaints were filed.

As alleged in the CAC, from 2010-2020, Whirlpool designed and manufactured certain Dishwashers (identified and defined in the Settlement Agreement), which suffer from a uniform defect that can and has caused the Dishwashers to leak. CAC at ¶6. The Dishwashers were continuously marketed as "high-quality" products, with base retail prices ranging from $500-$700. *Id.* at ¶4.

As alleged by Plaintiffs, based on industry standards, the average service life of a dishwasher is typically seven to twelve years (or 9.5 years on average), and Whirlpool has boasted in at least one article that the expected lifespan of its dishwashers is ten years. *Id.* at ¶5. However, Whirlpool designed, manufactured, distributed, marketed, and sold the Dishwashers with a uniform defect that can and has caused the Dishwashers to leak prior to expiration of their expected life span. *Id.* at ¶6.

The Dishwashers are equipped with a pump motor diverter shaft seal ("Diverter Shaft Seal"). *Id.* at ¶6.  A Diverter Shaft Seal is part of a dishwasher's sump assembly, which is located at the bottom of the dishwasher's tub and is responsible for collecting and distributing the water throughout the dishwasher during cleaning. *Id.* at ¶8. The sump collects and holds water below the dishwasher tub and the diverter shaft directs the collected water into the spray arms, while the Diverter Shaft Seal prevents leaks between the sump and the tub. *Id.*  In other words, the Diverter Shaft Seal's main purpose is to prevent the dishwasher from leaking and causing damage to consumers' homes. *Id.*

However, the Diverter Shaft Seal in the Dishwashers is uniformly defective in its design and/or manufacture in that it is incorrectly oriented, accelerating degradation of the seal and creating a buildup of debris that prevents the shaft seal spring from properly sealing the diverter shaft and sump ("Diverter Shaft Seal Defect" or "Defect"). *Id.* at ¶7. As a result of the uniform Diverter Shaft Seal Defect, Plaintiffs and Settlement Class Members' Dishwashers can and have experienced significant leakage through the Diverter Shaft Seal, flowing out of the dishwasher to areas below and surrounding the dishwasher, and exposing consumers to unexpected water leaks. *Id.*

Whirlpool's Major Appliance Limited Warranty ("Warranty") states that within one year of the purchase date, Whirlpool "will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product." *Id.* at ¶14. Thus, while the Defect existed at the time of manufacture, prior to this litigation and settlement, any Class Dishwashers with the Diverter Shaft Seal Defect that experienced a leak following this one-year period would not be covered under Whirlpool's one year Warranty. For Settlement Class Members whose Dishwashers experience the Defect, which is not covered under the Warranty, the cost associated with labor and replacing the defective Diverter Shaft Seal is approximately $200.00 or more. *Id.* at ¶16.

As discussed herein, through the Settlement Agreement, Settlement Class Members with paid qualifying repairs or replacements of the Diverter Shaft Seal Defect receive extended service plan benefits that allow them to receive up to $225.00 for a diverter seal leak that occurs within eight years of manufacture of their Class Dishwasher, which is seven (7) years longer than the factory warranty accompanying the purchase of the Dishwashers.

### B. Relevant Procedural Background

On September 4, 2020, Plaintiff Cleveland filed her class action Complaint alleging that Whirlpool designed, manufactured, distributed, marketed, and sold the Dishwashers with the uniform Diverter Shaft Seal Defect, described *supra*, that can and has caused the Dishwashers to leak ("Minnesota Action," ECF No. 1). Related actions were filed by the undersigned proposed Class Counsel on September 10, 2020, in the United States District

Court for the Eastern District of Pennsylvania (*Larchuk v. Whirlpool Corp*., No. 2:20-cv-04442-BMS (E.D. Pa.)) ("Pennsylvania Action); on November 6, 2020, in the United States District Court for the Northern District of Illinois (*Redmon v. Whirlpool Corp.,* No. 1:20-cv-06626 (N.D. Ill.) ("Illinois Action)); and on April 16, 2021, in the United States District Court for the Northern District of California (*Shah v. Whirlpool Corp*., No. 3:21-cv-02739 (N.D. Cal)) ("California Action").

For effective and efficient coordination and scheduling, the Parties entered into a stipulated Joint Case Management Plan. The Parties spent considerable time developing the Joint Case Management Plan to be applied across all four (4) coordinated actions. Class Counsel and Whirlpool's Counsel engaged in numerous meet and confer discussions, both via telephone and in writing, regarding the Joint Case Management Plan to be proposed in each of the actions. The Joint Case Management Plan provided each of the Courts with, *inter alia*, the agreed upon (1) coordinated schedules, (2) number of discovery requests permitted by each side; (3) number of depositions that could be taken, (4) deposition protocols, (5) methodology for coordinating and designating discovery across all coordinated actions, and (6) methodology for seeking resolution of discovery disputes. On April 23, 2021, the Joint Case Management Plan was submitted to the Court (Minnesota Action, ECF. No. 44), and on April 29, 2021, this Court granted the parties Joint Discovery Plan. (Minnesota Action, ECF No. 46). Likewise, the Joint Case Management Plan was submitted in the Illinois and Pennsylvania Actions, and subsequently adopted by those courts. *See* Ex. 1, Joint Decl. at ¶9.

On October 29, 2020, Whirlpool filed a motion to dismiss in this action (Minnesota Action, ECF Nos. 16 and 18), and Plaintiff Cleveland filed an Amended Complaint on November 25, 2020 (Minnesota Action, ECF No. 25).  On December 15, 2020, Whirlpool renewed its motion to dismiss in the Minnesota Action, seeking to dismiss Plaintiff Cleveland's claims in their entirety and with prejudice for failure to state a claim upon which relief can be granted.  (Minnesota Action, ECF Nos. 27 and 29). On January 15, 2021, Plaintiff Cleveland filed her response in opposition to Whirlpool's motion to dismiss (Minnesota Action, ECF No. 32) and Whirlpool filed its reply in support of its motion to dismiss on February 1, 2021 (Minnesota Action, ECF No. 35). On February 26, 2021, this Court heard oral argument from both parties on Whirlpool's motion to dismiss. On July 27, 2021, this Court entered an Order Granting in Part and Denying in Part Defendant's Motion to dismiss, granting without prejudice Whirlpool's motion to dismiss Plaintiff Cleveland's claims for breach of contract and unjust enrichment, and denying the  motion to dismiss for Plaintiff Cleveland's claims alleging breach of express and implied warranty, violations of the Minnesota Consumer Fraud Act (MCFA), the Minnesota Uniform Deceptive Trade Practices Act (MDTPA), and the Minnesota Unlawful Trade Practices Act (MUTPA). In the Minnesota Action, the Parties also attended several status conferences with Magistrate Judge Menendez by telephone, including for the discussion of the submitted Joint Case Management Plan.

Whirlpool also filed a motion to dismiss in the Illinois Action on February 3, 2021, seeking to dismiss Plaintiff Redmon's claims in their entirety. (Illinois Action, ECF No. 11 and 12). Plaintiff Redmond responded to the motion to dismiss on March 10, 2021

(Illinois ECF No. 22), and Whirlpool filed its reply on March 6, 2021 (Illinois Action, ECF No. 24). On April 28, 2021, the court granted in part and denied in part Whirlpool's motion to dismiss, granting Whirlpool's motion to dismiss without prejudice as to Plaintiff Redmon's express warranty claim beyond the actual written product warranty, breach of implied warranty and fraudulent concealment, and with prejudice as to Plaintiff Redmon's claims for negligence and injunctive relief. The court denied the motion to dismiss Plaintiff Redmon's claims for breach of the express warranty as to the product warranty, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., unjust enrichment, and breach of contract. (Illinois Action, ECF No. 31). The Parties also attended multiple status conferences with the Illinois court by telephone, including for the discussion of discovery, case scheduling, and coordination of the litigation among all the courts, including the submitted Joint Case Management Plan. Plaintiff Redmon voluntarily dismissed his action on August 20, 2021, as a result of the settlement. (Illinois Action, ECF No. 48).

Whirlpool also filed a motion to dismiss in the Pennsylvania Action on January 7, 2021 (Pennsylvania Action, ECF No. 20). Plaintiff Larchuk responded in opposition on February 8, 2021 (Pennsylvania Action, ECF No. 21), and Whirlpool filed its reply in support of its motion to dismiss on February 22, 2021 (Pennsylvania Action, ECF No. 22). Plaintiff Larchuk voluntarily dismissed her action on August 23, 2021 as a result of the settlement. (Pennsylvania Action, ECF No. 32). The Parties also submitted the Joint Case Management Plan utilized in this action.

Further, Whirlpool filed a motion to dismiss in the California Action on June 28, 2021. (California Action, ECF No. 21). After the court expressed concern over the number of actions filed, Plaintiff Shah dismissed the California Action without prejudice on July 29, 2021 (California Action, ECF No. 29) prior to filing a response to Whirlpool's motion to dismiss, so the Parties could incorporate Plaintiff Shah's claims into one of the other pending cases.  Plaintiff Shah's claims were ultimately incorporated into the CAC in the Minnesota Action (Minnesota Action, ECF No. 63).

In addition to the aforementioned litigation, the Parties engaged in significant discovery. Specifically, the Parties served and responded to written discovery requests. Whirlpool produced voluminous data and documents, which ultimately aided the parties in resolving this action. Plaintiffs also served eleven third-party subpoenas to retailers of the Dishwashers, as well as serving both a subpoena for documents and subpoena for the Fed. R. Civ. P. 30(b)(6) deposition of the manufacturer of the Diverter Shaft Seal. Plaintiffs engaged their experts during the various discovery stages in order to ensure discovery was thorough and would aid them in producing substantive expert reports.  *See* Ex. 1, Joint. Decl. at ¶15-16.

Further, prior to negotiating the Settlement, Class Counsel had already provided dates for the inspection of certain Plaintiffs' Dishwashers and for their depositions; had begun scheduling depositions of Whirlpool's employees; had noticed the deposition of the Diverter Shaft Seal manufacturer; and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiffs and the Settlement Class. *Id*. Class Counsel thus negotiated the proposed Settlement without staying any pending

action, and while zealously advancing the position of Plaintiffs and Settlement Class Members. *See* Ex. 1, Joint. Decl. at ¶15-16, 26.

As discussed *supra*, on August 20, 2021, Plaintiffs filed their CAC for the purposes of settlement. (Minnesota Action, ECF No. 63). If the Parties had not negotiated this settlement, Whirlpool undoubtedly would have contested class certification and moved for summary judgment on any potentially remaining claims in each of the four (4) actions.

### C. Class Counsel's Investigation

Class Counsel spent many hours investigating the claims of several potential plaintiffs against Whirlpool. Class Counsel performed hours of research on Whirlpool and its Dishwashers, including research on applicable warranties, care and use manuals pertaining to the Dishwashers, and consumer complaints. Additionally, numerous consumers were interviewed and various documents were collected to gather information about the Dishwashers, the alleged defect, and Whirlpool's actions regarding the alleged defect and its knowledge of the same. *See* Ex. 1, Joint. Decl. at ¶¶ 3-6, 46.

Further, Class Counsel worked closely with multiple well-qualified engineering experts who spent many hours investigating the Dishwashers, including, *inter alia*, researching the Dishwasher and its specifications, industry standards, Diverter Shaft Seal manufacturer's installation instructions, and alternative feasible designs. *See* Ex. 1, Joint. Decl. at ¶ 5. As part of their investigation, the engineers collectively performed leakage testing and disassembly of the sump assembly parts, which included the Diverter Shaft Seal. One engineer procured a current dishwasher to determine if Whirlpool had altered the design and fixed the Defect. The engineers also provided ongoing assistance to Class

Counsel during litigation, including in the formulation of discovery requests. *Id.* The foregoing information was essential to Class Counsel's ability to identify the Defect, analyze Whirlpool's conduct with regard to the Defect, and evaluate potential claims and remedies. *Id*. at ¶¶ 5, 16

Class Counsel expended significant resources researching and developing the legal claims at issue, including significant time analyzing information regarding the alleged Defect. *Id*. at ¶¶ 3-6. Class Counsel has litigated and resolved cases with similar factual and legal issues, and therefore Class Counsel is experienced in understanding the remedies and damages at issue, as well as what information is critical in determining class membership. *Id*. at ¶¶ 39-45.

### D.  Multiple Mediations and Settlement Discussions

The Parties entered into preliminary settlement negotiations in March of 2021, prior to attending two-full day mediation sessions on April 27, 2021, and April 29, 2021, with Hunter Hughes, a neutral mediator who has substantial experience mediating class actions. As part of these preliminary settlement discussions, the Parties exchanged requests for information pursuant to Fed. R. Evid. 408 and the Plaintiffs made a detailed settlement demand. *See* Ex. 1, Joint. Decl. at ¶¶ 17-26. Class Counsel thus entered mediation fully informed of the merits of Settlement Class Members' claims.

Prior to mediation, the Parties also provided detailed mediation statements to Mr. Hughes, which were exchanged among the parties on April 26, 2021. *Id.* at ¶18.The Parties subsequently attended two full-day mediation sessions (on April 27, 2021 and April 29, 2021) with Mr. Hughes, who stayed actively engaged in settlement discussions following

11

conclusion of the mediation in order to help the Parties reach an acceptable compromise. While the Parties were able to make substantial progress toward settlement of the actions pending against Whirlpool, the Parties were unable to fully resolve the matter on the first day of mediation. Following the second day of mediation, the Parties agreed to most of the material terms of the settlement and exchanged a term sheet. On July 29, 2021, the Parties reached full resolution of the terms of the settlement and continued their discussions of the finer details of the Settlement through October 2021. *See* Ex. 1, Joint. Decl. at ¶¶ 17-26. The Parties did not agree to attorneys' fees and costs or service awards for Class Representatives during either mediation session or at any time prior to resolution of the material terms of the settlement; rather, these matters were relegated to numerous follow-up discussions among the Parties with the assistance of Mr. Hughes. *Id.* at ¶ 24. Thus, the Parties' settlement negotiations are the product of hard-fought, arm's-length negotiations, which took place over the course of approximately five (5) months.

**J.      The Preliminary Approval Order and Notice**

On December 16, 2021, this Court granted Plaintiff's Motion for Preliminary Approval of Class Action Settlement (ECF No. 75) ("Preliminary Approval Order"). In the Preliminary Approval Order, the Court stated: "[t]he record reflects that the parties engaged in zealous litigation of the issues, exchanged both formal and informal discovery, and vigorously negotiated the settlement over the course of several months. Thus, it appears to the Court that the Settlement was negotiated at arms' length, affording it the presumption that it is fair and reasonable." *Id.* at 15. In addition, the Court stated: "[b]ased on the Court's review of the record, the manner of negotiation, and the Settlement Agreement, the

Court concludes the Settlement is fair, adequate, and reasonable when balanced against the probable outcome of further litigation, liability, and damages, and the potential appeals of rulings." *Id.* at 15. This Court also stated: "[i]t appears to the Court that the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class. See Fed. R. Civ. P. 23(e)(2)(a). Class Counsel each have more than a decade of experience in complex litigation and litigation involving defective products. The Class Representatives also have supervised the litigation by reviewing pleadings, regularly communicating with Class Counsel regarding the litigation, and providing substantive documents as part of discovery." *Id.* at 16. Thus, the Court found that "the Settlement Agreement appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court." *Id.* at 14.

In the Preliminary Approval Order, the Court also approved the proposed Notice Plan. Consistent with the Court's Order and the proposed Notice Plan, the settlement administrator, Angeion Group (Angeion), has notified Settlement Class Members of the Settlement by (a) emailing the notice to all members of the Settlement Class for whom valid email addresses are known to Whirlpool, (b) mailing, by first class US mail, Postcard Notice to all Settlement Class Members for whom Whirlpool only has a physical mailing address, (c) mailing, by first-class US mail, the Long Form Notice to those Settlement Class Members requesting a copy thereof, and (d) commencing internet banner notice and social media notice.  In addition, Angeion created a Settlement Website that includes all necessary and pertinent information for Settlement Class Members, and also established and is maintaining a toll-free number for Settlement Class Members to call and obtain

additional information about the Settlement. Further, Angeion, on behalf of the Defendants, caused notice of the Settlement and related materials (collectively, "CAFA Notice") to be sent to the Attorney General of the United States, the Attorneys General of all U.S. states and territories, and the District of Columbia.

## II.    THE PROPOSED SETTLEMENT AND ITS VALUE

The Settlement's details are contained in the Agreement signed by the Parties (ECF No. 71, Ex.1).  Below is a summary of the key terms of the Settlement.

The Settlement Class is defined as follows:

> All persons in the United States and its territories who either (a) purchased a new Class Dishwasher[2], or (b) acquired a new Class Dishwasher as part of the purchase or remodel of a home, or (c) received as a gift, from a donor meeting those requirements, a new Class Dishwasher not used by the donor or by anyone else after the donor purchased the Class Dishwasher and before the donor gave the Class Dishwasher to the Settlement Class Member.

Excluded from the Settlement Class are (i) officers, directors, and employees of Whirlpool or its parents, subsidiaries, or affiliates, (ii) insurers of Settlement Class Members, (iii) subrogees or all entities claiming to be subrogated to the rights of a Class Dishwasher purchaser, a Class Dishwasher owner, or a Settlement Class Member, (iv) issuers or providers of extended warranties or service contracts for Class Dishwashers,

---

[2]As defined in the Settlement Agreement, "Class Dishwashers" or "Dishwashers" means Whirlpool-manufactured Amana, Ikea, Jenn-Air, Kenmore, KitchenAid, or Whirlpool-branded dishwashers manufactured with a hydraulic rotation diverter system from January 1, 2010, through December 31, 2017, and bearing a model number and serial number within the range on the list attached as Exhibit 2 to the Settlement Agreement.

(v) persons who timely and validly exercise their right to be removed from the Settlement class.

Pursuant to the Settlement Agreement, for any Settlement Class Member who can provide sufficient documentary proof that (1) within eight years after manufacture, the Settlement Class Member's Dishwasher experienced a Diverter Seal Leak, and (2) the Settlement Class Member incurred out-of-pocket expenses for either (i) a Paid Qualifying Repair, or (ii) a Paid Qualifying Replacement within six weeks of the Diverter Seal Leak, rather than a repair of their Dishwasher, Whirlpool will partially reimburse those out-of-pocket expenses subject to the limitations set forth below.

Settlement Class Members will have the ability to make a claim for either Past Diverter Seal Leaks or Future Diverter Seal Leaks which occur within eight years of manufacture of their Dishwasher. As defined in the Settlement Agreement, "Future Diverter Seal Leak" is a Diverter Seal Leak that occurs on or after the Notice Date, and "Past Diverter Seal Leak" means a Diverter Seal Leak that occurred prior to the Notice Date[3]. Further, "Paid Qualifying Repair" means that a Settlement Class Member actually paid some out-of-pocket cost for a repair of his or her Dishwasher that included the replacement of either the diverter motor, sump, or sump assembly in response to a Diverter Seal Leak. "Paid Qualifying Replacement" means that a Settlement Class Member actually

---

[3] Settlement Class Members who have experienced a Past Diverter Seal Leak within eight years after manufacture must submit a valid claim to the Settlement Administrator within 180 days of the Notice Date.

paid some out-of-pocket cost to replace, rather than repair, their Dishwasher in response to a Diverter Seal Leak.

The compensation structure is set forth below for ***Paid Qualifying Repairs or Replacements for Past or Future Diverter Seal Leaks***:

i.      for Paid Qualifying Repairs or Replacements in year two (2) after manufacture, 100% of the Average Cost of Repair ($225.00), or a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

ii.     for Paid Qualifying Repairs or Replacements in year three (3) after manufacture, 90% of the Average Cost of Repair ($202.50), or a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

iii.    for Paid Qualifying Repairs or Replacements in years four (4) or five (5) after manufacture, 80% of the Average Cost of Repair ($180.00), or a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand, or Maytag-brand dishwasher;

iv.     for Paid Qualifying Repairs or Replacements in year six (6) after manufacture, 60% of the Average Cost of Repair ($135), or a cash rebate of $175 for the purchase a new KitchenAid-brand dishwasher, or a cash rebate of $125 for the purchase of a new Whirlpool-brand, or Maytag-brand dishwasher;

v.      for Paid Qualifying Repairs or Replacements in year seven (7) after manufacture, 30% of the Average Cost of Repair (67.50), <u>or</u> a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand, or Maytag-brand dishwasher; or

vi.      for Paid Qualifying Repairs or Replacements in year eight (8) after manufacture, a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand, or Maytag-brand dishwasher.

Settlement Class Members who have experienced a <u>Past Diverter Seal Leak</u> within eight years after manufacture, and who submit a valid claim to the Settlement Administrator within 180 days of the Notice Date, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule. Settlement Class Members who experience a <u>Future Diverter Seal Leak</u>, which is a leak that occurs after the Notice Date, but within eight years of manufacture of their Dishwasher, and who submit a valid claim to the Settlement Administrator within 180 days of the Notice Date, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule.

As described in Plaintiffs' Motion for Preliminary Approval, according to Plaintiffs' expert analysis of Whirlpool's warranty documentation and independent research of the cost of extended warranties for dishwashers, the value of the extended service plan benefits to the Settlement Class is approximately $15,705,328 to $21,327,800, including an analysis of the extended service plan benefits to the class and the out-of-pocket reimbursement benefits. *See* Ex. 1, Joint Decl. at Ex. B, Declaration of Frank Bernatowicz ("Bernatowicz Decl."); (ECF No. 71, Ex. 2).

17

For purposes of his warranty valuation analysis specific to this litigation, Mr. Bernatowicz's calculation was based on the following assumptions: (1) every Settlement Class member receives an extension of warranty benefit under the proposed settlement, excluding those who have previously received compensation under the original one-year warranty or otherwise; and (2) the number of Class Dishwashers units with a Remaining Warranty Life as of the Notice Date is estimated to be 5,230,198[4].  Bernatowicz Decl. at ¶¶ 14-15. For those Settlement Class Member who have a Remaining Warranty Life after the Notice Date, as further detailed in his declaration, Mr. Bernatowicz calculated the value of the warranty benefits coverage as $13,831,171. *Id.* at ¶¶ 12-21.

Based on sales and warranty data provided by Whirlpool during discovery, Mr. Bernatowicz also calculated the out-of-pocket cost benefit to the Settlement Class, using (1) the number of Class Dishwasher units subject to the Settlement, based on the tiered reimbursements; (2) a reasonable estimate of the diverter system repair cost of $225; (3) and a reasonable estimate for diverter system failure percent represented by Whirlpool to be in the range of 1% to 4%, which includes all sump assembly repairs, including diverter system repairs.  On this basis, Mr. Bernatowicz opined that the total out-of-pocket

---

[4] As discussed in the Settlement Agreement, the Settlement Class period runs from January 1, 2010 through December 31, 2017. Thus, as of the Claims Deadline (180 days after the Notice Date, as defined in the Settlement Agreement), Whirlpool's sales data revealed that the number of Settlement Class Members whose extended eight-year warranty will have expired by the Claim Deadline is approximately 1,500,000 Settlement Class Members. Those class members are eligible for identical benefits to those whose Dishwasher warranties will not have expired by the Claim Deadline, but they must make a claim by that deadline in order to be eligible for benefits.  The remaining number of Settlement Class Members whose warranty benefits will not expire by the claim deadline, and who will have a Remaining Warranty Life, is approximately 5,230,198.

reimbursement benefit amounted to a range of $1,874,157 (based on a 1% failure rate) to $7,496,629 (based on a 4% failure rate). *Id.* at ¶27.

Thus, based on the benefits discussed above, the settlement provides substantial and immediate benefits to Settlement Class Members, which, although uncapped, are collectively valued by proposed Class Counsel at approximately $15,705,328 to $21,327,800. *Id.* at ¶28.

## III.   PLAINTIFFS' COUNSEL'S APPLICATION FOR (I) ATTORNEYS' FEES AND COSTS AND (II) SERVICE AWARDS.

Rule 23(h) of the Federal Rules of Civil Procedure provides that in a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Courts utilize two main approaches to analyzing a request for attorney fees." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Johnston*, 83 F.3d at 244-45. "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in

a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (internal quotations and citations omitted).

Here, pursuant to the Preliminary Approval Order, Class Counsel's fee petition explains why the requested fee and expense award is reasonable, and also includes "lodestar information sufficient for the Court to perform a lodestar cross-check should the Court choose to exercise its discretion to perform one."  ECF No. 75 at 12.  Class Counsel thus provides information sufficient for the Court to examine their attorney fee petition using the percentage of the benefits obtained for the Class approach, as well as their lodestar so that the Court can perform a lodestar cross-check.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Whirlpool has agreed to pay one and one-half million dollars ($1,500,000.00) for attorneys' fees and costs, and class representative service awards.  After deduction of litigation costs ($33,997.67) and service awards ($2,500.00 for each Class Representative for a total of $10,000.00) from this amount, Class Counsel are seeking approval of $1,456,002.33 in fees.

As described herein, and in Plaintiffs' Motion for Preliminary approval, the value of the Settlement is $15,705,328 to $21,327,800, as estimated by Plaintiffs' expert, Frank Bernatowicz, as well as $1,200,401.00 in notice and administration expenses, for a total value of the benefits available to the Class of $16,905,729-$22,528,201.

Thus, Class Counsel's fee request of $1,456,002.33 represents approximately 6.5%-8.6% of the total value of the Settlement, and also equates to a 1.75 lodestar multiplier, as described below.  Such award will serve to compensate Class Counsel for their time, risk and expense incurred in this litigation, including all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case.

Importantly, Whirlpool's payment of any fees and costs to Class Counsel and Service Awards to Settlement Class Representatives is entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members. Further, the enforceability of the Settlement is not contingent on the Court's approval of Plaintiffs' Counsel's application for an award of attorneys' fees and costs, or any service award granted by the Court.

### A. The Benefits Available to the Class Approach Supports the Requested Fee Award.

Class Counsel assumed significant risk in prosecuting this litigation entirely on a contingency fee basis. Bearing this risk and facing formidable obstacles and uncertainties involved in this complex litigation, Class Counsel's efforts resulted in securing a Settlement valued at 16,905,729-$22,528,201, which provides the exact relief to consumers that this action was filed to achieve – extended service plan benefits for the Class Dishwashers for an additional seven (7) years from the expiration of the original manufacturer's warranty relating to a "Diverter Seal Leak," allowing consumers to claim

up to $225.00 for the cost of repairing or replacing their Dishwasher as a result of the alleged Defect. As set forth above, this is an excellent outcome for the Class.

Further, because Whirlpool will pay all administrative and class notice costs, as well as any attorneys' fees approved by the Court, in addition to and separate from benefits available to the Class, no Class Member's benefits will be reduced by administrative costs, notice expenses or attorneys' fees or expenses awarded by the Court.

It has long been recognized that a person who maintains a suit that results in the creation of a benefit in which others have a common interest may obtain fees from that common benefit. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id*. Thus, a reasonable percentage of the Settlement Fund is an appropriate basis on which to award Plaintiffs' Counsel a fee in this case. *See Huyer v. Buckley,* 849 F.3d 395, 399 (8th Cir. 2017) (noting that courts within the Eighth Circuit frequently award attorneys' fees between 25% and 36% of a common fund)(citing *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980, 998 (D. Minn. 2005) ("[C]ourts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions.")); *Caligiuri,* 855 F.3d 860 (affirming fee award of one-third of the gross settlement fund).

As described below, the Eighth Circuit utilizes the 12 factors expressed in *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 719-20 (5th Cir. 1974)[5] when evaluating whether a fee request is reasonable. *See e.g. In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 992 (citing *Johnson* factors in analyzing reasonableness of attorney fee in class action settlement). Several courts analyzing the *Johnson* factors have found that common-fund settlements need not specify a maximum value, and that the value of the benefits to the class may be treated as a common fund, particularly where a defendant agrees to pay all valid claims with no cap on the potential aggregate recovery. *See e.g. David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *n 14 and 15 (S.D. Fla. Apr. 15, 2010) (in class action involving motorcycle defect, evaluating *Johnson* factors, and treating uncapped, claims-made settlement as constructive common fund, and finding settlement with ascertainable benefits involving value of credit toward purchase of new motorcycle or parts, and extended warranty, may be treated as common fund to which a percentage fee may be awarded); *Hamm et al. v. Sharp Electronics Corp.*, No. 5:19-cv-00488-JSM-PRL, Doc. No. 61 (M.D. Fla. Jan 7, 2021) (in class action involving defective microwave drawers, evaluating *Johnson* factors, and treating uncapped, claims-made settlement as constructive common fund with ascertainable

---

[5] As discussed in detail below, these factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719–20 (5th Cir.1974).

benefits involving value of extended warranty, replacement microwaves and reimbursement of labor and service costs, and finding "[c]ommon-fund settlements need not specify a maximum value, artificially limiting the class recovery. Common funds may be unlimited, where a defendant agrees to pay all valid claims with no cap on the potential recovery.") *See* Ex. 1, Joint Decl. at Ex. C (*Sharp* Final Approval Order). *See also Oakes v. Blue Cross & Blue Shield of Fla., Inc*., No. 16-80028, 2016 U.S. Dist. LEXIS 147252, at *15-16 (S.D. Fla. Oct. 21, 2016) (in class action involving expansion of health care coverage to class members, finding aggregated, estimated cost to class members of $126,000,000 for treatment covered through settlement constituted "total available benefit" for purposes of common-fund analysis).

Here, the total cash value of the settlement, which is uncapped and ensures that Settlement Class Members will receive the full value of up to $225.00 for the cost of repairing or replacing their Dishwasher as a result of the alleged Defect, is $1,874,157 (based on a 1% failure rate) to $7,496,629 (based on a 4% failure rate). The value of the non-monetary relief (the extended service plan coverage) is $13,831,171, for a total of $15,705,328 to $21,327,800 million. *Id.* at ¶27. In addition, the Court may include "fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount." *Huyer*, 849 F.3d at 398, citing *In re: Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, slip op. at 6. Here, as of February 22, 2022, Angeion estimates that the total costs for notice and administration will be $1,200,401. Thus, the total value of the benefits available to the Class is $16,905,729-$22,528,201.

Class Counsel's attorney fee request of $1,456,002.33 is approximately 6.5%-8.6% of the benefits available to the Class, which is well below the 25% to 36% range of a common fund found reasonable by the Eighth Circuit.

### B.    A Lodestar Cross-Check Further Supports the Reasonableness of the Requested Fee Award.

### a.    Class Counsel's Lodestar Figure is Reasonable

Pursuant to the Preliminary Approval Order, Class Counsel herein provides "lodestar information sufficient for the Court to perform a lodestar cross-check should the Court choose to exercise its discretion to perform one." ECF No. 75 at 12.

"The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Excel Energy, Inc.*, 364 F. Supp. 2d at 999, citing *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 303, 306 (3d Cir.2005).

Class Counsel's lodestar is determined by multiplying the number of hours reasonably expended on the litigation by the timekeeper's hourly rate. *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716460, at *4 (D. Minn. Feb. 27, 2013) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 447-49 (1983)). "[I]n cases where fees are calculated using the lodestar method, counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work." *In re United Health Grp., Inc. PSLRA Litig.,* 643 F.Supp.2d 1094, 1106 (D. Minn. 2009). "The resulting multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases." *In re Excel*

*Energy, Inc.*, 364 F. Supp. 2d at 999 (approving multiplier of 4.6). *See also Keil v. Lopez*, 862 F.3d 685, 702 (8th Cir. 2017) (finding multiplier of 2.7 was in line with comparable cases); *Huyer*, 849 F.3d at 400 (finding multiplier of 1.82 was "well within the range of multipliers awarded in this and other circuits."); *Allicks v. Omni Specialty Packaging, LLC*, No. 4:19-CV-1038-DGK, 2021 WL 2188956, at *3 (W.D. Mo. May 28, 2021) (approving multiplier of 3.3); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) (finding multiplier of 2.26 is fair and appropriate); *In re St. Paul Travelers Sec. Litig.*, No. 04-3801, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving multiplier of 3.9);

Here, as detailed in the attached declaration of Class Counsel, the total lodestar is $829,874.75 which yields a 1.75 multiplier for the requested $1,456,002.33 fee. This multiplier is well in line with, and below, multipliers approved in the 8th Circuit and in similar cases. *See* Ex. 1, Joint Decl. at ¶48. Class Counsel billed their time at their current billing rates charged to their clients, and all of the billable time was necessary to secure the results obtained. *See e.g. Fath v. American Honda Motor Co.,* No. 0:18-cv-01549-NEB-LIB, Doc. No. 48, at 9 (D. Minn. Sept. 11, 2020) (in class action involving defective automobile, approving "[h]ourly rates for the attorneys and paralegals involved ranged from $300 to $950 and $150 to $203, respectively."), Ex. 1, Joint. Decl. at Ex. E (*Fath* Final Approval Order); *In Re: Allura Fiber Cement Siding Litigation*, No. 1:19-mn-02886-DCN, 2021 WL 2043531, at * 6 (May 21, 2021 D.S.C.)(approving petition for *billers in*

*this litigation*[6] where the fees were based on a 33% of a common fund with a lodestar crosscheck based on adjusted Laffey Matrix rates of up to $894/hour, and further noting, "Class Counsel's hourly rates are conservatively based on adjusted Laffey Matrix rates, which are comparable to those rates charged in South Carolina, despite the fact that this case is national in scope and required construction and product defect class action specialists from across the country who typically charge higher rates."). Generally, these rates are in line with national surveys including National Association of Legal Fee Analysis ("NALFA") 2020 Litigation Hourly Rate Range Growth Matrix[7] and the Laffey Matrix.[8] *See also*, National Law Journal's 2014 Billing Survey, noting the top billing firms in the Chicago area were billing up to $1,130/hour for partners and up to $925.00/hour for associates.[9] Thus, a lodestar cross-check confirms the reasonableness of Class Counsel's fee request.

### C.   Class Counsel Are Entitled to Be Reimbursed for Their Reasonable Litigation Expenses.

Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses and costs from the fund. *See Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1315 (8th Cir. 1981). Class Counsel are seeking reimbursement of costs and expenses in an aggregate amount of $33,997.67 for prosecuting this action on behalf of the Settlement Class. *See* Ex. 1, Joint Decl. at ¶ 54.  As set forth in

---

[6] Harper T. Segui and Rachel Soffin were co-lead settlement class counsel in this litigation.
[7] https://www.thenalfa.org/blog/nalfa-releases-3-models-of-growth-for-litigation-hourly-rates/ (demonstrating that average rates for lawyers who have been practicing for 25+ years are between $801.00-$1200/hour).
[8] http://www.laffeymatrix.com/see.html
[9] https://www.law.com/nationallawjournal/almID/1202636785489/?slreturn=20211009144901

the accompanying declarations, these expenses were incurred on an ongoing basis for such items as filing fees, travel costs, mediation, photocopying of documents, mail expenses, long distance telephone and facsimile expenses, and other incidental expenses directly related to the prosecution of this Action. *Id.* Accordingly, Plaintiffs' Counsel respectfully request reimbursement for these reasonable expenses in the amount of $33,997.67.

### D.     The Class Representatives Are Entitled to a Service Award.

"Courts often grant service awards to named plaintiffs in class action suits to 'promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.'" *Caligiuri*, 855 F.3d at 867.   Here, Plaintiffs have devoted time in the oversight of, and participation in, the litigation on behalf of the Class.  Plaintiffs gathered documents and communicated information to Class Counsel, reviewed pleadings, and maintained regular contact with Class Counsel regarding the status of the action.  Ex. 1, Joint Decl. at ¶46. Thus, the requested service award of $2,500.00 to each Class Representative is appropriate and should be approved. *See Caligiuri,* 855 F.3d at 867 (stating "courts in this circuit regularly grant service awards of $10,000 or greater" and affirming service awards of $10,000 each); *Busch v. Bluestem Brands, Inc.*, No. 16-cv-0644 (WMW/HB) (Oct. 11, 2019) (granting service award of $7,500 for class representative). Further, the requested service award will not reduce the value to the Class. Thus, the requested service award of $2,500 to each Class Representative is appropriate and should be approved.

### E.     Relevant Factors Confirm the Reasonableness of the Fee Request.

In the Eighth Circuit, courts utilize the following 12 factors when evaluating

whether a fee request is reasonable:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, fn. 7 (8th Cir.

2018), citing *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 719-20 (5th Cir. 1974).

Each factor is analyzed below and supports Class Counsel's fee request.

### 1.     The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Fee Amount.

The first, fourth and seventh factors – the time and labor, preclusion of other

employment, and time limitations imposed – each heavily support the reasonableness of

Class Counsel's fee request.

As described above, from initiating this action until reaching the proposed

Settlement, Class Counsel was continuously engaged in vigorous litigation against a well-

capitalized Defendant represented by sophisticated counsel. Prosecuting and settling this

Action demanded considerable time and labor. This substantial work included working

with expert consultants who performed critical analyses regarding the alleged defect and

damages to help formulate and substantiate the claims in this case, investigating facts,

researching the law, preparing well-pleaded complaints and amended complaints, briefing

and arguing motions to dismiss, engaging in discovery, and reviewing and analyzing important documents and data, attending mediation, and engaging in several subsequent months of arm's-length negotiations between experienced class counsel. Ex. 1, Joint. Decl. at ¶¶ 3-18. Additional attorney time will be devoted to this case following the filing of this Memorandum, including for preparing the Motion for Final Approval, supervising aspects of the administration of the Settlement, answering Settlement Class Member questions, and helping resolve any issues that arise. *Id.* at ¶58.

In sum, Class Counsel and their support staff have diverted, and will continue to divert, substantial time and resources to this matter that would otherwise have been spent on other cases. Plaintiffs' Counsel collectively devoted more than 1,023 attorney hours to the prosecution of this case.  Ex. 1, Joint. Decl. at ¶48. Accordingly, the amount of time and labor devoted to this case weighs in favor of finding Class Counsel's requested fee award reasonable. Moreover, if Class Counsel did not bring this litigation, they would have been free to allocate their time and resources elsewhere.  This is particularly apt here, where Class Counsel engaged in substantial expert and fact investigation, and filed and litigated numerous cases across the country. *See Yates v. Mobile Cty. Pers. Bd*., 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable hours – and often in significant blocks of time – necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award."); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.").

2.     **The Case Involved Difficult and Novel Issues, and the Risk of Nonpayment in this Contingent Litigation, and Not Prevailing on the Claims Was High.**

The second, sixth and tenth factors – the novelty and difficulty of the questions, the contingent nature of the case, and the undesirability of the case – also support the requested fee award. This case involved difficult and novel issues that presented a significant risk of nonpayment.

Class Counsel brought this case on a fully contingent basis, investing time, effort and money with no guarantee of payment. Consideration of the time, efforts and resources expended by Plaintiffs' Counsel, the skill required to perform the legal services in this complex litigation, and the risk assumed by Plaintiffs' Counsel establish that the requested fee is reasonable and fair.

The claims and defenses in this action are complex, requiring the retention of qualified experts to perform critical analyses regarding the alleged defect, as well as litigation of numerous different state laws in several jurisdictions, heightening the complexity of the factual and legal issues in this case. Plaintiffs faced the risk of losing at class certification, summary judgment, at trial, or on appeal in each of these cases. Ex. 1, Joint. Decl. at ¶¶ 3-16. The risks and obstacles in this case are just as great as those in other product defect class actions and this case would likely have taken years to successfully prosecute, with the risk that there would be no recovery at all. *Id.* at ¶38. Indeed, "[t]he risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources

in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel,* 364 F. Supp. 2d at 994.

The difficult and contingent nature of this case further demonstrates its undesirability. There are few lawyers willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation, which is evidenced by the fact that, to Class Counsel's knowledge, no other related class actions were filed elsewhere in the Country. Although Class Counsel managed to achieve an excellent result for the Settlement Class, this outcome was anything but certain until shortly before the Settlement was reached.

While Class Counsel are confident in the merits of Plaintiffs' claims, the certification of a consumer class action is challenging and strongly contested throughout the country, specifically within the Eighth Circuit. Here, continued litigation involved serious risks. While Plaintiffs prevailed on many important issues in their motions to dismiss, with continued litigation, Whirlpool undoubtedly would challenge Plaintiffs' liability and damages experts, contest class certification and move for summary judgment on any potentially remaining claims in each of the four (4) actions. Indeed, Whirlpool disclosed data in discovery that showed (a) varying rates of repair over time and within subpopulations of the Class Dishwashers; and (b) a decreasing rate of repairs that coincided with Whirlpool's introduction of updates to the diverter system, which Whirlpool would have argued defeated commonality and predominance.

Further, if this action proceeded to trial, the Parties would incur significant expenses, including the further payment of expert witnesses and technical consultants,

preparation for and litigation during trial, post-trial motion practice, and appeal, all of which could have impacted the recovery in this Action. The proofs necessary to prevail at trial would be greater than what is required under the Settlement. Settlement Class Members may receive relief under the Settlement with limited documentation and a simple Claim Form. This Settlement represents an efficient alternative to what may otherwise be a prolonged and complex class action. Thus, consideration of the undesirability of the case and the fact that Plaintiffs' Counsel risked their time and effort with the possibility of no recovery at all, supports the fee request of one-third of the Gross Settlement Fund. *See e.g. Larson v. Allina Health Sys.*, No. 17-CV-03835, 2020 WL 2611633, at *2 (D. Minn. May 22, 2020) ("class counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.") (internal quotations omitted).

When balanced against the risks of litigation, this Settlement is a significant achievement for the Class, which provides Settlement Class Members with substantial costs for parts and labor, up to the average cost of repair of $225.00, and also provides immediate benefits to the class.

### 3. Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth factor focuses on the results achieved for the class. Many courts consider the result achieved to be the most important factor in determining whether the fee requested is reasonable. *See In re Flight Transp. Corp. Sec. Litigation*, 685 F. Supp. 1092, 1095 (D. Minn. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("critical factor is the degree of success obtained"). The result achieved here is exemplary and comprehensive

because the Settlement provides precisely what the actions were filed to obtain. The Settlement Class will receive substantial extended service plan benefits, which allows Settlement Class Members to make a claim for the alleged Defect for seven (7) years beyond the one (1) year warranty accompanying the purchase of a Dishwasher. With the extended service plan benefits, Settlement Class Members will be entitled to reimbursement of out-of-pocket costs in an amount up to the average cost of repair of the Defect of $225.00, as described in Section II above, which details the tiered relief offered to Settlement Class Members depending on the age of their Dishwasher. Further, as described in Section II above, consumers have the option to choose between this cash reimbursement or a cash rebate of up to $200.00 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of up to $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher, again depending upon the age of the Dishwasher at the time of the repair or replacement. The Settlement thus directly addresses the claimed harm. *See Hamm et al. v. Sharp Electronics Corp.*, No. 5:19-cv-00488-JSM-PRL, Doc. No. 62 at 14 (M.D. Fla. Jan 7, 2021), Ex. 1, Joint Decl. at Ex. C (*Sharp* Final Approval Order). (granting final approval in settlement involving defective microwave drawers, finding "the relief secured for the Settlement Class provides the Class with the precise relief the litigation was brought to obtain: the right to file claims to address the defect in question – either via a replacement Class Microwave or receipt of cash or a voucher, plus reimbursement of labor and/or costs in connection with Documented Arcing Claims.").

Further, regardless of the option they choose, Settlement Class Members will be able to receive the remuneration described above by submitting a simple Claim Form. As

detailed in the Expert Report of Frank Bernatowicz, the value of the proposed settlement is approximately $15.71 to $21.33 million. *See* Ex. 1, Joint Decl. at Ex. B, Declaration of Frank Bernatowicz ¶¶ 12-21

### 4.  The Requested Fee Amount is Well Below the Market Rate in Similar Class Cases and Is Separate from the Funds Made Available to the Class.

The fifth and twelfth factors – the customary fee, and awards in similar cases – also support approval.

As described in more detail above, these factors weigh in favor of awarding Class Counsel the requested fee, which amounts to 6.5%-8.6% of the value of the benefits obtained by the Settlement, or a 1.75 lodestar multiplier. Class Counsel did not receive any compensation over the course of this litigation and have incurred $33,997.67 in costs. Ex. 1, Joint Decl., at ¶1.  As described in more detail above, the requested fee in this action is consistent with (and lower than) numerous other decisions from this Circuit that use the percentage-of-the-fund approach, and a lodestar crosscheck, to evaluate the appropriateness of attorneys' fees in consumer protection cases. *See e.g. Keil v. Lopez*, 862 F.3d 685, 702 (8th Cir. 2017)  (in class action involving defective pet food, finding 25% of common fund, and a 2.7 lodestar multiplier with a lodestar crosscheck, appropriate); *Caligiuri*, 855 F.3d at 865-866 (in consumer protection class action regarding deceptive trade practices involving computer software, finding 33% of common fund, and lodestar multiplier of less than two with a lodestar crosscheck, appropriate).

**5.      The Skill, Experience, Reputation and Ability of Class Counsel**

The remaining factors – the skill required to perform the legal services properly; the experience, reputation, ability of the attorneys; and the nature of the professional relationship with the clients – confirm that the fees sought are reasonable.

As reflected in the accompanying declaration, Class Counsel are nationally recognized firms with extensive experience in the area of complex class litigation.  Ex. 1, Joint Decl. at ¶¶39-45. Further, in the Preliminary Approval Order, this Court previously found "[i]t appears to the Court that the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class. See Fed. R. Civ. P. 23(e)(2)(a). Class Counsel each have more than a decade of experience in complex litigation and litigation involving defective products." ECF No. 75, at 16. Accordingly, the quality and skill involved in the services performed by Plaintiffs' Counsel support the requested fee.

In addition, as shown above, Class Counsel achieved a Settlement that confers substantial benefits to the Settlement Class Members despite the hard-fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel.

This outstanding result was made possible by Class Counsel's extensive experience litigating class actions of similar size, scope, and complexity. This litigation required a high degree of skill and experience given the complexity of the issues. Class Counsel employed their significant experience gained from litigating numerous class actions across the country, in both state and federal court, including defective product class actions, among others. Ex. 1, Joint Decl. at ¶¶39-45. Thus, this factor supports awarding the requested fee.

### 6.   The Absence of Objections by Members of the Class to Fees Requested by Counsel.

Plaintiffs' Counsel have received no objection to their fee request as of this date.[10] Consequently, the lack of objections by Settlement Class members is further support of the reasonableness of the requested fee. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The fact that only a handful of class members objected to the settlement similarly weighs in [class counsel's] favor."); *In re Xcel*, 364 F. Supp. 2d at 1002 ("[S]ilence can be read as an endorsement of the results received and the services rendered by plaintiff's counsel.").

## II.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant the Motion for Award of Attorneys' Fees, Litigation Costs and Service Awards.  For judicial efficiency, Plaintiffs request that the Order on this motion be consolidated with an Order on Plaintiffs' forthcoming motion for final approval of the class settlement, for which Class Counsel will provide a detailed proposed final order.

Dated:  February 22, 2022                 Respectfully submitted,

/s/ Rachel Soffin
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
800 S. Gay Street, Suite 1100

---

[10] To date, one objection has been received by Class Counsel but that objection appears to pertain to a misunderstanding that the Settlement does not allow class members with future diverter seal leaks to make a claim, and another misunderstanding that class members will be unable to determine their dishwasher's date of manufacture (which is included in a sticker affixed to each class member's dishwasher) in order to make a claim. The deadline for filing an objection is March 17, 2022.  If any objections to the Settlement or Class Counsel's fees are received by then, Class Counsel shall address any such objections in either a reply to Whirlpool's response to the subject motion or in Class Counsel's Motion for Final Approval of the Settlement.

Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rsoffin@milberg.com

Harper T. Segui
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLP**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, SC 29464
T: (919) 600-5000
hsegui@milberg.com

Michelle J. Looby
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-844
mlooby@gustafsongluek.com

*Attorneys for Plaintiffs and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served the foregoing was served upon all counsel of record via this Court's CM/ECF system.

This 24th day of February, 2022.             Respectfully submitted,

<u>/s/ Rachel Soffin</u>
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLP**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rsoffin@milberg.com