**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **ELISABETH CLEVELAND, AMY LARCHUK, CHRISTOPHER REDMON, DHAVAL SHAH, and THOMAS MCCORMICK,** on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>**WHIRLPOOL CORPORATION,**<br><br>        Defendant. | **CASE NO. 20-cv-1906 (WMW-KMM)** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

Plaintiffs Elizabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick (collectively "Plaintiffs" or "Class Representatives"), by and through undersigned counsel, respectfully move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed Settlement with Whirlpool Corporation ("Whirlpool") and affirmation of the certification of the Settlement Class defined in the Settlement Agreement. The Settlement, reached after substantial expert investigation, active litigation, and lengthy and hard-fought negotiations in this case resolves all of Plaintiffs' and Settlement Class Members' claims against Whirlpool in this action. Plaintiffs and Class Counsel firmly believe that the settlement is in the best interest of the Settlement Class and that the Settlement satisfies the standards for final approval discussed herein.

1

## I.      RELEVANT FACTS AND PROCEDURAL HISTORY[1]

The Settlement achieved in this action effectively resolves all claims asserted by Plaintiffs on behalf of a nationwide class involving allegations that Whirlpool designed, manufactured, distributed, marketed, and sold more than 6,700,000 Dishwashers with a uniform defect that can and has caused the Dishwashers to leak prior to expiration of their expected life span.

Prior to filing this action, Class Counsel performed numerous hours of research on Whirlpool and its Dishwashers, including applicable warranties, care and use manuals, and consumer complaints. Additionally, numerous consumers were interviewed, and various documents were collected to gather information about the Dishwashers, the alleged Defect, Whirlpool's actions regarding the alleged Defect and its knowledge of the same. *See* Joint Declaration of Class Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class, ECF No. 71-4, at ¶¶2-5 ("Initial Joint Decl."), and Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs and Service Awards, ECF 80-2, at ¶¶3-6, 46 ("Supplemental Joint Decl.").

Further, Class Counsel worked closely with multiple well-qualified engineering experts who spent many hours investigating the Dishwashers, including, *inter alia*, researching the Dishwasher and its specifications, industry standards, Diverter Shaft Seal

---

[1] The Relevant Facts and Procedural History are further detailed in Plaintiffs' Motion for Preliminary Approval (ECF No. 70-71), Motion for Attorneys' Fees, Litigation Costs and Service Awards (ECF No. 78, 80), and in the Initial Joint Declaration (ECF No. 71-4) and Supplemental Joint Declaration (ECF 80-2) in support of those Motions.

manufacturer's installation instructions, and alternative feasible designs. As part of their investigation, the engineers collectively performed leakage testing and disassembly of the sump assembly parts, which included the Diverter Shaft Seal. One engineer procured a current dishwasher to determine if Whirlpool had altered the design and fixed the Defect. The engineers also provided ongoing assistance to Class Counsel during litigation, including in the formulation of discovery requests. *See* ECF No. 71-4, Initial Joint Decl., at ¶¶4-5, 15; ECF No. 80-2, Supplemental Joint Decl. at ¶¶5-6, 16. The foregoing information was essential to Class Counsel's ability to identify the Defect, analyze Whirlpool's conduct regarding the Defect, and evaluate potential claims and remedies. Class Counsel thus expended significant resources researching and developing the legal claims at issue and information regarding the alleged Defect.

Class Counsel has litigated and resolved cases with similar factual and legal issues and is experienced in understanding the remedies and damages at issue, as well as what information is critical in determining class membership. *See* generally, Initial Joint Decl., ECF No. 71-4, at ¶2-5; Supplemental Joint Decl., ECF No. 80-2, at ¶5, 16.

As shown herein, and as set forth in Plaintiffs' Counsel's declarations previously submitted to this Court, the Settlement is the product of hard-fought litigation and arm's-length negotiations, as well as aforementioned substantial investigation and litigation including: (1) significant time communicating with Plaintiffs, (2) investigation of facts and research of relevant law, (3) preparation of well-pleaded complaints and amended complaints (4) the retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defect and damages at various stages of litigation, and who

3

also assisted with discovery; (5) adjudication of Whirlpool's motion to dismiss in the present action, and also in associated litigation in the United States District Court for the Northern District of Illinois; (6) briefing Whirlpool's motion to dismiss in associated litigation in the United States District Court for the Eastern District of Pennsylvania; (7) negotiation of numerous orders, including a protective order, an order governing electronically stored information, and various case management orders involving coordination of litigation and schedules across all cases; (8) attendance at regular case management conferences with Magistrate Judge Menendez in this litigation and judges in the Northern District of Illinois and Northern District of California; (9) completion of significant fact discovery, which aided the resolution of this action, and included serving and responding to interrogatories and requests for production, serving third-party retailer discovery, and reviewing and analyzing important documents and data produced by Whirlpool and third-parties; (10)  exchange of additional information pursuant to Fed. R. Evid. 408 and extensive analysis thereof in anticipation of settlement discussions; (10) two full-day mediation sessions (on April 27, 2021, and April 29, 2021); and (11) subsequent months of arm's-length negotiations between experienced class-action counsel for both Whirlpool and Plaintiffs, all led by a mediator with substantial experience in class action litigation. *See generally* ECF No. 71-4, Initial Joint Decl., and ECF 80-2, Supplemental Joint Decl.

### A. Summary of Allegations in the Consolidated Amended Complaint

On August 20, 2021, with Whirlpool's consent, Plaintiffs filed a Consolidated Amended Complaint ("CAC") (ECF No. 63) in this litigation for the purpose of settlement.

As discussed below, the CAC involves the same defect alleged in the complaints filed in the Northern District of Illinois, Eastern District of Pennsylvania, and Northern District of California, which also included multiple claims made on behalf of consumers in the states in which those complaints were filed.

As alleged in the CAC, from 2010-2020, Whirlpool designed, manufactured, marketed and sold certain Dishwashers (identified and defined in the Settlement Agreement) as "high-quality" products, with base retail prices ranging from $500-$700. *Id.* at ¶4. Based on industry standards, the average service life of a dishwasher is typically seven to twelve years (or 9.5 years on average), and Whirlpool has boasted in at least one article that the expected lifespan of its dishwashers is ten years. *Id.* at ¶5. However, Whirlpool designed, manufactured, distributed, marketed, and sold the Dishwashers with a uniform defect that can and has caused the Dishwashers to leak prior to expiration of their expected life span. *Id.* at ¶6.

The Dishwashers are equipped with a pump motor diverter shaft seal ("Diverter Shaft Seal"), which is responsible for collecting and distributing water throughout the dishwasher during cleaning, and for preventing the dishwasher from leaking. *Id.* at ¶¶6, 8. However, the Diverter Shaft Seal in the Dishwashers is uniformly defective in its design and/or manufacture in that it is incorrectly oriented, accelerating degradation of the seal and creating a buildup of debris that prevents the shaft seal spring from properly sealing the diverter shaft and sump ("Diverter Shaft Seal Defect" or "Defect"). *Id.* at ¶7. As a result, Plaintiffs and Settlement Class Members' Dishwashers can and have experienced

significant leakage through the Diverter Shaft Seal, flowing out of the dishwasher to areas below and surrounding the dishwasher. *Id.*

Whirlpool's Major Appliance Limited Warranty ("Warranty") states that within one year of the purchase date, Whirlpool "will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product." *Id.* at ¶14. Thus, while the Defect existed at the time of manufacture, prior to this litigation and Settlement, any Class Dishwashers with the Diverter Shaft Seal Defect that experienced a leak following this one-year period would not be covered under Whirlpool's one year Warranty. For Settlement Class Members whose Dishwashers experience the Defect, which is not covered under the Warranty, the cost associated with labor and replacing the defective Diverter Shaft Seal is approximately $200.00 or more. *Id.* at ¶16.

As discussed herein, through the Settlement, Settlement Class Members with paid qualifying repairs or replacements of the Diverter Shaft Seal Defect receive extended service plan benefits that allow them to receive up to $225.00 for a diverter seal leak that occurs within eight years of manufacture of their Class Dishwasher, which is seven (7) years longer than the factory warranty accompanying the purchase of the Dishwashers.

### B. Relevant Procedural Background

On September 4, 2020, Plaintiff Cleveland filed her class action Complaint alleging that Whirlpool designed, manufactured, distributed, marketed, and sold the Dishwashers with the uniform Diverter Shaft Seal Defect that can and has caused the Dishwashers to leak ("Minnesota Action," ECF No. 1). Related actions were filed by the undersigned Class

Counsel on September 10, 2020, in the United States District Court for the Eastern District of Pennsylvania (*Larchuk v. Whirlpool Corp.*, No. 2:20-cv-04442-BMS (E.D. Pa.)) ("Pennsylvania Action"); on November 6, 2020, in the United States District Court for the Northern District of Illinois (*Redmon v. Whirlpool Corp.,* No. 1:20-cv-06626 (N.D. Ill.)) ("Illinois Action"); and on April 16, 2021, in the United States District Court for the Northern District of California (*Shah v. Whirlpool Corp.*, No. 3:21-cv-02739 (N.D. Cal)) ("California Action"). For effective and efficient coordination and scheduling, the Parties entered into a stipulated Joint Case Management Plan, which was adopted by the courts in the Minnesota, Illinois and Pennsylvania Actions. *See* ECF No. 71-4, Initial Joint Decl., at ¶8; ECF No. 80-2, Supplemental Joint Decl., at ¶9.

The Parties engaged in significant litigation in these actions, including litigation and adjudication of Whirlpool's motions to dismiss in the Minnesota and Illinois Actions. (*See* Minnesota Action, ECF Nos. 27, 29, 32 and 35; Illinois Action ECF Nos. 11-12, 22, and 24). On July 27, 2021, in the Minnesota Action, this Court entered an Order granting without prejudice Whirlpool's motion to dismiss Plaintiff Cleveland's claims for breach of contract and unjust enrichment and denying the motion to dismiss for Plaintiff Cleveland's claims alleging breach of express and implied warranty, violations of the Minnesota Consumer Fraud Act (MCFA), the Minnesota Uniform Deceptive Trade Practices Act (MDTPA), and the Minnesota Unlawful Trade Practices Act (MUTPA). On April 28, 2021, in the Illinois Action, the court granted Whirlpool's motion to dismiss without prejudice as to Plaintiff Redmon's express warranty claim beyond the actual written product warranty, breach of implied warranty and fraudulent concealment, and with prejudice as to

Plaintiff Redmon's claims for negligence and injunctive relief. The court denied the motion to dismiss Plaintiff Redmon's claims for breach of the express warranty as to the product warranty, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., unjust enrichment, and breach of contract. (Illinois Action, ECF No. 31). Prior to Settlement, the parties also fully briefed Whirlpool's motion to dismiss in the Pennsylvania Action (Pennsylvania Action, ECF Nos. 20-22), and Whirlpool filed a motion to dismiss in the California Action (California Action, ECF No. 21).

In addition to the aforementioned litigation, the Parties engaged in significant discovery. Whirlpool produced voluminous data and documents, which aided the parties in resolving this action. Plaintiffs also served eleven third-party subpoenas to retailers of the Dishwashers, as well as serving both a subpoena for documents and subpoena for the Fed. R. Civ. P. 30(b)(6) deposition of the manufacturer of the Diverter Shaft Seal. Plaintiffs engaged their experts during the various discovery stages in order to ensure discovery was thorough and would aid them in producing substantive expert reports. *See* ECF No. 71-4, Initial Joint Decl., at ¶14-15; ECF No. 80-2, Supplemental Joint Decl., at ¶15-16.

Further, prior to negotiating the Settlement, Class Counsel had already provided dates for the inspection of certain Plaintiffs' Dishwashers and for their depositions; began scheduling depositions of Whirlpool's employees; noticed the deposition of the Diverter Shaft Seal manufacturer; and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of Plaintiffs and the Class. Class Counsel thus negotiated the proposed Settlement without staying any pending action, and while

zealously advancing the position of Plaintiffs and Class Members. *See* ECF No. 71-4, Initial Joint Decl., at ¶14-15, 25; ECF No. 80-2, Supplemental Joint Decl., at ¶15-16, 26.

As discussed *supra*, on August 20, 2021, Plaintiffs filed their CAC for the purposes of settlement. (Minnesota Action, ECF No. 63). If the Parties had not negotiated this settlement, Whirlpool undoubtedly would have contested class certification and moved for summary judgment on any potentially remaining claims in each of the four (4) actions. Likewise, Whirlpool acknowledged that it would vigorously contest the litigation during the hearing on the Motion for Preliminary Approval of Class Action Settlement.

### C. Multiple Mediations and Settlement Discussions

The Parties entered into preliminary settlement negotiations in March of 2021, prior to attending two-full day mediation sessions on April 27, 2021, and April 29, 2021, with Hunter R. Hughes, III, a neutral mediator with substantial experience mediating class actions. As part of these preliminary discussions, the Parties exchanged requests for information pursuant to Fed. R. Evid. 408 and Plaintiffs made a detailed settlement demand. Class Counsel thus entered mediation fully informed of the merits of Settlement Class Members' claims. *See* ECF No. 71-4, Initial Joint Decl., at ¶16-25; ECF No. 80-2, Supplemental Joint Decl., at ¶17-26.

The Parties attended two full-day mediation sessions (on April 27, 2021, and April 29, 2021) with Mr. Hughes, who stayed actively engaged in settlement discussions following conclusion of the mediation in order to help the Parties reach an acceptable compromise. While the Parties were able to make substantial progress toward settlement of the actions pending against Whirlpool, the Parties were unable to fully resolve the matter

9

on the first day of mediation. Following the second day of mediation, the Parties agreed to most of the material terms of the settlement and exchanged a term sheet. On July 29, 2021, the Parties reached full resolution of the terms of the settlement and continued their discussions of the finer details of the Settlement through October 2021. The Parties did not agree to attorneys' fees and costs or service awards for Class Representatives during either mediation session or at any time prior to resolution of the material terms of the settlement; rather, these matters were relegated to numerous follow-up discussions among the Parties with the assistance of Mr. Hughes. Thus, the Parties' settlement negotiations are the product of hard-fought, arm's-length negotiations, which took place over the course of approximately five (5) months. *See* ECF No. 71-4, Initial Joint Decl., at ¶20-25; ECF No. 80-2, Supplemental Joint Decl., at ¶21-26.

## II.   THE PROPOSED SETTLEMENT AND ITS VALUE

The Settlement's details are contained in the Agreement signed by the Parties (ECF No. 71, Ex.1).  Below is a summary of the key terms of the Settlement.

The Settlement Class is defined as follows:

> All persons in the United States and its territories who either (a) purchased a new Class Dishwasher[2], or (b) acquired a new Class Dishwasher as part of the purchase or remodel of a home, or (c) received as a gift, from a donor meeting those requirements, a new Class Dishwasher not used by the donor or by anyone else after the donor purchased the Class Dishwasher and before the donor gave the Class Dishwasher to the Settlement Class Member.

---

[2]As defined in the Settlement Agreement, "Class Dishwashers" or "Dishwashers" means Whirlpool-manufactured Amana, Ikea, Jenn-Air, Kenmore, KitchenAid, or Whirlpool-branded dishwashers manufactured with a hydraulic rotation diverter system from January 1, 2010, through December 31, 2017, and bearing a model number and serial number within the range on the list attached as Exhibit 2 to the Settlement Agreement.

Excluded from the Settlement Class are (i) officers, directors, and employees of Whirlpool or its parents, subsidiaries, or affiliates, (ii) insurers of Settlement Class Members, (iii) subrogees or all entities claiming to be subrogated to the rights of a Class Dishwasher purchaser, a Class Dishwasher owner, or a Settlement Class Member, (iv) issuers or providers of extended warranties or service contracts for Class Dishwashers, (v) persons who timely and validly exercise their right to be removed from the Settlement class.

Pursuant to the Settlement Agreement, for any Settlement Class Member who can provide sufficient documentary proof that (1) within eight years after manufacture, the Settlement Class Member's Dishwasher experienced a Diverter Seal Leak, and (2) the Settlement Class Member incurred out-of-pocket expenses for either (i) a Paid Qualifying Repair, or (ii) a Paid Qualifying Replacement within six weeks of the Diverter Seal Leak, rather than a repair of their Dishwasher, Whirlpool will partially reimburse those out-of-pocket expenses subject to the limitations set forth below.

Settlement Class Members will have the ability to make a claim for either Past Diverter Seal Leaks or Future Diverter Seal Leaks which occur within eight years of manufacture of their Dishwasher. As defined in the Settlement Agreement, "Future Diverter Seal Leak" is a Diverter Seal Leak that occurs on or after the Notice Date, and "Past Diverter Seal Leak" means a Diverter Seal Leak that occurred prior to the Notice

Date[3]. Further, "Paid Qualifying Repair" means that a Settlement Class Member actually paid some out-of-pocket cost for a repair of her or his Dishwasher that included the replacement of either the diverter motor, sump, or sump assembly in response to a Diverter Seal Leak. "Paid Qualifying Replacement" means that a Settlement Class Member actually paid some out-of-pocket cost to replace, rather than repair, their Dishwasher in response to a Diverter Seal Leak.

The compensation structure is set forth below for ***Paid Qualifying Repairs or Replacements for Past or Future Diverter Seal Leaks*:**

i.      for Paid Qualifying Repairs or Replacements in year two (2) after manufacture, 100% of the Average Cost of Repair ($225.00), or a cash rebate of $200 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

ii.      for Paid Qualifying Repairs or Replacements in year three (3) after manufacture, 90% of the Average Cost of Repair ($202.50), or a cash rebate of $200 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

iii.      for Paid Qualifying Repairs or Replacements in years four (4) or five (5) after manufacture, 80% of the Average Cost of Repair ($180.00), or a cash rebate of $200 for

---

[3] Settlement Class Members who have experienced a Past Diverter Seal Leak within eight years after manufacture must submit a valid claim to the Settlement Administrator within 180 days of the Notice Date.

the purchase of a new KitchenAid-brand dishwasher, <u>or</u> a cash rebate of $150 for the purchase of a new Whirlpool-brand, or Maytag-brand dishwasher;

iv.    for Paid Qualifying Repairs or Replacements in year six (6) after manufacture, 60% of the Average Cost of Repair ($135), <u>or</u> a cash rebate of $175 for the purchase of a new KitchenAid-brand dishwasher, <u>or</u> a cash rebate of $125 for the purchase of a new Whirlpool-brand, or Maytag-brand dishwasher;

v.    for Paid Qualifying Repairs or Replacements in year seven (7) after manufacture, 30% of the Average Cost of Repair (67.50), <u>or</u> a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand, or Maytag-brand dishwasher; or

vi.    for Paid Qualifying Repairs or Replacements in year eight (8) after manufacture, a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand, or Maytag-brand dishwasher.

Settlement Class Members who have experienced a <u>Past Diverter Seal Leak</u> within eight years after manufacture, and who submit a valid claim to the Settlement Administrator within 180 days of the Notice Date, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule. Settlement Class Members who experience a <u>Future Diverter Seal Leak</u>, which is a leak that occurs after the Notice Date, but within eight years of manufacture of their Dishwasher, and who submit a valid claim to the Settlement Administrator within 180 days of the Notice Date, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule.

According to an analysis of Whirlpool's warranty documentation and independent research of the cost of extended warranties for dishwashers conducted by Plaintiffs' expert, Frank Bernatowicz, the value of benefits to the Settlement Class is approximately $15,705,328 to $21,327,800, including an analysis of the extended service plan benefits to the class and the out-of-pocket reimbursement benefits. *See* ECF No. 71, at Ex. 2 and ECF No. 80-2, Ex. B., Declaration of Frank Bernatowicz ("Bernatowicz Decl.").

Mr. Bernatowicz's calculation was based on the following information: (1) every Settlement Class member receives an extension of warranty benefit under the proposed settlement, excluding those who have previously received compensation under the original one-year warranty or otherwise; and (2) the number of Class Dishwashers units with a Remaining Warranty Life as of the Notice Date is estimated to be 5,230,198[4]. *Id.* at ¶¶14-15. For those Settlement Class Member who have a Remaining Warranty Life after the Notice Date, as further detailed in his declaration, Mr. Bernatowicz calculated the value of the warranty benefits coverage as $13,831,171. *Id.* at ¶¶ 12-21.

Based on sales and warranty data provided by Whirlpool during discovery, Mr. Bernatowicz also calculated the out-of-pocket cost benefit to the Settlement Class, using (1) the number of Class Dishwasher units subject to the Settlement, based on the tiered

---

[4] As discussed in the Settlement Agreement, the Settlement Class period runs from January 1, 2010 through December 31, 2017. Thus, as of the Claims Deadline (180 days after the Notice Date, as defined in the Settlement Agreement), Whirlpool's sales data revealed that the number of Settlement Class Members whose extended eight-year warranty will have expired by the Claim Deadline is approximately 1,500,000 Settlement Class Members. Those class members are eligible for identical benefits to those whose Dishwasher warranties will not have expired by the Claim Deadline, but they must make a claim by that deadline in order to be eligible for benefits. The remaining number of Settlement Class Members whose warranty benefits will not expire by the claim deadline, and who will have a Remaining Warranty Life, is approximately 5,230,198.

14

reimbursements; (2) a reasonable estimate of the diverter system repair cost of $225; (3) and a reasonable estimate for diverter system failure percent represented by Whirlpool to be in the range of 1% to 4%, which includes all sump assembly repairs, including diverter system repairs. On this basis, Mr. Bernatowicz opined that the total out-of-pocket reimbursement benefit amounted to a range of $1,874,157 (based on a 1% failure rate) to $7,496,629 (based on a 4% failure rate). *Id.* at ¶27.

Thus, based on the benefits discussed above, the settlement provides substantial and immediate benefits to Settlement Class Members, which, although uncapped, are collectively valued by proposed Class Counsel at approximately $15,705,328 to $21,327,800. *Id.* at ¶28.

Further, given that Whirlpool is paying all costs associated with notice and administration, which is currently estimated at $1,249,240[5], this amount may be added to the value of the benefits available to the Class, for a total value of $16,954,568-$22,577,040. *See* Exhibit 1, Declaration of Brian Devery of Angeion Group, at ¶19 ("Angeion Declaration").

## II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL.

### A. THE LAW FAVORS AND ENCOURAGES SETTLEMENTS.

Courts favor settlements of disputed claims. "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class

---

[5] This is slightly more than the estimated cost of notice and administration included in Plaintiffs' fee petition of $1,200,401.00, but it does not materially alter any of the fee calculations in the petition.

action context." *George v. Uponor Corp.*, No. 12-cv-249 (ADM/JJK), 2015 WL 5255280, at *6 (D. Minn., Sept. 9, 2015) (citation omitted); *In re Centurylink Sales Practices and Securities Litig.*, 2021 WL 3080960, at *6, (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148–49 (8th Cir. 1999)) ("[A] strong public policy favors agreements, and courts should approach them with a presumption in their favor. Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, [j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.") (citations omitted).

## B. CRITERIA TO BE CONSIDERED IN ASSESSING WHETHER A CLASS ACTION SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

"A class action cannot be dismissed or settled without the approval of the district court." *Phillips et al. v. Caliber Home Loans, Inc.*, No. 19-cv-2711 (WMW/LIB), 2022 WL 832085, at *3 (D. Minn. Mar. 21, 2022), (citing Fed. R. Civ. P. 23(e)). "Under Rule 23(e) the district court acts as a fiduciary who must serve as guardian of the rights of absent class members." *Phillips,* 2022 WL 832085, at *3, quoting *Kloster v. McColl*, 350 F.3d 747, 751 (8th Cir. 2003) (internal quotation marks omitted). "As such, a district court may approve a class action settlement only if it determines that the settlement is "fair, reasonable, and adequate."" *Phillips,* 2022 WL 832085, at *3, (citing Fed. R. Civ. P. 23(e)(2)). *See also Marshall v. National Football League*, 787 F.3d 502, 508 (8th Cir. 2015).

The Eighth Circuit has set forth the following four factors to assist in assessing whether a class settlement is fair, adequate, and reasonable.

1.  The merits of the plaintiff's case weighed against the terms of the settlement;

2.  The defendant's financial condition;

3.  The complexity and expense of further litigation; and

4.  The amount of opposition to the settlement.

*Id.* (quoting *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)).

In the Eighth Circuit, class action "[s]ettlement agreements are presumptively valid, particularly where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objectors." *Uponor Corp.*, 2015 WL 5255280, at *6. *See also In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d at 1063, (citing *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990)) (internal citation omitted).

Further, the Eighth Circuit has found that evaluation of a class action settlement should "begin with the guiding principle that "a class action settlement is a private contract negotiated between the parties." *Marshall*, 787 F.3d at 509 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 934 (8th Cir.2005)). "[I]n approving a settlement[,] the district court need not undertake the type of detailed investigation that trying the case would involve." *Id.* at 518, quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). The court's role in reviewing a negotiated class settlement is to "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* at 509 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d at 934).

17

Here, as described in Section I above, the Settlement is the product of fact intensive investigation regarding the Defect, hard-fought litigation and arm's-length negotiations, along with substantive motion practice, and discovery practice. Thus, Plaintiffs' Counsel had ample information before entering into settlement negotiations, and they were able to effectively assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation.

The Settlement clearly meets the critical test of gauging its fairness and reasonableness because it provides significant, concrete relief to Settlement Class Members and directly remedies the injury alleged in the action. The gravamen of Plaintiffs' Complaint is that Plaintiffs and Settlement Class Members purchased Dishwashers which had a defect that can and has caused certain Dishwashers to leak, requiring consumers to assume the cost of repair. Accordingly, the proposed Settlement provides the exact relief to consumers that this action was filed to achieve– benefits specific to the alleged Defect, allowing consumers to claim up to $225.00 for the cost of repairing or replacing their Dishwasher as a result of the alleged Defect. Further, regardless of the option they choose, Settlement Class Members will be able to receive the remuneration described above by submitting a simple Claim Form. Accordingly, there are no grounds to doubt the Settlement's fairness.

As demonstrated below, the Settlement satisfies each of the criteria for final approval, thereby warranting this Court's approval.

**1. The Merits of The Plaintiff's Case, Weighed Against the Terms of The Settlement.**

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508, (citing *Van Horn,* 840 F.2d at 607). In assessing the Settlement, the Court must weigh the strength of a plaintiff's case on the merits in light of the litigation risks and substantial expense and delay of continued litigation without any guarantee of success to class members against the immediate and substantial benefits to the class. *Phillips*, 2022 WL 832085, at *3, (citing *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987)) (observing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case). This is particularly compelling where a defendant vigorously denies the plaintiff's allegations, as Whirlpool does here. *Phillips*, 2022 WL 832085, at *3

Here, a review of the Settlement readily reveals the fairness, reasonableness, and adequacy of its terms. The Settlement Class will receive substantial extended service plan benefits. Prior to the Settlement, if a consumer experienced a Diverter Seal Leak beyond the one-year warranty accompanying the purchase of Dishwasher, Whirlpool did not cover the costs of parts or labor under the Dishwasher warranty. As a result of the Settlement, Whirlpool has agreed to cover Past Diverter Seal Leaks and Future Diverter Seal Leaks for an additional seven (7) years from the expiration of the original manufacturer's warranty, or within eight years of manufacture of the Dishwasher.  With the extended service plan benefits, Settlement Class Members will be entitled to reimbursement of out-of-pocket costs in an amount up to the average cost of repair of the Defect of $225.00, as described

in Section II above, which details the tiered relief offered to Settlement Class Members depending on the age of their Dishwasher. Further, consumers have the option to choose between this cash reimbursement or a cash rebate of up to $200.00 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of up to $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher, again depending upon the age of the Dishwasher at the time of the repair or replacement.

As detailed in the Expert Report of Frank Bernatowicz, the value of these benefits to to the Class, which is uncapped, is approximately $15.71 to $21.33 million. *Bernatowicz Declaration*, at ¶28. Accordingly, the proposed Settlement falls well within the range of reasonableness as it provides the exact relief to consumers that this action was filed to achieve – benefits specific to the alleged Defect, allowing consumers to claim up to $225.00 for the cost of repairing or replacing their Dishwasher as a result of the alleged Defect. This Settlement thus provides a substantial benefit to the class, particularly considering that continued litigation likely would take several years to resolve and involve expensive discovery. *Phillips*, 2021 WL 3030648, at *6, (citing *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987)) (observing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case). *See also Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 219 (W.D. Mo. 2017), *aff'd* 896 F.3d 900 (8th Cir. 2018) (finding "concrete benefits to potentially millions of individuals who would not be entitled to benefits absent this settlement" weighed in favor of approving settlement considering various litigation risks); *In re Uponor*, 716 F.3d at 1063 (observing the settlement terms

were generous and offered the plaintiffs the "only conceivable remedies they could expect").

**2. The Defendant's Financial Condition.**

Defendant is a solvent company, and there is no indication that it will be unable to pay or will incur undue hardship as a result of the Settlement.  As such, this factor supports granting final approval of the Settlement. *Phillips,* 2022 WL 832085, at *4.

**3. The Complexity and Expense of Further Litigation.**

There is no question that "class actions place an enormous burden of costs and expense upon the parties." *In re Uponor*, 716 F.3d at 1063 (citing *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)). Although Class Counsel are confident in the merits of Plaintiffs' claims, the certification of a consumer class action is challenging and strongly contested throughout the Country and specifically within the Eighth Circuit. Here, continued litigation involved serious risks. While Plaintiffs prevailed on many important issues in their motions to dismiss, with continued litigation, Whirlpool undoubtedly would challenge Plaintiffs' liability and damages experts, contest class certification and move for summary judgment on any potentially remaining claims in each of the four (4) actions. Indeed, Whirlpool disclosed data in discovery that showed (a) varying rates of repair over time and within subpopulations of the Class Dishwashers, and (b) a decreasing rate of repairs that coincided with Whirlpool's introduction of updates to the diverter system, which Whirlpool would have argued defeated commonality and predominance.

Thus, continued litigation would be complex, time consuming and expensive – with a substantial likelihood that, even if Plaintiffs ultimately prevailed on liability, the Class

would not recover a significantly greater amount than that presently provided for in the proposed Settlement.  Whirlpool has proven its success in defeating class certification and winning at trial in similar product performance cases, and would have fought similarly here. *E.g.*, *Schechner v. Whirlpool Corp.*, Case No. 2:6-cv-12409, 2019 WL 4891192 at *1 (E.D. Mich. Aug. 13, 2019); *Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640 at *1 (N.D. Ill. May 9, 2017).

When balanced against the risks of litigation, this Settlement is a significant achievement for the Class, which provides Settlement Class Members with substantial costs for parts and labor, up to the average cost of repair of $225.00, and also provides immediate benefits to the class. *See Phillips,* 2022 WL 832085, at *4 ("If the Settlement is approved, this case will be resolved before the completion of class certification, summary judgment, expert discovery, and trial preparation. Because the complexity and expense of continued litigation are significant, this factor supports granting final approval of the Settlement Agreement."); *See, e.g.*, *Keil v. Lopez*, 862 F. 3d 685, 697 (8th Cir. 2017) ("In sum, the settlement provides substantial and immediate benefits to the class. Thus, weighing the uncertainty of relief against the immediate benefit provided in the settlement . . . we conclude that this factor weighs in favor of approving the settlement.") (internal quotation marks and citation omitted); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.,* 364 F. Supp. 2d 1013 (D. Minn. 2005) (finding settlement removed the risks, delay, and costs associated with continued litigation while delivering assured benefits to the Class and weighed in favor of final approval). As such, this factor supports granting final approval of the Settlement.

**4.   The Amount of Opposition to The Settlement.**

Here, the Settlement involves approximately 6,700,000 Dishwashers.  As of March 31, 2022, thirty-nine Class Members timely requested exclusion from the Settlement, and three timely submitted objections, although one objection has since been withdrawn and only two remain. *See* Exhibit 1, at ¶16 ("Angeion Declaration"); Exhibit 2, at ¶4-5 ("Soffin Declaration"). "The number of class members who object to or opt out of the settlement is relevant to whether the settlement is reasonable." *Phillips,* 2022 WL 832085, at *4, (citing *Petrovic,* 200 F.3d at 1152. "That there are relatively few objections to a class-action settlement suggests that the settlement is fair and reasonable." *Phillips,* 2022 WL 832085, at *4, (citing *Kloster*, 350 F.3d at 749–50) (concluding that settlement was fair and reasonable when there were ten objections out of "the hundreds of thousands of eligible class members").

As described in the attached declaration from Plaintiffs' Counsel, the first objection was withdrawn via email to Plaintiffs' counsel on February 28, 2022. Exhibit 2, at ¶5 ("Soffin Declaration").

The second objection made by Karin L. Kusiak-Wachsmuth did not contain the requisite information to qualify as a proper objection. Specifically, the Settlement Agreement requires:

> Objections must also be served on Class Counsel and counsel for Whirlpool by the stated deadline. Any objections must include (i) the Class Member's full name and current address and telephone number; (ii) the model number and serial number of the Class Dishwasher the Class Member owns or owned; (iii) a description of all of the Class Member's objections, the specific reasons therefore, and any and all supporting papers, including, without

limitation, all briefs, written evidence, and declarations; and (iv) the Class Member's signature.

ECF No. 71, Ex.1, Settlement Agreement at §VII(D) (Requests For Exclusion & Objections).[6] The objection received by Ms. Kusiak-Wachsmuth is deficient because it did not contain any support for the statement that "[a]s of this date February 2022, the cost to repair *ranges* from $300.00 to $600.00 depending on the area of the country, cost of parts and cost of labor."   Ms. Lane's unsupported statement is inconsistent with Plaintiffs' counsel's research and investigation regarding the average cost of repair of $225.00, and confirmation of the average cost of repair obtained through discovery, and thus the objection did not include "all supporting papers, including, without limitation, all briefs, written evidence, and declarations." Further, Ms. Kusiak-Wachsmuth's objection did not include her telephone number. Accordingly, the second objection does not meet the qualifying criteria for a valid objection. On March 24, 2022, Ms. Soffin located a telephone number potentially belonging to Ms. Kusiak-Wachsmuth. Ms. Soffin left a message for Ms. Kusiak-Wachsmuth but did not receive a return call and has not been able to contact her to further discuss her objection.

The third objection from Karen Leal includes three bases, which are largely based on a simple misunderstanding of the Settlement and Release, including that (1) Ms. Leal believed she was unable to sign the claim form because it required her to affirm that she searched for and was unable to find supporting documents, even though she had her

---

[6] *See also,* https://whirlpooldishwashersettlement.com/frequently-asked-questions.php (EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS).

purchase and repair documents; (2) the settlement provides relief only for replacement/repair costs, but not the property damage to her kitchen, and that (3) the repair technician who serviced her dishwasher recommended replacement of her dishwasher, but that she chose to purchase another brand.  Each of these objections is addressed in turn, as follows.

First, the claim form is very clear and only requires class members to declare that they do not have documentary proof of purchase or repair of the dishwasher if no such documents exist.  There is no requirement to sign this declaration if such documentation exists. This component of the Settlement Agreement is intended to broaden the scope of relief by allowing Class Members without documentary proof of purchase or repair of their Dishwasher to participate in the settlement.  ECF No. 71, Ex.1, Settlement Agreement at § IV. Thus, Ms. Leal's objection on this point appears to be a simple misunderstanding.

Second, the release in the Settlement Agreement specifically excludes claims for property damage. Thus, any claim that she has for property damage is not part of this Settlement.

Third, if Ms. Lane's submits documentation sufficient to show that her dishwasher leaked as a result of the Defect, then she will be entitled to compensation in the amount of $135.00 given that she chose to replace her dishwasher, and the parties would work with the settlement administrator to facilitate converting her timely objection into a claim.

Given that there are only two current objections to the settlement, one of which does not meet the requirements of a valid objection per the Settlement Agreement, and the other which should be readily resolved, this factor supports granting final approval of the

Settlement Agreement. However, even if these objections meet the requirements of the Settlement Agreement, that there are more than 6,700,000 Class Dishwashers and only two-objections and thirty-nine opt-outs provides further proof that the Settlement should be approved. *See Khoday v. Symantec Corp.*, No 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *13 (Apr. 16, 2021) ("If adjudged on the basis of the number of objections or requests for exclusion from its coverage, the settlement has been well-received. As detailed above, the class's reaction to the settlement has been positive. Out of approximately 14 million class members, only 105 requests for exclusion have been received and only five objections have been raised… This minimal level of opposition strongly weighs in favor of approval of the settlement."); *Van Horn*, 840 F.2d at 604 (approving a settlement with 180 of 400 class members objecting); *Keil v. Lopez*, 862 F. 3d at 698 (" As the district court noted, "[w]hile there have been objections, they are small in number, which speaks well of class reaction to the Settlement." Specifically, out of a class of approximately 3.5 million households, with an estimated 87 percent receiving notice, class members submitted 105,173 claims, whereas only fourteen class members submitted timely objections. Moreover, none of the named plaintiffs objected to the settlement. Thus, the amount of opposition is minuscule when compared with other settlements that we have approved.") (citing *Marshall*, 787 F.2d at 513) ("We have previously approved class-action settlements even when almost half the class objected to it. We have approved a class-action settlement even when all named plaintiffs opposed it." (citations omitted)).

For these reasons, the Settlement is in all respects fair, reasonable, adequate and in the best interests of the Settlement Class, and warrants final approval.

III. **CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.**

On December 16, 2021, this Court granted Plaintiff's Motion for Preliminary Approval of Class Action Settlement (ECF No. 75) ("Preliminary Approval Order"). Specifically, the Court found that the Settlement Class satisfied each of the requirements of Federal Rule of Civil Procedure 23, as follows:

1.      It appears to the Court, for purposes of settlement only, that the proposed Settlement Class is sufficiently numerous that joinder would be logistically impossible. The proposed Settlement Class consists of approximately 6,700,000 Settlement Class Members. Thus, the numerosity requirement is satisfied.

2.      It appears to the Court, for purposes of settlement only, that there is a commonality of interests among the Settlement Class Members, including the following common questions of law and fact: (1) whether the Class Dishwashers suffer from a uniform design or manufacturing Defect that causes them to leak; (2) whether Whirlpool had a duty to disclose the alleged Defect to consumers; (3) whether Whirlpool's warranty limitations on Settlement Class Dishwashers were unconscionable or otherwise unenforceable; (4) whether the alleged Defect in the Class Dishwashers is material to a reasonable consumer; (5) whether, as a result of Whirlpool's concealment or failure to disclose material facts, Plaintiffs and Settlement Class Members acted to their detriment by purchasing Class Dishwashers manufactured by Whirlpool; (6) whether Whirlpool was aware of the Defect; (7) whether Whirlpool breached express warranties with respect to the Class Dishwashers; (8) whether Whirlpool has a duty to disclose the defective nature of the Class Dishwashers to Plaintiffs and Settlement Class Members; and (9) whether Plaintiffs and Settlement Class Members are entitled to equitable relief. For these reasons, the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) is satisfied for settlement purposes.

3.      It appears to the Court, for purposes of settlement only, that the Class Representatives' claims are typical of those of the Settlement Class Members. The Class Representatives' claims arise from the same alleged course of conduct as those of the Settlement Class Members. Thus, the typicality requirement is satisfied.

4.      For purposes of settlement only, the Court finds that the proposed Class Counsel are competent and capable of exercising their responsibilities and that they and the proposed Class Representatives have fairly and adequately represented the interests of the Settlement Class. Therefore, the Court appoints as Class Counsel for the Settlement Class: Harper Segui and Rachel Soffin of Milberg Coleman Bryson Phillips Grossman, LLP. The Court also appoints Plaintiffs Elisabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick as Class Representatives for the Settlement Class in this Action.

5.      For purposes of settlement only, a class action is a superior method of resolving the claims of the Settlement Class Members, which are of modest amounts.

ECF No. 75 at 17-18.

In the Preliminary Approval Order, the Court also stated: "[t]he record reflects that the parties engaged in zealous litigation of the issues, exchanged both formal and informal discovery, and vigorously negotiated the settlement over the course of several months. Thus, it appears to the Court that the Settlement was negotiated at arms' length, affording it the presumption that it is fair and reasonable." *Id.* at 15. In addition, the Court stated: "[b]ased on the Court's review of the record, the manner of negotiation, and the Settlement Agreement, the Court concludes the Settlement is fair, adequate, and reasonable when balanced against the probable outcome of further litigation, liability, and damages, and the potential appeals of rulings." *Id.* at 15. This Court also stated: "[i]t appears to the Court that the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class. See Fed. R. Civ. P. 23(e)(2)(a). Class Counsel each have more than a decade of experience in complex litigation and litigation involving defective products. The Class Representatives also have supervised the litigation by reviewing pleadings, regularly communicating with Class Counsel regarding the litigation, and providing substantive

28

documents as part of discovery." *Id.* at 16. Thus, the Court found that "the Settlement Agreement appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court." *Id.* at 14.

For these same reasons, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes.

### IV.   THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e).

Rule 23(e) requires that notice of a proposed settlement of a class action "shall be given to all members of the class in such manner as the district court directs." Fed. R. Civ. P. 23(e). As set forth in the Preliminary Approval Order, this Court has already determined that the notice program is fair and adequate and provides the best practicable notice under the circumstances. Consistent with the Court's Order and the proposed Notice Plan, the settlement administrator, Angeion Group (Angeion), has notified Settlement Class Members of the Settlement by (a) emailing the notice to all members of the Settlement Class for whom valid email addresses are known to Whirlpool, (b) mailing, by first class US mail, Postcard Notice to all Settlement Class Members for whom Whirlpool only has a physical mailing address, (c) mailing, by first-class US mail, the Long Form Notice to those Settlement Class Members requesting a copy thereof, and (d) commencing internet banner notice and social media notice.  In addition, Angeion created a Settlement Website that includes all necessary and pertinent information for Settlement Class Members, and also established and is maintaining a toll-free number for Settlement Class Members to call and obtain additional information about the Settlement. Further, Angeion, on behalf of the

Defendants, caused notice of the Settlement and related materials (collectively, "CAFA Notice") to be sent to the Attorney General of the United States, the Attorneys General of all U.S. states and territories, and the District of Columbia. The Notice contained all of the critical information required to apprise Class Members of their rights under the Settlement, and also directed Class Members to the Settlement Website and a toll-free number where they could obtain more detailed information about the settlement. *See generally* Exhibit 1, Angeion Declaration. Following this thorough notice program, it is clear that the settlement has the support of the Settlement class.

Further, consistent with the Settlement Agreement, Whirlpool is responsible for paying all costs associated with notice and administration, and these costs are entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members. As of March 30, 2022, Angeion estimates that the total costs for notice and administration will be $1,249,240. *See* Exhibit 1, Angeion Declaration, at ¶19.

### K.    Plaintiffs' Counsel's Applications for Attorneys' Fees and Costs and Service Awards

In accord with The Settlement Agreement and as further discussed in Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs and Service Awards, Plaintiffs respectfully request that this Honorable Court: (i) award Plaintiffs' Counsel attorneys' fees of $1,456,002.33, which is an amount equal to 6.5%-8.6% of the $16,954,568-$22,577,040 value of the Settlement (defined herein), and which represents a 1.75 lodestar multiplier; (ii) award Plaintiffs' Counsel reimbursement of litigation costs of $33,997.67; and (iii)

award service awards in the amount of $2,500.00 to each of the Settlement Class Representatives. ECF No. 80.

Class Counsel's fee petition explains why the requested fee and expense award is reasonable, and also includes "lodestar information sufficient for the Court to perform a lodestar cross-check should the Court choose to exercise its discretion to perform one." ECF No. 75 at 12. Class Counsel thus provided information sufficient for the Court to examine their attorney fee petition using the percentage of the benefits obtained for the Class approach, as well as their lodestar so that the Court can perform a lodestar cross-check.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Whirlpool has agreed to pay one and one-half million dollars ($1,500,000.00) for attorneys' fees and costs, and class representative service awards.  After deduction of litigation costs ($33,997.67) and service awards ($2,500.00 for each Class Representative for a total of $10,000.00) from this amount, Class Counsel are seeking approval of $1,456,002.33 in fees.

As described in the Fee Petition, and in Plaintiffs' Motion for Preliminary approval, the value of the Settlement is $15,705,328 to $21,327,800, as estimated by Plaintiffs' expert, Frank Bernatowicz, as well as $1,249,240 in notice and administration expenses, for a total value of the benefits available to the Class of $16,954,568-$22,577,040.

Thus, Class Counsel's fee request of $1,456,002.33 represents approximately 6.5%-8.6% of the total value of the Settlement, and also equates to a 1.75 lodestar multiplier, as described in the fee petition.  Such award will serve to compensate Class Counsel for their

time, risk and expense incurred in this litigation, including all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case.

Importantly, Whirlpool's payment of any fees and costs to Class Counsel and Service Awards to Settlement Class Representatives is entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members. Further, the enforceability of the Settlement is not contingent on the Court's approval of Plaintiffs' Counsel's application for an award of attorneys' fees and costs, or any service award granted by the Court.

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order, substantially in the form of the proposed Final Approval Order filed contemporaneously with this motion, (i) granting final approval of the proposed Settlement of this case as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) granting final approval of the methods and forms of notice provided to Class Members.

Dated: March 31, 2022        Respectfully submitted,

/s/ Rachel Soffin
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLP**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

rsoffin@milberg.com

Harper T. Segui
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLP**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, SC 29464
T: (919) 600-5000
hsegui@milberg.com

Michelle J. Looby
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-844
mlooby@gustafsongluek.com

*Attorneys for Plaintiffs and the Settlement Class*

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served the foregoing was served upon all counsel of record via this Court's CM/ECF system.

This 31st day of March, 2022.          Respectfully submitted,


/s/ Rachel Soffin
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rsoffin@milberg.com