# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **ELISABETH CLEVELAND, AMY LARCHUK, CHRISTOPHER REDMON, DHAVAL SHAH, and THOMAS MCCORMICK,** on behalf of themselves and all others similarly situated, | **CASE NO. 20-cv-1906-WMW-KMM** |
| Plaintiffs, | |
| v. | |
| **WHIRLPOOL CORPORATION,** | |
| Defendant. | |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES

This matter is before the Court on Plaintiffs' unopposed motion for final approval of class action settlement and Plaintiffs' unopposed motion for attorneys' fees, litigation costs and service awards. (Dkts. 78 and 83). On December 16, 2021, the Court granted Plaintiffs' unopposed motion for preliminary approval of the proposed settlement (Settlement Agreement) between Plaintiffs Elizabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick (collectively "Plaintiffs" or "Class Representatives") and Defendant Whirlpool Corporation ("Whirlpool"). (Dkt. No. 75).

On May 19, 2022, the Court held a Final Approval Hearing to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate.

1

The Court has considered all the submissions and arguments of the parties. For the reasons addressed below, pursuant to Federal Rule of Civil Procedure 23, and in accordance with the terms of the Settlement Agreement, the Court finds good cause to grant Plaintiffs' unopposed motions for final approval and attorneys' fees and enter final judgment in this case.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiffs filed four putative class-action lawsuits alleging, among other things, that the Class Dishwashers (defined in Section I(I) of the Settlement Agreement) are defective, in that the diverter shaft seal in the Class Dishwashers' sump assembly could allow a leak to develop. See *Cleveland v. Whirlpool Corp.*, No. 20-cv-1906, Dkt. 1 (D. Minn. Sept. 4, 2020) (Minnesota Action); *Larchuk v. Whirlpool Corp.*, No. 2:20-cv-04442-BMS, Dkt. 1 (E.D. Pa. Sept. 10, 2020) (Pennsylvania Action); *Redmon v. Whirlpool Corp.*, No. 1:20-cv-06626, Dkt. 1 (N.D. Ill. Nov. 6, 2020) (Illinois Action); *Shah v. Whirlpool Corp.*, No. 3:21-cv-02739-JD, Dkt. 1 (N.D. Cal. Apr. 16, 2021) (California Action). On August 20, 2021, Plaintiffs filed a Consolidated Amended Complaint ("CAC") in this litigation for the purpose of settlement, incorporating allegations from the Minnesota, Illinois, Pennsylvania and California actions. (Minnesota Action, Dkt No. 63).

Prior to the proposed settlement, Whirlpool filed motions to dismiss in the Minnesota, Illinois, Pennsylvania, and California Actions. On July 27, 2021, in the Minnesota Action, this Court granted without prejudice Whirlpool's motion to dismiss Plaintiff Cleveland's breach of contract and unjust enrichment claims, and denied Whirlpool's motion to dismiss Plaintiff Cleveland's claims for breach of express and

implied warranty, and violations of the Minnesota Consumer Fraud Act, the Minnesota Uniform Deceptive Trade Practices Act, and the Minnesota Unlawful Trade Practices Act. On April 28, 2021, in the Illinois Action, the district court granted without prejudice Plaintiff Redmon's claims alleging breach of express warranty beyond the scope of the written product warranty, breach of implied warranty and fraudulent concealment and dismissed with prejudice Plaintiff Redmon's claims for negligence and injunctive relief. The court denied Whirlpool's motion to dismiss Plaintiff Redmon's claims for breach of the product warranty, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, unjust enrichment, and breach of contract. In the Pennsylvania and the California Actions, Plaintiffs Larchuk, Shah and McCormick voluntarily dismissed their actions prior to an order on Whirlpool's motions to dismiss.

Plaintiffs demonstrate that the parties' Settlement Agreement is the product of zealous litigation and arm's-length negotiations, which included: (1) Plaintiffs' retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defect and damages at various stages of litigation, and who also assisted with discovery; (2) negotiating a protective order, order governing electronically stored information, and other case management orders involving coordination of litigation and schedules across all cases; (3) attending regular case management conferences in the Minnesota, Illinois, Pennsylvania and California Actions; (4) significant fact discovery, which aided the resolution of this action and included serving and responding to interrogatories, requests for production, and third party retailer discovery; (5) two full-day mediation sessions on April 27, 2021, and April 29, 2021; and (6) several subsequent

months of arm's-length negotiations between experienced class-action counsel for both Whirlpool and Plaintiffs, all led by a mediator with substantial experience in class action litigation.

On December 16, 2021, this Court preliminary approved the Settlement Agreement. In doing so, the Court preliminary certified the following Settlement Class for Settlement purposes only:

> All persons in the United States and its territories who either (a) purchased a new Class Dishwasher, or (b) acquired a new Class Dishwasher as part of the purchase or remodel of a home, or (c) received as a gift, from a donor meeting those requirements, a new Class Dishwasher not used by the donor or by anyone else after the donor purchased the Class Dishwasher and before the donor gave the Class Dishwasher to the Settlement Class Member.

> Excluded from the Settlement Class are (i) officers, directors, and employees of Whirlpool or its parents, subsidiaries, or affiliates, (ii) insurers of Settlement Class Members, (iii) subrogees or all entities claiming to be subrogated to the rights of a Class Dishwasher purchaser, a Class Dishwasher owner, or a Settlement Class Member, (iv) issuers or providers of extended warranties or service contracts for Class Dishwashers, (v) persons who timely and validly exercise their right to be removed from the Settlement class.

## II.    SETTLEMENT TERMS

### A. Benefits to the Settlement Class

As described in the Settlement Agreement[1], which the Court hereby approves and makes part of this Order, the benefits to the Settlement Class include the following compensation structure for Paid Qualifying Repairs or Replacements for Past or Future Diverter Seal Leaks:

---

[1] All capitalized terms used in this Order maintain the definitions of those terms in the Settlement Agreement. (Doc. 72-2.)

1.      for Paid Qualifying Repairs or Replacements in years (1) or two (2) after manufacture, 100% of the Average Cost of Repair ($225.00), <u>or</u> a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, <u>or</u> a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

2.      for Paid Qualifying Repairs or Replacements in year three (3) after manufacture, 90% of the Average Cost of Repair ($202.50), <u>or</u> a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, <u>or</u> a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

3.      for Paid Qualifying Repairs or Replacements in years four (4) or five (5) after manufacture, 80% of the Average Cost of Repair ($180.00), <u>or</u> a cash rebate of $200 for the purchase a new KitchenAid-brand dishwasher, <u>or</u> a cash rebate of $150 for the purchase of a new Whirlpool-brand, or Maytag-brand dishwasher;

4.      for Paid Qualifying Repairs or Replacements in year six (6) after manufacture, 60% of the Average Cost of Repair ($135), <u>or</u> a cash rebate of $175 for the purchase a new KitchenAid-brand dishwasher, <u>or</u> a cash rebate of $125 for the purchase of a new Whirlpool-brand, or Maytag-brand dishwasher;

5.      for Paid Qualifying Repairs or Replacements in year seven (7) after manufacture, 30% of the Average Cost of Repair (67.50), <u>or</u> a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand, or Maytag-brand dishwasher; or

6.      for Paid Qualifying Repairs or Replacements in year eight (8) after manufacture, a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand, or Maytag-brand dishwasher.

Settlement Class Members who have experienced a <u>Past Diverter Seal Leak</u> within eight years after manufacture, and who submit a valid claim to the Settlement Administrator within 180 days of the Notice Date, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule. Settlement Class Members who experience a <u>Future Diverter Seal Leak</u>, which is a leak that occurs after the Notice Date, but within eight years of manufacture of their Dishwasher, and who submit a valid claim to the Settlement Administrator within 90 days of the Future Diverter Seal Leak, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule.

### B. Value of the Settlement Benefits to the Class

Plaintiffs submitted the expert report of Frank Bernatowicz in support of their motion for final approval of class action settlement and unopposed motion for attorneys' fees, litigation costs and service awards. According to Mr. Bernatowicz's analysis, as detailed in his declaration, the value of the extended service plan benefits and total out-of-pocket reimbursement benefits to the Settlement Class is approximately $15,705,328 to $21,327,800. *See* ECF No. 71, at Ex. 2 and ECF No. 80-2, at Ex. B.

### C. Settlement Administrator and Administration Costs

The Settlement Administrator is Angeion Group ("Angeion"). Consistent with the Settlement Agreement, Whirlpool is responsible for paying all costs associated with notice and administration, and these costs are entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by

Settlement Class Members.  As of March 30, 2022, Angeion estimates that the total costs for notice and administration will be $1,249,240.

### D.  Class Member Release

In exchange for the benefits conferred by the Settlement, Plaintiffs and all Settlement Class Members who do not timely exclude themselves from the Settlement do forever release, acquit, and discharge Releasees from all manner of actions, causes of action, administrative claims, demands, debts, damages, costs, attorney fees, obligations, judgments, expenses, or liabilities for economic loss, in law or in equity, whether now known or unknown, contingent or absolute, including all claims that Plaintiffs or Settlement Class Members now have or, absent this Agreement, may in the future have had, against Releasees, by reason of any act, omission, harm, matter, cause, or event whatsoever that has occurred from the beginning of time up to and including the Effective Date of this Agreement, and that arise from or relate to any of the defects, malfunctions, or inadequacies of the Class Dishwashers that are alleged or could have been alleged in the Lawsuits arising out of or relating to the diverter motors, diverter shafts, diverter shaft seals, and sump assemblies featuring those parts that are alleged to have the potential to result in a leak, or to any act, omission, damage, matter, cause, or event whatsoever arising out of the initiation, defense, or settlement of the Lawsuits or the claims or defenses asserted in the Lawsuits, including without limitation all claims for out-of-pocket expense, diminution-in-value, benefit-of-the-bargain, cost-of-repair, cost-of-replacement, statutory, or premium-price damages or restitution (the "Released Claims"). This release, however,

will not extinguish, and the Released Claims do not include, claims for personal injury or for damage to property other than to the Class Dishwasher itself.

### E. Opt-Outs and Objections

The Class Notice advised Settlement Class Members of their right to opt out of or object to the Settlement, and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Award to the Class Representative, and of the associated deadlines to opt out or object. The deadlines for objecting or opting out of the Settlement have passed.  Three objections were filed, but one was later withdrawn, with only two objections to the Settlement remaining.  Thirty-nine class members have opted out of the Settlement.

### F. Attorneys' Fees and Costs, and Service Awards

Consistent with the Settlement Agreement, Plaintiffs move for attorneys' fees and costs incurred by Class Counsel, and Service Awards for each Settlement Class Representative. The Settlement Agreement provides that Class Counsel may seek $1,500,000 for attorneys' fees, costs and Class Representative service awards. In their motion for attorneys' fees, costs, and service awards, Plaintiffs requested that this Court: (i) award Plaintiffs' Counsel attorneys' fees of $1,456,002.33, which is an amount equal to 6.5%-8.6% of the $16,954,568-$22,577,040 value of the Settlement (discussed below), and which represents a 1.75 lodestar multiplier; (ii) award Plaintiffs' Counsel reimbursement of litigation costs of $33,997.67; and (iii) award service awards in the amount of $2,500.00 to each of the Settlement Class Representatives, all of which amounts to $1,500,000.

Whirlpool's payment of fees and costs to Class Counsel, as well as Service Awards, is entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members

## II.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL.

### A.  THE LAW FAVORS AND ENCOURAGES SETTLEMENTS.

"A class action cannot be dismissed or settled without the approval of the district court." *Phillips et al. v. Caliber Home Loans, Inc.*, No. 19-cv-2711 (WMW/LIB), 2022 WL 832085, at *3 (March 21, 2022), citing  Fed. R. Civ. P. 23(e). "Under Rule 23(e) the district court acts as a fiduciary who must serve as guardian of the rights of absent class members." *Phillips,* 2022 WL 832085, at *3, quoting *Kloster v. McColl*, 350 F.3d 747, 751 (8th Cir. 2003) (internal quotation marks omitted).  "As such, a district court may approve a class action settlement only if it determines that the settlement is "fair, reasonable, and adequate."" *Phillips,* 2022 WL 832085, at *3, citing Fed. R. Civ. P. 23(e)(2). *See also Marshall v. National Football League*, 787 F.3d 502, 508 (8th Cir. 2015).

The Eighth Circuit has set forth the following four factors to assist in assessing whether a class settlement is fair, adequate, and reasonable.

1.  The merits of the plaintiff's case weighed against the terms of the settlement;

2.  The defendant's financial condition;

3.  The complexity and expense of further litigation; and

4.  The amount of opposition to the settlement.

*Marshall v. National Football League*, 787 F.3d 502, 508 (8th Cir. 2015), quoting *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013).

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *George v. Uponor Corp.*, No. 12-cv-249 (ADM/JJK), 2015 WL 5255280, at *6 (D. Minn., Sept. 9, 2015) (citation omitted). In the Eighth Circuit, class action "[s]ettlement agreements are presumptively valid, particularly where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objectors." *Uponor Corp.*, 2015 WL 5255280, at *6. *See also In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d at 1063, citing *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990) (internal citation omitted). The court's role in reviewing a negotiated class settlement is to "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall*, 787 F.3d at 509, (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d at 934).

As demonstrated below, the Settlement satisfies each of the criteria for final approval, thereby warranting this Court's approval.

### 1. The Merits of The Plaintiff's Case, Weighed Against the Terms of The Settlement.

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the

terms of the settlement." *Marshall*, 787 F.3d at 508, (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). In assessing the Settlement, the Court must weigh the strength of a plaintiff's case on the merits in light of the litigation risks and substantial expense and delay of continued litigation without any guarantee of success to class members against the immediate and substantial benefits to the class. *Phillips*, 2022 WL 832085, at *3, citing *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (observing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case). This is particularly compelling where a defendant vigorously denies the plaintiff's allegations, as Whirlpool does here. *Phillips*, 2022 WL 832085, at *3

As this Court previously observed in its Order granting preliminary approval of the Settlement, the Settlement Agreement appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court. The Settlement is the product of fact intensive investigation regarding the Defect, hard-fought litigation and arm's-length negotiations, along with substantive motion practice and discovery, Plaintiffs' retention of experts who performed critical analyses regarding the alleged defect and damages, two-full day mediation sessions, and subsequent months of arm's-length negotiations between experienced class-action counsel for both Whirlpool and Plaintiffs. Thus, Plaintiffs had ample information before entering into settlement negotiations, and they were able to effectively assess the strengths and weaknesses of their case and balance the benefits of settlement against the risks of further litigation.

Here, a review of the Settlement readily reveals the fairness, reasonableness, and adequacy of its terms. The Settlement Class will receive substantial extended service plan benefits, which allows all Settlement Class Members to make a claim for the alleged Defect for seven-years beyond the one-year warranty accompanying the purchase of a Dishwasher. Prior to the subject Settlement, if a consumer experienced a Diverter Seal Leak beyond the one-year warranty, Whirlpool did not cover the costs of parts or labor under the Dishwasher warranty. As a result of the Settlement, Whirlpool has agreed to cover Past Diverter Seal Leaks and Future Diverter Seal Leaks for an additional seven (7) years from the expiration of the original manufacturer's warranty, or within eight years of manufacture of the Dishwasher.  With the extended service plan benefits, Settlement Class Members will be entitled to reimbursement of out-of-pocket costs in an amount up to the average cost of repair of the Defect of $225.00, as further described in the Settlement Agreement, which details the tiered relief offered to Settlement Class Members depending on the age of their Dishwasher. Further, consumers have the option to choose between this cash reimbursement or a cash rebate of up to $200.00 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of up to $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher, again depending upon the age of the Dishwasher at the time of the repair or replacement.

As detailed in the expert report of Frank Bernatowicz, which Plaintiffs submitted in support of their motion for final approval of class action settlement and unopposed motion for attorneys' fees, litigation costs and service awards, the value of the proposed settlement,

which is uncapped, is approximately $15,705,328 to $21,327,800. *See* ECF No. 71, at Ex. 2 and ECF No. 80-2, at Ex. B.

This Settlement is a substantial benefit to the class, particularly considering that continued litigation likely would take several years to resolve and involve expensive discovery. *Phillips*, 2021 WL 3030648, at *6, citing *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987). *See also Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 219 (W.D. Mo. 2017), *aff'd* 896 F.3d 900 (8th Cir. 2018) (finding "concrete benefits to potentially millions of individuals who would not be entitled to benefits absent this settlement" weighed in favor of approving settlement considering various litigation risks); *In re Uponor*, 716 F.3d at 1063 (observing the settlement terms were generous and offered the plaintiffs the "only conceivable remedies they could expect"). Accordingly, this factor supports granting final approval of the Settlement Agreement.

## 2.  The Defendant's Financial Condition.

Defendant is a solvent company, and there is no indication that it will be unable to pay or will incur undue hardship as a result of the Settlement.  As such, this factor supports granting final approval of the settlement. *Phillips,* 2022 WL 832085, at *4.

## 3.  The Complexity and Expense of Further Litigation.

The Court also must consider the complexity and expense of continued litigation. There is no question that "class actions place an enormous burden of costs and expense upon the parties." *In re Uponor*, 716 F.3d at 1063 (citing *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)). As described in Plaintiffs' motion, although Plaintiffs are confident

13

in the merits of Plaintiffs' claims, the certification of a consumer class action is challenging and strongly contested throughout the Country and specifically within the Eighth Circuit. Here, continued litigation involved serious risks. While Plaintiffs prevailed on many important issues in their motions to dismiss, with continued litigation, Whirlpool undoubtedly would challenge Plaintiffs' liability and damages experts, contest class certification and move for summary judgment on any potentially remaining claims in each of the four (4) actions.  Indeed, Whirlpool disclosed data in discovery that showed (a) varying rates of repair over time and within subpopulations of the Class Dishwashers, and (b) a decreasing rate of repairs that coincided with Whirlpool's introduction of updates to the diverter system, which Whirlpool would have argued defeated commonality and predominance. Thus, continued litigation would be complex, time consuming and expensive – with a substantial likelihood that, even if Plaintiffs ultimately prevailed on liability, the Class would not recover a significantly greater amount than that presently provided for in the proposed Settlement.  Whirlpool has proven its success in defeating class certification and winning at trial in similar product performance cases, and would have fought similarly here. *E.g.*, *Schechner v. Whirlpool Corp.*, Case No. 2:6-cv-12409, 2019 WL 4891192 at *1 (E.D. Mich. Aug. 13, 2019); *Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640 at *1 (N.D. Ill. May 9, 2017).

When balanced against the risks of litigation, this Settlement is a significant achievement for the Class, which provides Settlement Class Members with substantial costs for parts and labor, up to the average cost of repair of $225.00, and also provides immediate benefits to the class. *See Phillips,* 2022 WL 832085, at *4 ("If the Settlement is

approved, this case will be resolved before the completion of class certification, summary judgment, expert discovery, and trial preparation. Because the complexity and expense of continued litigation are significant, this factor supports granting final approval of the Settlement Agreement."). *See, e.g.*, *Keil v. Lopez*, 862 F. 3d 685, 697 (8th Cir. 2017) ("In sum, the settlement provides substantial and immediate benefits to the class. Thus, weighing the uncertainty of relief against the immediate benefit provided in the settlement . . . we conclude that this factor weighs in favor of approving the settlement.") (internal quotation marks and citation omitted); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.,* 364 F. Supp. 2d 1013 (D. Minn. 2005) (finding settlement removed the risks, delay, and costs associated with continued litigation while delivering assured benefits to the Class and weighed in favor of final approval). Accordingly, this factor supports granting final approval of the Settlement Agreement.

### 4. The Amount of Opposition to The Settlement.

"The number of class members who object to or opt out of the settlement is relevant to whether the settlement is reasonable." *Phillips,* 2022 WL 832085, at *4, citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999). Here, the Settlement involves approximately 6,700,000 Dishwashers.  As of March 28, 2022, there have only been three objections, one of which was withdrawn, and two of which may not meet the criteria for a valid objection. However, even if such objections are valid, that there are relatively few objections to a class-action settlement suggests that the settlement is fair and reasonable. *Phillips,* 2022 WL 832085, at *4, citing *Kloster*, 350 F.3d at 749–50 (concluding that settlement was fair and reasonable when there were ten objections out of "the hundreds of

15

thousands of eligible class members"); *Marshall,* 787 F.3d at 513 (holding this factor favored approval of settlement where "only one-tenth of one percent of the class objected, and less than ten percent of the class ha[d] requested exclusion from the settlement." (citation omitted)).

The Court has carefully considered the two objections to the Settlement, as well as the thirty-nine class members that have requested exclusion from the Settlement.  As to the substance of the objections, one appears to criticize the amount available to class members for costs associated with repair or replacement of their Dishwasher, but does not include any support for the assertion that the amount is insufficient.  As noted in Plaintiffs' motion for final approval, Plaintiffs' counsel's research and investigation, including discovery conducted in this case, indicated the average cost of repair relating to the defect is $225.00. Thus, the objection did not include sufficient information to support the objection. The second objection appears to rely on a simple misunderstanding of the claim form, which is easily remedied, as well as a concern that the settlement did not provide relief for property damage, and that the objector may not be entitled to compensation because she replaced her dishwasher with a different brand from Whirlpool. However, the release in the Settlement Agreement specifically excludes claims for property damage. Thus, any claim that the objector has for property damage is not part of this Settlement.  Further, as Plaintiffs note in their motion for final approval, if this individual submits documentation sufficient to show that her dishwasher leaked as a result of the Defect, then she will be entitled to compensation in the amount of $135.00 given that she chose to replace her dishwasher, and the parties will work with the settlement administrator to facilitate converting her

timely objection into a claim.  Thus, the two objections do not impact approval of the Settlement.

As noted in the Order granting preliminary approval, the risks of proceeding to trial are substantial.  That the settlement agreement includes only two objectors does not render the proposed settlement unfair or inadequate.

For these reasons, the Court concludes that the Settlement is in all respects fair, reasonable, adequate and in the best interests of the Settlement Class. Accordingly, the court concludes that the Settlement Agreement satisfies all requirements of Federal Rule of Civil Procedure 23(c) and (e).

## III.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.

The Court finds for purposes of settlement only that the Settlement Class meets all of the requirements of Federal Rule of Civil Procedure 23 (a) and (b).  The record reflects that the Settlement Class is sufficiently numerous that joinder would be logistically impossible. The proposed Settlement Class consists of approximately 6,700,000 Settlement Class Members. Thus, the numerosity requirement is satisfied.  There is a commonality of interests among the Settlement Class Members, including the following common questions of law and fact: (1) whether the Class Dishwashers suffer from a uniform design or manufacturing Defect that causes them to leak; (2) whether Whirlpool had a duty to disclose the alleged Defect to consumers; (3) whether Whirlpool's warranty limitations on Settlement Class Dishwashers were unconscionable or otherwise unenforceable; (4) whether the alleged Defect in the Class Dishwashers is material to a reasonable consumer;

(5) whether, as a result of Whirlpool's concealment or failure to disclose material facts, Plaintiffs and Settlement Class Members acted to their detriment by purchasing Class Dishwashers manufactured by Whirlpool; (6) whether Whirlpool was aware of the Defect; (7) whether Whirlpool breached express warranties with respect to the Class Dishwashers; (8) whether Whirlpool has a duty to disclose the defective nature of the Class Dishwashers to Plaintiffs and Settlement Class Members; and (9) whether Plaintiffs and Settlement Class Members are entitled to equitable relief. For these reasons, the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) is also satisfied for settlement purposes. In addition, the Class Representatives' claims are typical of those of the Settlement Class Members. The Class Representatives' claims arise from the same alleged course of conduct as those of the Settlement Class Members. The Court also finds that the proposed Class Counsel are competent and capable of exercising their responsibilities and that they and the proposed Class Representatives have fairly and adequately represented the interests of the Settlement Class.  Further, a class action is a superior method of resolving the claims of the Settlement Class Members, which are of modest amounts.

Accordingly, the Court finally certifies the Settlement Class for settlement purposes and finds that the certification requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied.

## IV.   THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e).

Rule 23(e) requires that notice of a proposed compromise of a class action "shall be given to all members of the class in such manner as the district court directs." Fed. R. Civ.

P. 23(e). Due process under Rule 23 requires that notice to class members "must generally describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974). "The mechanics of the notice process are left to the discretion of the district court, subject only to the broad "reasonableness" standards imposed by due process." *Phillips*, 2022 WL 832085, at *5.

As set forth in the Preliminary Approval Order, this Court has already determined that the notice program is fair and adequate and provides the best practicable notice under the circumstances. The proposed Notice Plan contained all of the critical information required to apprise Class Members of their rights under the Settlement. Consistent with the Court's Order, the settlement administrator, Angeion Group (Angeion), has notified Settlement Class Members of the Settlement by (a) emailing the notice to all members of the Settlement Class for whom valid email addresses are known to Whirlpool, (b) mailing, by first class US mail, Postcard Notice to all Settlement Class Members for whom Whirlpool only has a physical mailing address, (c) mailing, by first-class US mail, the Long Form Notice to those Settlement Class Members requesting a copy thereof, and (d) commencing internet banner notice and social media notice. In addition, Angeion created a Settlement Website that includes all necessary and pertinent information for Settlement Class Members, and also established and is maintaining a toll-free number for Settlement Class Members to call and obtain additional information about the Settlement. Further, Angeion, on behalf of the Defendants, caused notice of the Settlement and related

materials to be sent to the Attorney General of the United States, the Attorneys General of all U.S. states and territories, and the District of Columbia.

The Court concludes that the Notice Plan complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and the Class Action Fairness Act, 28 U.S.C. § 1715.

## V.     Motion for Attorneys' Fees and Costs and Service Awards

In accord with the Settlement Agreement and as further discussed in Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs and Service Awards, Whirlpool has agreed to pay one and one-half million dollars ($1,500,000) for attorneys' fees and costs, and class representative service awards. Plaintiffs thus seek: (i) attorneys' fees to Class Counsel of $1,456,002.33, which is an amount equal to 6.5%-8.6% of the $16,954,568-$22,577,040 value of the Settlement, and which represents a 1.75 lodestar multiplier; (ii) reimbursement to Class Counsel of litigation costs of $33,997.67; and (iii) service awards to Class Representatives in the amount of $2,500.00 to each of the Settlement Class Representatives, all of which amounts to $1,500,000.

Rule 23(h) of the Federal Rules of Civil Procedure provides that in a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Courts utilize two main approaches to analyzing a request for attorney fees." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee

amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Johnston*, 83 F.3d at 244-45. "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." Id. "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig*., 847 F.3d 619, 622 (8th Cir. 2017) (internal quotations and citations omitted).

In the Order granting preliminary approval of the settlement, this Court found it appeared that the terms of the proposed award of attorneys' fees and expenses and service awards were fair and reasonable. However, before final approval, this Court ordered Class Counsel to file a separate motion seeking approval of attorneys' fees and expenses and service awards, in an amount not to exceed $1,500,000.00, and to set forth the specific legal and factual bases for their request for attorneys' fees and expenses. This Court also ordered Class Counsel to provide lodestar information sufficient for the Court to perform a lodestar cross-check should the Court choose to exercise its discretion to perform one.

Importantly, Whirlpool's payment of any fees and costs to Class Counsel and Service Awards to Settlement Class Representatives is entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members. Further, the enforceability of the Settlement is not contingent on the Court's approval of Plaintiffs' Counsel's application for an award of attorneys' fees and costs, or any service award granted by the Court.

Below, the Court analyzes Class Counsels' fee request utilizing the relevant factors considered by courts in the Eighth circuit when evaluating whether a request is reasonable, and also using both the benefits available to the class approach as well as a lodestar crosscheck.

**A. Relevant Factors Confirm the Reasonableness of the Fee Request.**

The Eighth Circuit utilizes the 12 factors expressed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719-20 (5th Cir. 1974)[2] when evaluating whether a fee request is reasonable. See e.g. *In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 992 (citing *Johnson* factors in analyzing reasonableness of attorney fee in class action settlement). Each of these factors is satisfied here.

1.      **Time, Labor and Risk**

Class Counsel brought this case on a fully contingent basis, investing time, effort and money with no guarantee of payment.  As detailed in Class Counsel's declarations, the Settlement is the product of fact intensive investigation regarding the Defect, the retention of knowledgeable and qualified experts, substantive motion practice, discovery, and hard-fought litigation and arm's-length negotiations. Plaintiffs' Counsel collectively devoted more than 1,023 attorney hours to the prosecution of this case. Accordingly, the amount of

---

[2] These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, 488 F.2d 714, 719–20 (5th Cir.1974).

time, labor and risk involved in this case weighs in favor of finding Class Counsel's requested fee award reasonable.

### 2.  Novelty, Difficulty, and Skill

This case involved difficult and novel issues. Consumer class actions such as this one raise complex legal issues that are highly contested across the Country and specifically in the Eighth Circuit. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001); *accord Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) ("It goes without saying that class actions are very complex and represent a significant drain on the court in terms of time and management."). The risks and obstacles in this case are just as great as those in other product defect class actions and this case would likely have taken years to successfully prosecute, with the risk that there would be no recovery at all. The record also reflects that Plaintiffs' counsel have substantial class action experience, including years of experience in complex class-action litigation and litigation involving defective products. Thus, the novelty and difficulty of this case, along with the skill and experience of Plaintiffs' counsel, weigh in favor of finding Class Counsel's requested fee award reasonable.

### 3.  Customary Fee for Similar Work

As described in more detail below, the requested fee in this action is consistent with (and lower than) numerous other decisions from this Circuit that use the percentage-of-the-fund approach, and a lodestar crosscheck, to evaluate the appropriateness of attorneys' fees in consumer protection cases. See e.g. *Keil*, 862 F.3d at 702 (in class action involving defective pet food, finding 25% of common fund, and a 2.7 lodestar multiplier with a

lodestar crosscheck, appropriate); *Caligiuri*, 855 F.3d at 865-866 (in consumer protection class action regarding deceptive trade practices involving computer software, finding 33% of common fund, and lodestar multiplier of less than two with a lodestar crosscheck, appropriate). Thus, the requested fee award, which represents 6.5%-8.6% of the total value of the Settlement, and also equates to a 1.75 lodestar multiplier, weighs in favor of finding Class Counsel's requested fee award reasonable.

4. **Results Obtained**

The result achieved here is comprehensive and commensurate with the value and risk of the released claims because the Settlement provides precisely what the actions were filed to obtain— benefits specific to the alleged Defect, allowing consumers to claim up to $225.00 for the cost of repairing or replacing their Dishwasher as a result of the alleged Defect. Moreover, the released claims are narrowly tailored and do not alter or affect any other rights or obligations of Settlement Class Members or Whirlpool with respect to their relationship with one another. As such, the result obtained supports the requested award of attorneys' fees.

Accordingly, this Court's evaluation of the *Johnson* factors supports the reasonableness of the fee request. The Court next analyzes the reasonableness of the fee using both the benefits available to the class approach as well as a lodestar crosscheck.

**B. The Benefits Available to the Class Approach Supports the Requested Fee Award**

It has long been recognized that a person who maintains a suit that results in the creation of a benefit in which others have a common interest may obtain fees from that

common benefit. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Id. Thus, a reasonable percentage of the Settlement Fund is an appropriate basis on which to award Plaintiffs' Counsel a fee in this case. Courts in this Circuit routinely have awarded attorneys' fees ranging from 25 percent to 36 percent of a common fund. *See Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (noting that courts within the Eighth Circuit frequently award attorneys' fees between 25% and 36% of a common fund)(citing In re Xcel Energy, Inc., 364 F.Supp.2d at 998 ("[C]ourts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions.")); Caligiuri, 855 F.3d 860 (affirming fee award of one-third of the gross settlement fund).

Several courts analyzing the *Johnson* factors, discussed above, have found that common-fund settlements need not specify a maximum value, and that the value of the benefits to the class may be treated as a common fund, particularly where a defendant agrees to pay all valid claims with no cap on the potential aggregate recovery. See e.g. *David v. Am. Suzuki Motor Corp*., No. 08-CV-22278, 2010 WL 1628362, at *n 14 and 15 (S.D. Fla. Apr. 15, 2010) (in class action involving motorcycle defect, evaluating Johnson factors, and treating uncapped, claims-made settlement as constructive common fund, and finding settlement with ascertainable benefits involving value of credit toward purchase of

new motorcycle or parts, and extended warranty, may be treated as common fund to which a percentage fee may be awarded); *Hamm et al. v. Sharp Electronics Corp.*, No. 5:19-cv-00488-JSM-PRL, Doc. No. 61 (M.D. Fla. Jan 7, 2021) (in class action involving defective microwave drawers, evaluating *Johnson* factors, and treating uncapped, claims-made settlement as constructive common fund with ascertainable benefits involving value of extended warranty, replacement microwaves and reimbursement of labor and service costs, and finding "[c]ommon-fund settlements need not specify a maximum value, artificially limiting the class recovery. Common funds may be unlimited, where a defendant agrees to pay all valid claims with no cap on the potential recovery.")

Here, the total cash value of the settlement, which is uncapped and ensures that Settlement Class Members will receive the full value of up to $225.00 for the cost of repairing or replacing their Dishwasher as a result of the alleged Defect, is $15,705,328 to $21,327,800 million. In addition, the Court may include "fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount." *Huyer*, 849 F.3d at 398, citing In re: *Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, slip op. at 6. Angeion estimates that the total costs for notice and administration will be $1,249,240. Thus, the total value of the benefits available to the Class is $16,905,729-$22,528,201.

Class Counsel's attorney fee request of $1,456,002.33 is approximately 6.5%-8.6% of the benefits available to the Class, which is well below the 25% to 36% range of a common fund found reasonable by the Eighth Circuit.

**C. A Lodestar Cross-Check Further Supports the Reasonableness of the Requested Fee Award.**

Plaintiffs' Motion for Award of Attorneys' Fees, Litigation Costs and Service Awards ("Motion for Fees and Costs") explains why the requested fee and expense award is reasonable, and also includes lodestar information sufficient for the Court to perform a lodestar cross-check should the Court choose to exercise its discretion to perform one. "The lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Excel Energy, Inc.*, 364 F. Supp. 2d at 999, citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303, 306 (3d Cir.2005). Class Counsel's lodestar is determined by multiplying the number of hours reasonably expended on the litigation by the timekeeper's hourly rate. *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716460, at *4 (D. Minn. Feb. 27, 2013) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 447-49 (1983)).

"The resulting multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases." *In re Excel Energy, Inc.,* 364 F. Supp. 2d at 999 (approving multiplier of 4.6). See also *Keil v. Lopez*, 862 F.3d at 702 (finding multiplier of 2.7 was in line with comparable cases); *Huyer*, 849 F.3d at 400 (finding multiplier of 1.82 was "well within the range of multipliers awarded in this and other circuits.").

As detailed in Plaintiffs' Motion for Fees and Costs, including the supporting declaration from Class Counsel, the total lodestar is $829,874.75 and is based on hourly rates approved by courts across the Country. Class Counsel billed their time at their current

billing rates charged to their clients, and all of the billable time was necessary to secure the results obtained. See e.g. *Fath v. American Honda Motor Co*., No. 0:18-cv-01549-NEB-LIB, Doc. No. 48, at 9 (D. Minn. Sept. 11, 2020) (in class action involving defective automobile, approving "[h]ourly rates for the attorneys and paralegals involved ranged from $300 to $950 and $150 to $203, respectively.") (*Fath* Final Approval Order) (Dkt. No. 80-2, Ex. E). *See also In Re: Allura Fiber Cement Siding Litigation*, No. 1:19-mn-02886- DCN, 2021 WL 2043531, at * 6 (May 21, 2021 D.S.C.) (approving fees based on 33% of a common fund with a lodestar crosscheck based on adjusted Laffey Matrix rates of up to $894/hour). Generally, these rates are in line with national surveys including National Association of Legal Fee Analysis ("NALFA") 2020 Litigation Hourly Rate Range Growth Matrix[3] and the Laffey Matrix.[4]

Class Counsel's total lodestar is $829,874.75, which yields a 1.75 multiplier for the requested $1,456,002.33 fee. This multiplier is well in line with, and below, multipliers approved in the 8th Circuit and in similar cases. Thus, a lodestar cross-check confirms the reasonableness of Class Counsel's fee request.

**D. Litigation Costs**

Plaintiffs seek an award of litigation costs of $33,997.67. The record reflects that these expenses include filing fees, travel costs, mediation, photocopying, mail and research costs, and other incidental expenses appropriately related to the litigation of this matter. Thus, Plaintiffs' request for litigation costs of $33,996.67 is granted.

---

[3] https://www.thenalfa.org/blog/nalfa-releases-3-models-of-growth-for-litigation-hourly-rates/ (demonstrating that average rates for lawyers who have been practicing for 25+ years are between $801.00-$1200/hour).
[4] http://www.laffeymatrix.com/see.html

### E.  Service Awards

"Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri,* 855 F.3d at 867. And "courts in this circuit regularly grant service awards of $10,000 or greater." *Id.* Here, Plaintiffs have devoted time in the oversight of, and participation in, the litigation on behalf of the Class. Plaintiffs gathered documents and communicated information to Class Counsel, reviewed pleadings, and maintained regular contact with Class Counsel regarding the status of the action. The Settlement Class has benefited from the time and effort each Class Representative dedicated to this action.  Further, no Settlement Class Member has objected to the requested Service Awards, which are well within (and below) the range typically awarded.   In addition, the requested service award will not reduce the value to the Class. Accordingly, Plaintiffs' request for four service awards in the amount of $2,500 each (for a total of $10,000) is granted.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.     Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement is **GRANTED.**

   a.   The Settlement Class is finally certified, for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

   b.   The Settlement Agreement is finally approved as being fair, reasonable and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

    c.   Plaintiffs Elizabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick are confirmed as Class Representatives.

    d.   Harper Segui and Rachel Soffin of Milberg Coleman Bryson Phillips and Grossman PLLC are confirmed as Class Counsel.

    e.   The Court confirms that the Notice Plan complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

    f.   All Settlement Class Members who timely requested exclusion are excluded from the Settlement. The Settlement Class Members who did not timely request exclusion are hereby bound by the terms of the Settlement Agreement.

2.    Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards is **GRANTED.**

    a.   The Court awards Plaintiffs' Counsel attorneys' fees of $1,456,002.33 and $33,997.67 in litigation expenses to Class Counsel.

    b.   The Court approves Service Award service awards of $2,500.00 each to Class Representatives Elizabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick.

3.    Without affecting the finality of this Order and the judgment, the Court retains jurisdiction over this matter for the purpose of resolving disputes related to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Agreement

LET JUDGMENT BE ENTERED ACCORDINGLY.

_____
Wilhelmina M. Wright
United States District Judge