UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Elisabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick, *on behalf of themselves and all others similarly situated*, | Case No. 20-cv-1906 (WMW/JFD) |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES** |
| v. | |
| Whirlpool Corporation, | |
| Defendant. | |

This matter is before the Court on Plaintiffs' unopposed motions for final approval of class action settlement and for attorneys' fees, litigation costs and service awards. (Dkts. 78, 83.)  On December 16, 2021, the Court granted Plaintiffs' unopposed motion for preliminary approval of the proposed settlement (Settlement Agreement) between Plaintiffs Elisabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick (collectively, Plaintiffs or Class Representatives) and Defendant Whirlpool Corporation (Whirlpool).[1]

On June 8, 2022, the Court held a Final Approval Hearing to determine whether the Settlement Agreement should be finally approved as fair, reasonable and adequate. The Court has reviewed and considered all the submissions and arguments of the parties.

---

[1]    Unless otherwise stated, all defined terms herein have the meaning given to such terms in the Settlement Agreement.

For the reasons addressed below, pursuant to Federal Rule of Civil Procedure 23, and in accordance with the terms of the Settlement Agreement, the Court finds good cause to grant Plaintiffs' unopposed motions for final approval and attorneys' fees and enter final judgment in this case.

## BACKGROUND

### I.        Factual and Procedural Background

Plaintiffs filed four putative class-action lawsuits alleging, among other things, that the Class Dishwashers (defined in Section I(I) of the Settlement Agreement) are defective, in that the diverter shaft seal in the Class Dishwashers' sump assembly could allow a leak to develop.  *See Cleveland v. Whirlpool Corp.*, No. 20-cv-1906, Dkt. 1 (D. Minn. Sept. 4, 2020) (Minnesota Action); *Larchuk v. Whirlpool Corp.*, No. 2:20-cv-04442-BMS, Dkt. 1 (E.D. Pa. Sept. 10, 2020) (Pennsylvania Action); *Redmon v. Whirlpool Corp.*, No. 1:20-cv-06626, Dkt. 1 (N.D. Ill. Nov. 6, 2020) (Illinois Action); *Shah v. Whirlpool Corp.*, No. 3:21-cv-02739-JD, Dkt. 1 (N.D. Cal. Apr. 16, 2021) (California Action).

On August 20, 2021, Plaintiffs filed a Consolidated Amended Complaint (CAC) in this litigation for the purpose of settlement.  The CAC alleges the same defect that was alleged in the complaints filed in the Northern District of Illinois, Eastern District of Pennsylvania, and Northern District of California, and each complaint included multiple claims made on behalf of consumers in the states in which the complaints were filed.

Prior to the proposed settlement, Whirlpool filed motions to dismiss in the Minnesota Action, the Illinois Action and the Pennsylvania Action. On July 27, 2021, in the Minnesota Action, this Court granted in part and denied in part Whirlpool's motion to dismiss. In particular, the Court granted without prejudice Whirlpool's motion to dismiss Cleveland's claims alleging breach of contract and unjust enrichment and denied Whirlpool's motion to dismiss Cleveland's claims alleging breach of express and implied warranty and violations of the Minnesota Consumer Fraud Act (MCFA), the Minnesota Uniform Deceptive Trade Practices Act (MDTPA), and the Minnesota Unlawful Trade Practices Act (MUTPA).

On April 28, 2021, in the Illinois Action, the district court granted in part and denied in part Whirlpool's motion to dismiss, dismissing without prejudice Redmon's claims alleging breach of express warranty beyond the scope of the written product warranty, breach of implied warranty and fraudulent concealment and dismissing with prejudice Redmon's claims for negligence and injunctive relief. The court denied Whirlpool's motion to dismiss Redmon's claims alleging breach of the express warranty as to the product warranty, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, unjust enrichment, and breach of contract.

In the Pennsylvania Action and the California Action, Larchuk, Shah and McCormick, respectively, voluntarily dismissed their actions prior to an order on Whirlpool's motions to dismiss.

Plaintiffs represent that the parties' Settlement Agreement is the product of zealous litigation and arm's-length negotiations, which included: (1) Plaintiffs' retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defect and damages at various stages of litigation, and who also assisted with discovery; (2) negotiating a protective order, an order governing electronically stored information, and other case management orders involving coordination of litigation and schedules across all cases; (3) attending regular case management conferences in the Minnesota, Illinois, Pennsylvania and California Actions; (4) significant fact discovery, which aided the resolution of this action and included serving and responding to interrogatories, requests for production, and third-party retailer discovery; (5) two full-day mediation sessions in April 2021; and (6) several subsequent months of arm's-length negotiations between experienced class-action counsel for both Whirlpool and Plaintiffs, all led by a mediator with substantial experience in class action litigation.

On December 16, 2021, this Court preliminarily approved the Settlement Agreement. In doing so, the Court preliminarily certified the following Settlement Class for Settlement purposes only:

> All persons in the United States and its territories who either (a) purchased a new Class Dishwasher, or (b) acquired a new Class Dishwasher as part of the purchase or remodel of a home, or (c) received as a gift, from a donor meeting those requirements, a new Class Dishwasher not used by the donor or by anyone else after the donor purchased the Class Dishwasher and before the donor gave the Class Dishwasher to the Settlement Class Member.

>           Excluded from the Settlement Class are (i) officers, directors,
>           and employees of Whirlpool or its parents, subsidiaries, or
>           affiliates, (ii) insurers of Settlement Class Members,
>           (iii) subrogees or all entities claiming to be subrogated to the
>           rights of a Class Dishwasher purchaser, a Class Dishwasher
>           owner, or a Settlement Class Member, (iv) persons who
>           acquired an other-than-new Class Dishwasher, (v) issuers or
>           providers of extended warranties or service contracts for
>           Class Dishwashers, and (vi) persons who timely and validly
>           exercise their right to be removed from the Settlement class,
>           as described below.

Plaintiffs now move for final approval of the Settlement Agreement and also move for attorneys' fees, litigation costs and service awards.  Plaintiffs' motions are unopposed.

## II.    Settlement Terms

### A.    Benefits to the Settlement Class

As described in the Settlement Agreement, the benefits to the Settlement Class include the following compensation structure for Paid Qualifying Repairs or Replacements for Past or Future Diverter Seal Leaks:

1.    for Paid Qualifying Repairs or Replacements in years one (1) or two (2) after manufacture, 100 percent of the Average Cost of Repair ($225.00), a cash rebate of $200 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

2.    for Paid Qualifying Repairs or Replacements in year three (3) after manufacture, 90 percent of the Average Cost of Repair ($202.50), a cash rebate of $200 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

3.      for Paid Qualifying Repairs or Replacements in years four (4) or five (5) after manufacture, 80 percent of the Average Cost of Repair ($180.00), a cash rebate of $200 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

4.      for Paid Qualifying Repairs or Replacements in year six (6) after manufacture, 60 percent of the Average Cost of Repair ($135), a cash rebate of $175 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of $125 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher;

5.      for Paid Qualifying Repairs or Replacements in year seven (7) after manufacture, 30 percent of the Average Cost of Repair (67.50) or a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand or Maytag-brand dishwasher; or

6.      for Paid Qualifying Repairs or Replacements in year eight (8) after manufacture, a cash rebate of $100 for the purchase of a new KitchenAid-brand, Whirlpool-brand or Maytag-brand dishwasher.

Settlement Class Members who have experienced a Past Diverter Seal Leak within eight years after manufacture, and who submit a valid claim to the Settlement Administrator within 180 days of the Notice Date, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule.  Settlement Class Members who experience a Future Diverter Seal Leak, which is a leak that occurs after the Notice Date but within eight years of manufacture of their Dishwasher, and who

submit a valid claim to the Settlement Administrator within 90 days of the diverter seal leak, will be entitled to reimbursement for a Paid Qualifying Repair or Replacement based on the above schedule.

### B.   Value of the Settlement Benefits to the Class

Plaintiffs submitted the expert report of Frank Bernatowicz in support of their motion for final approval of class action settlement and unopposed motion for attorneys' fees, litigation costs and service awards.   According to Bernatowicz's analysis, as detailed in his declaration, the value of the extended service plan benefits and total out-of-pocket reimbursement benefits to the Settlement Class is approximately $15,705,328 to $21,327,800.

### C.   Settlement Administrator and Administration Costs

The Settlement Administrator is Angeion Group (Angeion), a leading class action administration firm in the United States.   Consistent with the Settlement Agreement, Whirlpool is responsible for paying all costs associated with notice and administration, and these costs are entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members.   As of March 30, 2022, Angeion estimated that the total costs for notice and administration will be $1,249,240.

### D.   Class Member Release

In exchange for the benefits conferred by the Settlement Agreement, all Settlement Class Members are deemed to have released the Releasees from all claims that were or

could have been asserted by the Class Representatives or Settlement Class Members arising out of or relating to the diverter motors, diverter shafts, diverter shaft seals, and sump assemblies featuring those parts that are alleged to have the potential to result in a leak from the Dishwasher. The release, however, will not extinguish, and the Released Claims do not include, claims for personal injury or for damage to property other than to the Class Dishwasher itself.

### E.      Opt-Outs and Objections

The Class Notice advised Settlement Class Members of their right to (1) opt out of the Settlement or (2) object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and/or Service Award to the Class Representative and advised Settlement Class Members of the associated deadlines to opt out or object. The deadlines for objecting or opting out of the Settlement have passed. Three objections were filed, but one was later withdrawn, with only two objections to the Settlement remaining. Thirty-nine Class Members have opted out of the Settlement.

### F.      Attorneys' Fees and Costs and Service Awards

Consistent with the Settlement Agreement, Plaintiffs move for attorneys' fees and costs incurred by Class Counsel and Service Awards for each Settlement Class Representative. The Settlement Agreement provides that Class Counsel may seek $1,500,000 for attorneys' fees, costs and Class Representative service awards. In their motion for attorneys' fees, costs and service awards, Plaintiffs request that this Court: (1) award Plaintiffs' Counsel attorneys' fees of $1,456,002.33, which is an amount equal

to 6.5 to 8.6 percent of the $16,954,568 to $22,577,040 value of the Settlement, and which represents a 1.75 lodestar multiplier; (2) award Plaintiffs' Counsel reimbursement of litigation costs of $33,997.67; and (3) award service awards in the amount of $2,500.00 to each of the Settlement Class Representatives, all of which amounts to $1,500,000.

Whirlpool's payment of fees and costs to Class Counsel, as well as Service Awards, is entirely separate and apart from the benefits provided to the Settlement Class and will have no impact on the recovery received by Settlement Class Members.

## ANALYSIS

### I.   Motion for Final Approval

A class action cannot be dismissed or settled without the approval of the district court.  *See* Fed. R. Civ. P. 23(e).  "Under Rule 23(e) the district court acts as a fiduciary who must serve as guardian of the rights of absent class members."  *Kloster v. McColl*, 350 F.3d 747, 751 (8th Cir. 2003) (internal quotation marks omitted).  As such, a district court may approve a class action settlement only if it determines that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  A class-action settlement agreement is "presumptively valid."  *Ortega v. Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (internal quotation marks omitted).

### A.   Fairness, Reasonableness and Adequacy

When determining whether a class-action settlement is fair, reasonable and adequate, a district court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court addresses the relevant factors in turn.

### 1. Adequacy of Representation

The Court first considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This determination pertains to whether "(1) the class representatives have common interests with members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982).

Here, the record reflects no conflicts between Class Representatives and the Settlement Class, whose claims are aligned. *See Amgen Inc. v. Conn. Ret. Plans & Tr.*

*Funds*, 568 U.S. 455, 459–60 (2013) (observing that the class would "prevail or fail in unison" because claims were based on common misrepresentations and omissions). Class Counsel each have more than a decade of experience in complex litigation and litigation involving defective products. The Class Representatives also have supervised the litigation by reviewing pleadings, regularly communicating with Class Counsel regarding the litigation, and providing substantive documents as part of discovery.

Accordingly, the record reflects that Class Representatives and Class Counsel have adequately represented the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2.    Arm's-Length Negotiations

The Court next considers whether the Settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the record reflects that the parties engaged in zealous litigation of the issues, exchanged both formal and informal discovery, and vigorously negotiated the Settlement over the course of several months. Moreover, there is no evidence of collusion or that Class Counsel placed their interests above those of the Settlement Class when negotiating this Settlement. The material terms of the Settlement were agreed to prior to the Parties' discussion of attorneys' fees, costs and expenses, and any attorneys' fees, costs and expenses awarded are in addition to the relief provided to Settlement Class Members under the Settlement Agreement. For these reasons, the Court finds that the Settlement was negotiated at arm's length and under circumstances demonstrating a lack of collusion.

### 3. Adequacy of Relief

The Court next considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" among other relevant circumstances. Fed. R. Civ. P. 23(e)(2)(C). Considerations relevant to this factor include "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Ortega*, 716 F.3d at 1063 (internal quotation marks and brackets omitted).

### i. Merits of Plaintiffs' Case Weighed Against Settlement Terms

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). In assessing a settlement, a district court must weigh the strength of a plaintiff's case on the merits in light of the litigation risks and substantial expense and delay of continued litigation without any guarantee of success to class members against the immediate and substantial benefits to the class. *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) (observing that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case). This is particularly compelling when a defendant vigorously denies the plaintiff's allegations, as Whirlpool does here. *Id.*

As this Court previously observed in its Order granting preliminary approval of the Settlement, the Settlement Agreement appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court. The Settlement is the product of fact-intensive investigation regarding the defect, hard-fought litigation and arm's-length negotiations, along with substantive motion practice and discovery, Plaintiffs' retention of experts who performed critical analyses regarding the alleged defect and damages, two full-day mediation sessions, and subsequent months of arm's-length negotiations between experienced class-action counsel for both Whirlpool and Plaintiffs. Thus, Plaintiffs had ample information before entering into settlement negotiations, and they were able to effectively assess the strengths and weaknesses of their case and balance the benefits of settlement against the risks of further litigation.

Here, the Settlement Class will receive substantial extended service plan benefits, which allows all Settlement Class Members to make a claim for the alleged defect for seven years beyond the one-year warranty accompanying the purchase of a Dishwasher. Prior to the Settlement, if a consumer experienced a Diverter Seal Leak beyond the one-year warranty, Whirlpool did not cover the costs of parts or labor under the Dishwasher warranty. As a result of the Settlement, Whirlpool has agreed to cover Past Diverter Seal Leaks and Future Diverter Seal Leaks for an additional seven years from the expiration of the original manufacturer's warranty, or within eight years of manufacture of the Dishwasher. With the extended service plan benefits, Settlement Class Members will be

entitled to reimbursement of out-of-pocket costs in an amount up to the average cost of repair of the defect of $225, as further described in the Settlement Agreement, which details the tiered relief offered to Settlement Class Members depending on the age of their Dishwasher. Further, consumers have the option to choose between this cash reimbursement or a cash rebate of up to $200 for the purchase of a new KitchenAid-brand dishwasher, or a cash rebate of up to $150 for the purchase of a new Whirlpool-brand or Maytag-brand dishwasher, again depending upon the age of the Dishwasher at the time of the repair or replacement.

As detailed in the expert report of Frank Bernatowicz, which Plaintiffs submitted in support of their motion for final approval of class action settlement and unopposed motion for attorneys' fees, litigation costs and service awards, the value of the proposed settlement, which is uncapped, is approximately $15,705,328 to $21,327,800.

This Settlement is a substantial benefit to the class, particularly considering that continued litigation likely would take several years to resolve and involve expensive discovery. *See Holden*, 665 F. Supp. at 1414; *see also Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 219 (W.D. Mo. 2017) (finding "concrete benefits to potentially millions of individuals who would not be entitled to benefits absent this settlement" weighed in favor of approving settlement considering various litigation risks), *aff'd* 896 F.3d 900 (8th Cir. 2018); *Ortega*, 716 F.3d at 1063 (observing the settlement terms were generous and offered the plaintiffs the "only conceivable remedies they could expect"). Accordingly, this factor supports granting final approval of the Settlement Agreement.

### ii.   Defendant's Financial Condition

Whirlpool is a solvent company, and there is no indication that it will be unable to pay or will incur undue hardship because of the Settlement.  As such, this factor supports granting final approval of the settlement.

### iii.   Complexity and Expense of Further Litigation

The Court also must consider the complexity and expense of continued litigation. "[C]lass actions place an enormous burden of costs and expense upon the parties." *Ortega*, 716 F.3d at 1063 (internal quotation marks omitted).  As described in Plaintiffs' motion, although Plaintiffs are confident in the merits of their claims, the certification of a consumer class action is challenging and often strongly contested.  Here, continued litigation would involve substantial risks.  Although Plaintiffs have prevailed on some issues in their motions to dismiss, if litigation were to continue, Whirlpool likely would challenge Plaintiffs' liability and damages experts, contest class certification and move for summary judgment on any remaining claims.  Consequently, continued litigation would be complex, time consuming and expensive, with a substantial likelihood that the Settlement Class would not recover a significantly greater amount than that provided for in the Settlement.  Indeed, Whirlpool has succeeded in defeating class certification in similar product-performance cases. *See, e.g.*, *Schechner v. Whirlpool Corp.*, No. 2:16-cv-12409, 2019 WL 4891192, at *1 (E.D. Mich. Aug. 13, 2019); *Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640, at *1 (N.D. Ill. May 9, 2017).

When balanced against the risks of litigation, this Settlement is a significant achievement for the Settlement Class, which provides Settlement Class Members with substantial costs for parts and labor, up to the average cost of repair of $225, and immediate benefits to the class. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("In sum, the settlement provides substantial and immediate benefits to the class. Thus, weighing the uncertainty of relief against the immediate benefit provided in the settlement . . . we conclude that this factor weighs in favor of approving the settlement." (internal quotation marks and brackets omitted)); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 1013, 1017–18 (D. Minn. 2005) (finding settlement removed the risks, delay, and costs associated with continued litigation while delivering assured benefits to the class and weighed in favor of final approval). Accordingly, this factor supports granting final approval of the Settlement Agreement.

### iv.    Amount of Opposition to the Settlement

The number of class members who object to or opt out of the settlement is relevant to whether the settlement is reasonable. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999). Here, the Settlement involves approximately 6,700,000 Dishwashers. As of March 27, 2022, there have been three objections, one of which was withdrawn. Even if the two remaining objections are valid, the fact that there are relatively few objections to a class-action settlement suggests that the settlement is fair and reasonable. *See, e.g.*, *Marshall*, 787 F.3d at 513 (holding that this factor favored approval of settlement because "only one-tenth of one percent of the class objected, and

less than ten percent of the class ha[d] requested exclusion from the settlement" (internal quotation marks omitted)); *Kloster*, 350 F.3d at 749–50 (concluding that settlement was fair and reasonable when there were ten objections out of "the hundreds of thousands of eligible class members").

The Court has carefully considered the two objections to the Settlement, as well as the thirty-nine class members that have requested exclusion from the Settlement. As to the substance of the objections, one objector challenges the amount available to class members for costs associated with repair or replacement of their Dishwasher but, in doing so, does not include any evidentiary support for the assertion that the amount is insufficient. As reflected in Plaintiffs' motion for final approval, Plaintiffs' counsel's research and investigation, including discovery conducted in this case, suggest that the average cost of repair relating to the defect is $225.00. The objection does not include sufficient information to refute this average cost of repair or otherwise support the objection. The second objection appears to rely on a misunderstanding of the claim form, a concern that the Settlement does not provide relief for property damage, and a concern that the objector may not be entitled to compensation because she replaced her dishwasher with a brand other than Whirlpool. But the release in the Settlement Agreement specifically excludes claims for property damage. Thus, any claim that the objector has for property damage is not part of this Settlement. In addition, as Plaintiffs observe in their motion for final approval, if this objector submits documentation sufficient to show that her dishwasher leaked because of the defect, then she will be

entitled to compensation in the amount of $135.00 given that she chose to replace her dishwasher, and the parties will work with the Settlement Administrator to facilitate converting her timely objection into a claim. For these reasons, the two objections do not impact approval of the Settlement. As the Court observed when granting preliminary approval, the risks of proceeding to trial are substantial. That the settlement agreement includes two objectors does not render the proposed settlement unfair or inadequate.

For these reasons, the Court concludes that the Settlement is in all respects fair, reasonable, adequate and in the best interests of the Settlement Class. Accordingly, the court concludes that the Settlement Agreement satisfies all requirements of Federal Rule of Civil Procedure 23(c) and (e).

### B.  Certification of Settlement Class

Plaintiffs assert, for purposes of settlement only, that the Settlement Class meets all the certification requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). The Court agrees.

The record reflects that the Settlement Class is sufficiently numerous that joinder would be logistically impossible. The proposed Settlement Class consists of approximately 6,700,000 Settlement Class Members. Thus, the numerosity requirement is satisfied.

There also is a commonality of interests among the Settlement Class Members, including the following common questions of law and fact: (1) whether the Class Dishwashers suffer from a uniform design or manufacturing defect that causes them to

leak; (2) whether Whirlpool had a duty to disclose the alleged defect to consumers; (3) whether Whirlpool's warranty limitations on Settlement Class Dishwashers were unconscionable or otherwise unenforceable; (4) whether the alleged defect in the Class Dishwashers is material to a reasonable consumer; (5) whether, as a result of Whirlpool's concealment or failure to disclose material facts, Plaintiffs and Settlement Class Members acted to their detriment by purchasing Class Dishwashers manufactured by Whirlpool; (6) whether Whirlpool was aware of the defect; (7) whether Whirlpool breached express warranties with respect to the Class Dishwashers; (8) whether Whirlpool has a duty to disclose the defective nature of the Class Dishwashers to Plaintiffs and Settlement Class Members; and (9) whether Plaintiffs and Settlement Class Members are entitled to equitable relief.  For these reasons, the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) also is satisfied for settlement purposes.

In addition, the Class Representatives' claims are typical of those of the Settlement Class Members.  The Class Representatives' claims arise from the same alleged course of conduct as those of the Settlement Class Members.  The Court also finds that the proposed Class Counsel are competent and capable of exercising their responsibilities and that they and the proposed Class Representatives have fairly and adequately represented the interests of the Settlement Class.  Further, a class action is a superior method of resolving the claims of the Settlement Class Members, which are of modest amounts.

Accordingly, the Court finally certifies the Settlement Class for settlement purposes and finds that the certification requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied.

### C.       Adequacy of Notice

Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation.  *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").  The mechanics of the notice process are left to the discretion of the district court and are subject only to the "reasonableness" standards required by due process.  *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

When granting preliminary approval of the Settlement, this Court determined that the Notice Plan was fair and adequate and would provide the best practicable notice under the circumstances. The proposed Notice Plan contained all of the critical information required to apprise Class Members of their rights under the Settlement. Consistent with the Court's preliminary approval order, the Settlement Administrator, Angeion, notified Settlement Class Members of the Settlement by emailing the notice to all members of the Settlement Class for whom valid email addresses are known to Whirlpool; mailing, by first class United States mail, Postcard Notice to all Settlement Class Members for whom Whirlpool has only a physical mailing address; mailing, by

first-class United States mail, the Long Form Notice to those Settlement Class Members requesting a copy thereof; and commencing internet banner notice and social media notice. In addition, Angeion created a Settlement Website that includes all necessary and pertinent information for Settlement Class Members and established, and is maintaining, a toll-free number for Settlement Class Members to call and obtain additional information about the Settlement. Angeion also caused notice of the Settlement and related materials to be sent to the Attorney General of the United States, the Attorneys General of all states and territories within the United States, and the District of Columbia.

For these reasons, the Court concludes that the Notice Plan complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and the Class Action Fairness Act, 28 U.S.C. § 1715.

## II.     Motion for Attorneys' Fees, Costs and Service Awards

Consistent with the Settlement Agreement, Whirlpool has agreed to pay $1,500,000 for attorneys' fees, costs and service awards for the Class Representatives. In their motion for attorneys' fees, costs and service awards, Plaintiffs seek a total of $1,500,000 allocated as follows: (1) attorneys' fees in the amount of $1,456,002.33, which equals 6.5 to 8.6 percent of the $16,954,568 to $22,577,040 value of the Settlement and represents a 1.75 lodestar multiplier; (2) litigation costs in the amount of $33,997.67; and (3) service awards of $2,500 to each Class Representative. The Court addresses each aspect of Plaintiffs' request.

A.     **Attorneys' Fees**

Plaintiffs seek an award of attorneys' fees in the amount of $1,456,002.33, which equals 6.5 to 8.6 percent of the $16,954,568 to $22,577,040 value of the Settlement and represents a 1.75 lodestar multiplier.

An award of attorneys' fees in a class-action lawsuit is within the discretion of the district court. *Petrovic*, 200 F.3d at 1157; *see also* Fed. R. Civ. P. 23(h). "Courts utilize two main approaches to analyzing a request for attorney fees." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount [that] can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Johnston*, 83 F.3d at 244. "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* at 244–45. "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (internal quotation marks omitted).

A typical calculation of attorneys' fees in a class action involves the common-fund doctrine, which is based on a percentage of the common fund recovered. *See Blum v.*

*Stenson*, 465 U.S. 886, 900 n.16 (1984); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of attorneys' fees of 36 percent from a $3.5 million common fund).  Use of a percentage method of awarding attorneys' fees in a common-fund case is "well established." *Petrovic*, 200 F.3d at 1157.   Courts in this Circuit routinely have awarded attorneys' fees ranging from 25 percent to 36 percent of a common fund.  *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 998 (collecting cases). When determining whether a percentage of the common fund is reasonable, courts may consider several factors, including the benefit conferred on the settlement class; the risks to which plaintiffs' counsel were exposed; the novelty and difficulty of the issues; the time, labor and skill required; the reaction of the class; and the comparison between the requested percentage and percentages awarded in similar cases.  *Id.* at 993.  The Court addresses the relevant factors in turn.

### 1.   Time, Labor and Risk

Class Counsel brought this case on a fully contingent basis, investing time, effort and money with no guarantee of payment.  As detailed in Class Counsel's declarations, the Settlement is the product of fact-intensive investigation regarding the defect, the retention of knowledgeable and qualified experts, substantive motion practice, discovery, zealous litigation and arm's-length negotiations.  Plaintiffs' counsel collectively devoted more than 1,023 attorney hours to the prosecution of this case.  Accordingly, the amount of time, labor and risk involved in this case weighs in favor of finding Class Counsel's requested fee award reasonable.

### 2. Novelty, Difficulty, and Skill

This case involved difficult and novel issues. Consumer class actions such as this one raise complex and highly contested legal issues. *See, e.g.*, *Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) ("It goes without saying that class actions are very complex and represent a significant drain on the court in terms of time and management."); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). The risks and obstacles in this case are just as great as those in other product defect class actions; and this case likely would have taken years to complete, with the risk that there would be no recovery at all. The record also reflects that Plaintiffs' counsel have substantial class action experience, including years of experience in complex class-action litigation and litigation involving defective products. The novelty and difficulty of this case, along with the skill and experience of Plaintiffs' counsel, weigh in favor of finding Class Counsel's requested fee award reasonable.

### 3. Customary Fee for Similar Work

As addressed below, the requested fees in this action are consistent with and lower than other decisions from within this Circuit that have used the percentage-of-the-fund approach and a lodestar crosscheck to evaluate the appropriateness of attorneys' fees in consumer-protection cases. *See, e.g.*, *Keil*, 862 F.3d at 702 (approving attorneys' fees of 25 percent of common fund, and representing a 2.7 lodestar multiplier, in class action involving defective pet food); *Caligiuri*, 855 F.3d at 865–66 (approving attorneys' fees of 33 percent of common fund, and representing a lodestar multiplier of less than two, in

consumer protection class action involving computer software).   Accordingly, the requested fee award, which represents 6.5 to 8.6 percent of the total value of the Settlement, and equates to a 1.75 lodestar multiplier, weighs in favor of finding Class Counsel's requested fee award reasonable.

### 4.   Results Obtained

The result achieved here is comprehensive and commensurate with the value and risk of the Released Claims because the Settlement provides precisely what the actions were filed to obtain— benefits specific to the alleged defect, allowing consumers to claim up to $225.00 for the cost of repairing or replacing their Dishwasher because of the alleged defect.   Moreover, the Released Claims are narrowly tailored and do not alter or affect any other rights or obligations of Settlement Class Members or Whirlpool with respect to their relationship with one another.   As such, the result obtained supports the requested award of attorneys' fees.

### 5.   Lodestar Crosscheck

A "lodestar cross-check need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 999.  Class Counsel's lodestar is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.   *Hensley v. Eckerhart*, 461 U.S. 424, 447–49 (1983).   "The resulting multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other

cases." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 999 (approving multiplier of 4.7); *accord Keil*, 862 F.3d at 702 (finding multiplier of 2.7 was in line with comparable cases); *Huyer v. Buckley*, 849 F.3d 395, 399–400 (8th Cir. 2017) (finding multiplier of 1.82 was "well within the range of multipliers awarded in this and other circuits").

As detailed in Plaintiffs' motion and supporting declaration from Class Counsel, the total lodestar amount is $829,824.75 and is similar to hourly rates approved by other courts. Class Counsel billed their time at their current billing rates charged to their clients, and the record reflects that the hours expended were necessary to secure the results obtained. Class Counsel's total lodestar is $829,824.75, which yields a 1.75 multiplier for the requested $1,456,002.33 fee. This multiplier is consistent with or below multipliers approved in this Circuit and in similar cases. *See, e.g.*, *In Re Allura Fiber Cement Siding Litig.*, No. 2:19-mn-02886-DCN, 2021 WL 2043531, at *6–7 (D.S.C. May 21, 2021) (approving fees based on 33 percent of a common fund with a lodestar crosscheck based on adjusted hourly rates of up to $894); *Fath v. Am. Honda Motor Co.*, No. 0:18-cv-01549-NEB-LIB, Dkt. 148 at 9 (D. Minn. Sept. 11, 2020) (approving "[h]ourly rates for the attorneys and paralegals involved ranged from $300 to $950 and $150 to $203, respectively," in class action involving defective automobile).

Accordingly, a lodestar crosscheck confirms the reasonableness of Class Counsel's fee request. Plaintiffs request for an award of attorneys' fees in the amount of $1,456,002.33 is granted.

### B.   Litigation Costs

Plaintiffs also seek an award of litigation expenses in the amount of $33,997.67. "Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation." *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *12 (D. Minn. Apr. 5, 2016).  "Counsel in common fund cases may recover those expenses that would normally be charged to a fee paying client." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 05-1708 (DWF/AJB), 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008) (internal quotation marks omitted). Permissible categories of expenses include, but are not limited to, "photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 999–1000.  Here, the record reflects that the requested expenses include filing fees, travel costs, mediation, research costs, and other incidental expenses appropriately related to the litigation of this matter. These are the types of expenses that courts recognize as reasonably recoverable. *Id.*

For these reasons, Plaintiffs' request for litigation costs in the amount of $33,997.67 is granted.

### C. Service Awards

Plaintiffs also seek service awards of $2,500 for each of the Class Representatives, for an aggregate amount of $10,000.

"Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri*, 855 F.3d at 867. And "courts in this circuit regularly grant service awards of $10,000 or greater." *Id.* Factors relevant to whether a service award is reasonable include the actions the plaintiffs took to protect the interests of the class, the degree to which the class has obtained a benefit from those actions, and the amount of time and effort the plaintiffs expended in pursuing the litigation. *Id.*; *accord In re Xcel Energy, Inc.*, 364 F. Supp. 2d at 1000.

Here, Class Representatives devoted time overseeing and participating in the litigation on behalf of the Settlement Class. Class Representatives gathered documents and communicated information to Class Counsel, reviewed pleadings, and maintained regular contact with Class Counsel regarding the status of the action. The Settlement Class has benefited from the time and effort each Class Representative dedicated to this action. Moreover, no Settlement Class Member has objected to the requested Service Awards, which are within or below the amount typically awarded. In addition, the requested service award will not reduce the value to the Settlement Class.

For these reasons, Plaintiffs' request for service awards of $2,500 for each of the Class Representatives, for an aggregate amount of $10,000, is granted.

# ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.     Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, (Dkt. 83), is **GRANTED**.

    a. The Settlement Class is finally certified, for settlement purposes only, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

    b. The Settlement Agreement is finally approved as being fair, reasonable and adequate pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

    c. Plaintiffs Elisabeth Cleveland, Amy Larchuk, Christopher Redmon, Dhaval Shah and Thomas McCormick are confirmed as Class Representatives.

    d. Harper Segui and Rachel Soffin of Milberg Coleman Bryson Phillips Grossman, PLLC, are confirmed as Class Counsel.

    e. The Court confirms that the Notice Plan complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

    f. All Settlement Class Members who timely requested exclusion are excluded from the Settlement.  The Settlement Class Members who did

not timely request exclusion are hereby bound by the terms of the Settlement Agreement.

2.     Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards, (Dkt. 78), is **GRANTED**.

     a.   The Court awards Plaintiffs' Counsel attorneys' fees of $1,456,002.33.

     b.   The Court awards Class Counsel $33,997.67 in litigation costs.

     c.   The Court approves service awards of $2,500 for each Class Representative.

3.     Without affecting the finality of this Order and the judgment, the Court retains jurisdiction over this matter for the purpose of resolving disputes related to the interpretation, administration, implementation, effectuation and enforcement of the Settlement Agreement.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 23, 2022                    s/Wilhelmina M. Wright
                                            Wilhelmina M. Wright
                                            United States District Judge